CHANDLER, WOODS, HARRINGTON & MAFFLY
RICHARD HARRINGTON (Bar #28099)
One Maritime Plaza, 4th Floor
San Francisco, CA 94111
Telephone: (415) 421-5484
Facsimile: (415) 986-4874

SHARTSIS FRIESE LLP
ROBERT CHARLES WARD (Bar #160824)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: rward@sflaw.com

Attorneys for Defendants
ANDREW VERITY and CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>Defendants. | Case No. C 07-02748 MHP<br><br>**OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date: August 27, 2007<br>Time: 2:00 p.m.<br>Dept: 15, Hon. Marilyn Hall Patel |

## I.

## INTRODUCTION

Plaintiff Mark Lillge dba Creative Marketing Concepts ("CMC") is in the business of selling promotional items, such as coffee cups and pens embossed with the name of the customers. CMC's customers are concentrated in Northern California and include many well known companies, such as Chevron and Wells Fargo Bank. CMC does not manufacture the merchandise and is only a distributor, an intermediary, taking orders from customers and obtaining the embossed or imprinted merchandise to fill the orders from manufacturers/suppliers.

In 2001, CMC hired defendant Andrew Verity ("Verity") as sales manager. Verity Decl., ¶ 2. Verity was very successful both in helping grow the business of CMC and in learning the promotional products industry. *Id.*

CMC also employed Christina Chang ("Chang"), Verity's wife. Chang also was successful in learning the promotional products industry and became one of CMC's top sales representatives. Chang Decl., ¶ 2.

CMC fired Verity, effective April 27, 2007. Verity Decl., ¶ 2.

On May 1, 2007, after his employment with CMC had terminated, Verity incorporated Verity Marketing Corporation. Verity Decl., ¶ 6. On May 14, 2007, Verity Marketing Corporation started in business under the name Branding Boulevard. *Id.*

Shortly after Verity was fired, CMC demanded, in May 2007, that Chang sign a covenant not to compete. CMC fired Chang on May 11, 2007. Chang Decl., ¶ 2.

Both Verity and Chang, at the times of their respective terminations, sent neutrally worded emails to CMC's clients, notifying them that they were leaving CMC and providing future contact information. Verity Decl., ¶ 3; Chang Decl., ¶ 2. Neither Verity nor Chang took any CMC property with them upon leaving CMC. Verity Decl., ¶ 4; Chang Decl., ¶ 3.

In building his new business, Verity has not used CMC's customer list. Verity Decl., ¶ 7. Nor have Verity and Chang used any pricing data or strategies of CMC, any customer files, any processes or techniques unique to CMC, or anything else that might reasonably be considered confidential and proprietary. Verity Decl., ¶¶ 6, 9, 10, 11, 12, 13, 14, 15, 16.

Customers of CMC have done business with Verity or Chang, but neither Verity nor Chang sought orders from them unless those customers had contacted Verity or Chang first. CMC customers who had been satisfied with their relationships with Chang or Verity have chosen to continue these relationships by ordering merchandise from Branding Boulevard.

## II.

## ARGUMENT

Plaintiff's application for preliminary injunction has a number of fatal flaws, not the least of which is Plaintiff's failure to prove the existence of trade secrets. In order to grant a motion

- 2 -

for preliminary injunction, the Court must find both probable success on the merits by Plaintiff and possibility of irreparable injury or a balance of hardship that tips sharply in Plaintiff's favor. *Dept. of Parks & Recreation for State of Calif. v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 123 (9th Cir. 2006). Certainly, the equities do not tip sharply in Plaintiff's favor. To the contrary, the ability of Verity and Chang to earn a living would be harmed by the injunction sought by Plaintiff. Nor, as discussed below, has Plaintiff established probable success on the merits.

**A.  Plaintiff Has Not Established The Existence Of Any Trade Secrets.**

CMC is in a service industry. Its success has been grounded on the hard work and superior sales and service skills of its employees. CMC designs nothing, invents nothing, manufactures nothing. CMC finds customers, takes orders for products with the customers' names and logos, orders those products primarily from catalogs of the major suppliers, and delivers the promotional products to the customers. CMC is a low-tech business successful because it out-hustles the competition. Unlike distributors such as Dell or Amazon, CMC has not developed any unique and innovative methods of selling and delivering products.

**1.  CMC's Purported Identification of Trade Secrets Fails to Identify Any Legally Cognizable Trade Secrets.**

CMC relies on unremarkable techniques and technology such as mass mailings, a showroom, email, the telephone, the gumption of its sales reps, and the good judgment of its management on issues such as pricing and marketing strategy.

Plaintiff Lillge, for example, admits that he does not really understand the functioning of his own customer database and that Verity is far more knowledgeable. Ward Decl., Ex. A (Lillge Depo. at 21:6-20). Verity, admittedly more knowledgeable as to CMC's customer database, disabuses anyone of the idea that CMC's customer information is secret. Verity Decl., ¶¶ 9-16. Plaintiff could not articulate anything unique or proprietary regarding CMC's customer list. Ward Decl., Ex. A (Lillge Depo. at 28:16-29:1).

With regard to pricing, one of CMC's claimed trade secrets, Lillge admitted that most pricing in the industry is done based on established markup percentages. *Id.* at 41:8-42:1. Lillge also admitted that deviation from the standard, industry-wide pricing was the result of

- 3 -

| Case No. | OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER |
| C 07-02748 | |

management discretion, rather than any unique and proprietary techniques or methodology of CMC. *Id.* at 47:21-49:4, 52:22-53:1, 53:13-24, 54:9-55:2, 55:14-24.

### 2. Information in the Public Domain Cannot be a Trade Secret.

Much of what CMC claims as trade secrets appear to be information in the public domain. Such public information cannot be trade secrets. *Religious Technology Ctr v. Netcom On-Line Communications Servs,* 907 F. Supp. 1361 (N.D.Cal. 1995). Plaintiff cannot articulate anything unique or proprietary as to how it competes, organizes or otherwise uses public information. The information itself, such as a public company's Vice President of Marketing, cannot be protected as a trade secret.

### 3. The Identity of Customers Is Not A Protectable Trade Secret.

California law is clear that salespeople cannot be restrained from doing business with contacts and customers with whom they have developed relationships. A company cannot prevent former sales employees from soliciting business from their contacts developed in their industry, regardless of whether those contacts were developed as an employee of that company.

> Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, <u>even for the business of those who had formerly been the customers of his former employer</u>, provided such competition is fairly and legally conducted.

*Continental Car-Na-Var Crop. v. Moseley,* 24 Cal. 2d 104, 110 (1944) (emphasis added).

Plaintiff has not proven that its relationships with its customers are exclusive. Nor has Plaintiff shown that its customers are secret or obscure, such that a competitor would be unlikely to identify and solicit them for orders. The identify of the customers alone, therefore, cannot be trade secrets and former employees like Verity and change are entitled to compete for business from CMC's customers.

**B. Plaintiff Has Not Established That Defendants Have Used CMC Trade Secrets, To The Extent That Such May Exist.**

Even if Plaintiff could demonstrate the existence of any trade secrets, Plaintiff has failed to prove that Verity or Chang have used those trade secrets for their new business.

- 4 -
Case No. C 07-02748 — OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

### 1. California Employees Are Free To Notify Their Business Contacts Of The Name, Address And Contact Information Of Their New Employer.

First, Verity and Chang were both entitled to tell their customers and other contacts developed during their employment at CMC of their departure from that company. Verity and Chang were also entitled to provide contact information to those customers for their new business. As held by the California Supreme Court in *Aetna Building Maintenance Company v. West,* 39 Cal. 2d 198, 203 (1952), an employee has "the right to advise [his former employer's] customers that he was severing his business relations with it and engaging in business for himself."

> Merely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee. Equity will not enjoin a former employee from receiving business from the customers of his former employer, even though the circumstances be such that he should be prohibited from soliciting such business.

*Id.* at 204.

After Verity and Chang informed their contacts at CMC of their departure and new business, a number of those customers contacted Verity or Chang. Under *Aetna*, Verity and Chang were free to do business with such customers of CMC.

### 2. Plaintiff Has Failed To Show That Defendants Have Used Any Trade Secrets In Their New Business Or That CMC Has Lost Any Sales As A Result Of Defendants' Actions.

Verity and Chang have declared under oath that they are not using any secret or confidential information of CMC in their new business. Verity Decl., ¶¶ 9-16. Even though there is nothing remarkable, unique or secret about CMC's operations, Branding Boulevard nonetheless operates in a completely different manner from the business of CMC. Verity Decl., ¶ 16.

Nor is Plaintiff aware of any actual lost sales of CMC caused by Defendants Verity and Chang. Ward Decl., Ex. A (Lillge Depo. at 147:6-21). Lillge admitted that he cannot distinguish as to whether CMC drop in sales has been caused by competitive loss in the marketplace versus simply having lost two key employees, whom he chose to fire. *Id.* at 149:9-14. The one customer that CMC has identified, Chevron Federal Credit Union, did not become a customer of

Verity's new business.  Verity Decl., ¶ 7; Chang Decl., ¶ 5.

Thus, unable to show that it has suffered lost sales as a result of Verity and Chang's actions, Plaintiff has not made a sufficient showing of either probable success or the probable injury to justify a preliminary injunction that would restrict the ability of two individuals to earn a livelihood.

## III.

## CONCLUSION

For the reasons set forth above, Defendants Verity and Chang respectfully request the Court deny Plaintiff's request for a preliminary injunction.

DATED:	June 29, 2007	SHARTSIS FRIESE LLP


By: */s/ Robert Charles Ward*
          ROBERT CHARLES WARD

Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG

7475\001\RWARD\1443790.1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

- 6 -
Case No.
C 07-02748
OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER