# Exhibit C to
# Supplemental Declaration of Ian K. Boyd
# in Support of Plaintiff's Motion for
# Preliminary Injunction

# Case No. C 07-02748 MHP

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--oOo--

MARK LILLGE dba CREATIVE                )
MARKETING CONCEPTS,                      )
                                         )
        Plaintiff,                       )
                                         )
vs.                                      )   No. C07-02748 MHP
                                         )
ANDREW VERITY and CHRISTINA              )
CHANG,                                   )
                                         )
        Defendants.                      )
                                         )
_____

VIDEOTAPE DEPOSITION OF

ANDREW VERITY

CERTIFIED COPY          JULY 17, 2007


REPORTED BY:  JUDIE NICHOLAS, CSR 12229


NANCY SORENSEN REPORTING SERVICE
41 SUTTER STREET, SUITE 505
San Francisco, California 94104
(415) 986-4624-OFFICE
(415) 986-4627-FAX
califdepo@aol.com

1

```
1      STATE OF CALIFORNIA      )
2      COUNTY OF SAN FRANCISCO  )
3
4          I, JUDIE A. NICHOLAS, a Certified Shorthand
5      Reporter in and for the State of California, do
6      hereby certify:
7          That said proceedings were taken at the time
8      and place therein stated; that said proceedings
9      were reported by me, a Certified Shorthand Reporter
10     and a disinterested person, and thereafter
11     transcribed into typewriting under my direction.
12         I further certify that I am not in any way
13     interested in the outcome of said cause named in
14     the caption.
15
16                         IN WITNESS WHEREOF, I have
17
18     hereunto set my hand this 23rd
19     day of July, 2007.
20
21
22                         _____
23                         JUDIE A. NICHOLAS
                           Certified Shorthand Reporter
24                         State of California
                           CSR Number 12229
25
```

188

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 12:18:33 | Q. And did you believe that this employee |
| 2 | 12:18:44 | handbook applied to your conduct of the company as |
| 3 | 12:18:47 | well? |
| 4 | 12:18:47 | A. It was my understanding it applied to |
| 5 | 12:18:50 | everyone's conduct at the company. |
| 6 | 12:18:53 | Q. And that would include the code of conduct |
| 7 | 12:18:58 | referenced on page six -- |
| 8 | 12:19:05 | A. Correct. |
| 9 | 12:19:06 | Q. -- regarding the net profits and the |
| 10 | 12:19:23 | profit share calculation for each year of this |
| 11 | 12:19:25 | agreement that you had with Mr. Lillge. Who |
| 12 | 12:19:28 | calculated the net profits at the end of each year? |
| 13 | 12:19:33 | A. I calculated them using the P&L from the |
| 14 | 12:19:39 | computer and then it was agreed to by Mr. Lillge. |
| 15 | 12:19:43 | He also had a substantial amount of personal |
| 16 | 12:19:46 | expenses going through the books that we tried to |
| 17 | 12:19:49 | take out. |
| 18 | 12:19:49 | Q. Did you have any personal expenses that |
| 19 | 12:19:52 | went through as well, too? |
| 20 | 12:19:54 | A. I had a few, yeah. |
| 21 | 12:20:00 | Q. Do you recall Mr. Lillge ever taking issue |
| 22 | 12:20:11 | with any expenses that you were charging to the |
| 23 | 12:20:15 | company that he believed should be a personal |
| 24 | 12:20:17 | expense for you? |
| 25 | 12:20:19 | A. Yes, I do. |

73

| | | |
|---|---|---|
| 1 | 12:57:55 | at CMC. I think my last day was the 27th of April, |
| 2 | 12:58:01 | but they gave me notice early in April. So, yeah, |
| 3 | 12:58:07 | I applied for many jobs and hadn't got anywhere. |
| 4 | 12:58:10 | Q. During that -- so is it safe to say that |
| 5 | 12:58:14 | during the month of April, 2007, whether you agreed |
| 6 | 12:58:17 | with it or not, there was an understanding that you |
| 7 | 12:58:20 | were leaving at the end of the month? |
| 8 | 12:58:24 | A. Yeah. They gave me a termination date of |
| 9 | 12:58:27 | the 12th originally, pending them getting the |
| 10 | 12:58:33 | paperwork together. They couldn't get the |
| 11 | 12:58:35 | paperwork together. They kept putting it back. |
| 12 | 12:58:38 | 27th was the final day. |
| 13 | 12:58:39 | Q. And do you recall when you -- when you |
| 14 | 12:58:42 | received -- was the 12th the first termination date |
| 15 | 12:58:46 | that you were given? |
| 16 | 12:58:47 | A. Yes. |
| 17 | 12:58:48 | Q. And do you recall when you received that |
| 18 | 12:58:50 | date? Was it a couple weeks in advance of |
| 19 | 12:58:53 | April 12th? |
| 20 | 12:58:53 | A. I believe it was 6th of April. |
| 21 | 12:58:55 | Q. And from April 6th or thereabouts until |
| 22 | 12:59:03 | April 27, you continued to come into the office |
| 23 | 12:59:06 | every day, or did you? Let me ask that. |
| 24 | 12:59:10 | A. No, I did not. |
| 25 | 12:59:11 | Q. During that month of April, were other |

99

| | | |
|---|---|---|
| 1 | 12:59:21 | individuals in the office handling accounts that |
| 2 | 12:59:23 | traditionally you had handled? |
| 3 | 12:59:27 | A.  Yes.  So I was liaison with Mr. Molloy. |
| 4 | 12:59:32 | After the 11th or 12th he asked me not to come into |
| 5 | 12:59:36 | the office, he said I would still be on the payroll |
| 6 | 12:59:39 | with full benefits.  I handed over all paperwork |
| 7 | 12:59:42 | pertaining to any jobs/transactions.  I had a |
| 8 | 12:59:44 | rundown of my accounts with Jeff Weinstein, the |
| 9 | 12:59:47 | sales manager. |
| 10 | 12:59:48 | Q.  So is it correct to say that your last day |
| 11 | 12:59:51 | in the office was April 11th or 12th? |
| 12 | 12:59:54 | A.  11th or 12th.  Probably the 12th.  It was |
| 13 | 12:59:57 | the Friday, whatever that was.  It might have been |
| 14 | 13:00:01 | the 13th, I don't know. |
| 15 | 13:00:18 | Q.  Does -- I'll call it Branding Boulevard, |
| 16 | 13:00:21 | but referring to Verity Marketing Corporation as |
| 17 | 13:00:24 | well, just to make sure we're on the same page, |
| 18 | 13:00:26 | does Branding Boulevard have a website? |
| 19 | 13:00:28 | A.  Yes, it does. |
| 20 | 13:00:29 | Q.  What is that? |
| 21 | 13:00:29 | A.  brandingboulevard.com -- brandingblvd.com |
| 22 | 13:00:34 | Q.  And did you reserve that domain name? |
| 23 | 13:00:37 | A.  Yes, I did. |
| 24 | 13:00:38 | Q.  And when did you do that? |
| 25 | 13:00:39 | A.  14th of May. |

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 14:15:47 | who's looking for them. But they're in the filing |
| 2 | 14:15:50 | cabinet. They just need to look harder. |
| 3 | 14:15:53 | Q. But you did not remove the documents from |
| 4 | 14:15:56 | the filing cabinet? |
| 5 | 14:15:57 | A. No. |
| 6 | 14:15:58 | Q. And to the best of your knowledge, Ms. |
| 7 | 14:16:06 | Chang wouldn't have removed the documents? |
| 8 | 14:16:08 | A. She wouldn't know they were there. |
| 9 | 14:16:09 | Q. Who at CMC would know where they were |
| 10 | 14:16:12 | located? |
| 11 | 14:16:13 | A. I told Mr. Molloy and Mr. Lillge. They |
| 12 | 14:16:16 | know they're there. I think that was in the |
| 13 | 14:16:18 | communication between the lawyers, so -- |
| 14 | 14:16:20 | Q. As a 10 to 14 percent owner of CMC, were |
| 15 | 14:16:37 | you ever concerned with the possibility of |
| 16 | 14:16:39 | employees leaving the company and using CMC's |
| 17 | 14:16:43 | information to compete against it? |
| 18 | 14:16:49 | A. Not specifically. I mean there's some |
| 19 | 14:16:57 | small concerns but, you know, as long as they |
| 20 | 14:17:01 | adhere to the law, they're allowed to do what |
| 21 | 14:17:03 | they're allowed to do. |
| 22 | 14:17:04 | Q. But you don't recall expressing any |
| 23 | 14:17:09 | specific concerns about Mr. Weinstein in that |
| 24 | 14:17:10 | regard? |
| 25 | 14:17:11 | A. No. In fact, I recall not doing it. Now |

124

| | | |
|---|---|---|
| 1 | 14:18:38 | A. Yes, I did. |
| 2 | 14:18:39 | Q. And why did you want to see that? |
| 3 | 14:18:42 | A. Because I'm a partner of the company. Mr. |
| 4 | 14:18:47 | Molloy's remuneration comes out of my profit share. |
| 5 | 14:18:49 | As a part of the company, I think I have a right to |
| 6 | 14:18:51 | see those documents. |
| 7 | 14:18:52 | Q. And were you provided a copy of that |
| 8 | 14:18:54 | document? |
| 9 | 14:18:54 | A. No, I wasn't. |
| 10 | 14:18:58 | Q. When you were at CMC, were you ever aware |
| 11 | 14:19:01 | of any efforts by yourself or Mr. Lillge or any |
| 12 | 14:19:07 | other CMC employees to keep the identity of CMC's |
| 13 | 14:19:11 | customers out of the hands of competitors or |
| 14 | 14:19:13 | potential competitors? |
| 15 | 14:19:15 | A. In what way? |
| 16 | 14:19:16 | Q. For example, do you recall Mr. Lillge's |
| 17 | 14:19:22 | instruction to pull goods from trade show floors |
| 18 | 14:19:26 | that would feature CMC products and CMC clients? |
| 19 | 14:19:30 | A. Yes. |
| 20 | 14:19:31 | Q. And what was your understanding as to why |
| 21 | 14:19:33 | Mr. Lillge instructed his staff do that? |
| 22 | 14:19:36 | A. He had concerns about it. I certainly |
| 23 | 14:19:40 | didn't think it was a secret in any way, but he had |
| 24 | 14:19:44 | concerns that -- he seemed to think that one of his |
| 25 | 14:19:48 | clients had been contacted by competitors at one |

126

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 14:19:51 | point, seeing a -- after seeing their logo on an |
| 2 | 14:19:56 | item at a trade show. |
| 3 | 14:19:57 | Q.  Do you have any independent recollection |
| 4 | 14:19:59 | of that happening? |
| 5 | 14:20:00 | A.  It was before my time.  Such an occurrence |
| 6 | 14:20:04 | never happened during my time. |
| 7 | 14:20:08 | Q.  Did you yourself ever pull goods from a |
| 8 | 14:20:10 | trade show floor? |
| 9 | 14:20:11 | A.  I think I did on one or two occasions, per |
| 10 | 14:20:14 | Mr. Lillge's request. |
| 11 | 14:20:16 | Q.  What about with respect to the CMC |
| 12 | 14:20:19 | website, do you recall Mr. Lillge's instructions to |
| 13 | 14:20:24 | use quotes from either customer that were -- from |
| 14 | 14:20:28 | individuals that had moved on and no longer |
| 15 | 14:20:31 | customers of CMC, or to otherwise make it more |
| 16 | 14:20:33 | difficult to determine who CMC's actual customer |
| 17 | 14:20:36 | was at a specific company? |
| 18 | 14:20:37 | A.  No, I don't.  I'm not aware of their being |
| 19 | 14:20:42 | any customer quotes on the website. |
| 20 | 14:20:44 | Q.  Are you aware of any customer information |
| 21 | 14:20:46 | on the website that was designed in such a way so |
| 22 | 14:20:48 | that competitors could not determine who the |
| 23 | 14:20:51 | contact person was or the customer was? |
| 24 | 14:20:54 | A.  There's a list of customers there. |
| 25 | 14:20:56 | There's no contact person.  That's fairly standard |

127

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 14:29:18 | your computer may have become disconnected in that |
| 2 | 14:29:21 | regard? |
| 3 | 14:29:22 | A.  The backups were -- the backup would fail |
| 4 | 14:29:25 | frequently.  They were so bad, every time I saw |
| 5 | 14:29:29 | Dr. Beery, I would ask him to check the backup, |
| 6 | 14:29:32 | which he would do every time he visited the office |
| 7 | 14:29:35 | every one to two weeks, and probably 25 to |
| 8 | 14:29:38 | 30 percent of the time he would report there was |
| 9 | 14:29:41 | such a disconnection.  It was a very common |
| 10 | 14:29:43 | occurrence. |
| 11 | 14:29:44 | Q.  So it's your belief that Dr. Beery |
| 12 | 14:29:48 | discovered on several occasions computers that were |
| 13 | 14:29:51 | disconnected from the backup in this same fashion? |
| 14 | 14:29:53 | A.  Yeah. |
| 15 | 14:29:59 | Q.  Did you ever take any actions to cause |
| 16 | 14:30:01 | your computer to be disconnected in that regard? |
| 17 | 14:30:04 | A.  No. |
| 18 | 14:30:05 | Q.  Do you recall undertaking any activity on |
| 19 | 14:30:14 | your desktop computer, say, the first two weeks of |
| 20 | 14:30:16 | April that was unusual for you? |
| 21 | 14:30:23 | A.  So the issue with the -- I recall the day |
| 22 | 14:30:27 | the issue with the backup came to light, that was |
| 23 | 14:30:32 | the 5th of April.  On the 6th of April I was |
| 24 | 14:30:36 | terminated. |
| 25 | 14:30:37 | Q.  Okay. |

| | | |
|---|---|---|
| 1 | 14:45:30 | A. 11th. I think was a Friday, the 11th. |
| 2 | 14:45:33 | Q. 11th, 2007, what steps did you take to |
| 3 | 14:45:37 | form or begin operations as -- |
| 4 | 14:45:40 | A. There were no steps. On the 11th -- |
| 5 | 14:45:43 | sorry, we -- we formed Verity Marketing Corporation |
| 6 | 14:45:46 | as a shell, just as an option. I was still very |
| 7 | 14:45:52 | much looking for jobs. |
| 8 | 14:45:53 | One of my friends advised me, said when |
| 9 | 14:45:56 | you're looking for jobs, keep all doors open, so, |
| 10 | 14:45:59 | you know, keep the working for yourself door open |
| 11 | 14:46:02 | as an option, apply to as many companies as |
| 12 | 14:46:06 | possible, keep negotiating with your old employer. |
| 13 | 14:46:11 | Seemed like good advice. There was no work done |
| 14 | 14:46:14 | between the 1st of May and the 14th of May. |
| 15 | 14:46:17 | Q. Paragraph 6, putting aside just for the |
| 16 | 14:46:34 | sake of argument whether you agree that any of the |
| 17 | 14:46:38 | trade secrets identified by the plaintiff in this |
| 18 | 14:46:40 | case qualify as trade secrets, you state that "I |
| 19 | 14:46:43 | have not used any of the purported trade secrets |
| 20 | 14:46:45 | identified in my new business," and my answer is |
| 21 | 14:46:50 | why not -- question is why not. Sorry. |
| 22 | 14:46:55 | A. So I don't really know what you mean. |
| 23 | 14:47:00 | What do you mean? Can you be more specific about |
| 24 | 14:47:02 | why haven't I used certain items? |
| 25 | 14:47:05 | Q. In this last sentence you say you have not |

144

| | | |
|---|---|---|
| 1 | 14:47:07 | used any of the purported trade secrets identified |
| 2 | 14:47:09 | in your new business, and my question is, why is |
| 3 | 14:47:13 | that the case? |
| 4 | 14:47:17 | A.  I think they're irrelevant to my business. |
| 5 | 14:47:20 | We didn't -- the customer list we deleted.  We had |
| 6 | 14:47:26 | emails from them, people who I emailed with a |
| 7 | 14:47:31 | neutral email and they emailed back.  We had plenty |
| 8 | 14:47:36 | of contact information.  Some of the trade secrets |
| 9 | 14:47:39 | don't even exist to my knowledge.  I'm kind of |
| 10 | 14:47:42 | confused by what they are.  I think target, target |
| 11 | 14:47:46 | gross profit per customer is one -- was one of the |
| 12 | 14:47:49 | trade secrets.  I mean we never had a target gross |
| 13 | 14:47:53 | profit per customer, so it's a secret that never |
| 14 | 14:47:55 | existed, so I wouldn't be able to use it, but -- we |
| 15 | 14:48:00 | weren't in the business of using any information. |
| 16 | 14:48:02 | We had enough to go on.  Christina is an |
| 17 | 14:48:07 | excellent salesperson.  We had relationships. |
| 18 | 14:48:09 | People followed us because of that relationship. |
| 19 | 14:48:11 | They sent us emails. We know how to run a |
| 20 | 14:48:14 | business.  I've got good business acumen, so there |
| 21 | 14:48:22 | was no need to.  And also, specifically, I didn't |
| 22 | 14:48:26 | want to get into the situation that we're in right |
| 23 | 14:48:30 | now where Mr. Lillge was pursuing me, because I |
| 24 | 14:48:33 | knew it was very personal to him.  The fact he |
| 25 | 14:48:35 | terminated me, it wasn't for business reasons, it |

| | | |
|---|---|---|
| 1 | 14:48:38 | was really personal. |
| 2 | 14:48:39 | I actually showed the letter he wrote to |
| 3 | 14:48:41 | me early on to a lawyer and I -- this might be |
| 4 | 14:48:44 | privileged, but he said -- |
| 5 | 14:48:46 | MR. WARD:  Hang on a second. |
| 6 | 14:48:47 | THE WITNESS:  Okay. |
| 7 | 14:48:48 | MR. BOYD:  You're going to -- |
| 8 | 14:48:49 | THE WITNESS:  He concurred that it was |
| 9 | 14:48:51 | personal and -- |
| 10 | 14:48:52 | MR. WARD:  Stop.  Stop.  Move to strike. |
| 11 | 14:48:56 | Attorney-client privileged communication. |
| 12 | 14:48:58 | THE WITNESS:  My view, it was a -- Mr. |
| 13 | 14:49:01 | Lillge would pursue me for personal reasons. |
| 14 | 14:49:07 | Whatever the information, we didn't want to give |
| 15 | 14:49:11 | him the remote change of doing it, so -- I mean, as |
| 16 | 14:49:16 | you know, Ian, your declarations are short in fact, |
| 17 | 14:49:21 | long on hearsay.  I haven't seen a lot of facts |
| 18 | 14:49:23 | that actually show us using any of these secrets. |
| 19 | 14:49:28 | MR. BOYD:  Q.  We'll get to that. |
| 20 | 14:49:30 | So it's your testimony that you have not |
| 21 | 14:49:49 | used the CMC customer list in any way to assist |
| 22 | 14:49:53 | your business. |
| 23 | 14:49:56 | A.  We don't have it; we've not used it. |
| 24 | 14:49:59 | Q.  Did you maintain any email or telephone |
| 25 | 14:50:01 | contact information for any of the contacts that |

146

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 16:35:32 | MR. WARD:  Yes.  I don't think that that's |
| 2 | 16:35:33 | relevant.  I actually think it may be improperly |
| 3 | 16:35:36 | raised in this case. |
| 4 | 16:35:37 | MR. BOYD:  It was raised by Judge Patell. |
| 5 | 16:35:40 | MR. WARD:  I don't care.  I think that the |
| 6 | 16:35:43 | issue of whether these people are legally resident |
| 7 | 16:35:46 | in this country is not relevant to any issue in |
| 8 | 16:35:49 | this case.  We have responded to the complaint, |
| 9 | 16:35:53 | admitting what it means to be admitted for purposes |
| 10 | 16:35:56 | of establishing diversity jurisdiction, so if there |
| 11 | 16:36:00 | is any way that their legal residency is relevant |
| 12 | 16:36:05 | to a claim of misappropriation of trade secrets, by |
| 13 | 16:36:08 | all means, let me know and we can talk about it. |
| 14 | 16:36:11 | MR. BOYD:  Okay.  I do believe it's |
| 15 | 16:36:14 | relevant to the formation of Mr. Verity's |
| 16 | 16:36:17 | corporation, and certainly some of the responses |
| 17 | 16:36:21 | we're going to have to the counterclaim, but I'll |
| 18 | 16:36:24 | table that until we discuss it later. |
| 19 | 16:36:26 | Is there any reason you're aware of why -- |
| 20 | 16:36:37 | let me just ask the question.  Did you download |
| 21 | 16:36:40 | about 250 art files onto your computer on your last |
| 22 | 16:36:44 | day of work? |
| 23 | 16:36:46 | A.  I don't think so.  Doesn't sound familiar. |
| 24 | 16:36:49 | Q.  You don't recall, or no? |
| 25 | 16:36:51 | A.  I don't think so, no. |

186

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 16:36:52 | Q. All right. |
| 2 | 16:36:57 | A. Download them onto my computer? |
| 3 | 16:37:00 | Q. Yes. |
| 4 | 16:37:01 | A. No. |
| 5 | 16:37:01 | `MR. BOYD: Okay. I have no further |
| 6 | 16:37:02 | questions. |
| 7 | 16:37:04 | MR. WARD: Okay. This deposition is |
| 8 | 16:37:05 | concluded. Thank you very much. |
| 9 | 16:37:08 | THE VIDEOGRAPHER: This will conclude the |
| 10 | 16:37:10 | deposition of Mr. Verity, consisting of three |
| 11 | 16:37:14 | videotapes which will be maintained by Dan Mottaz |
| 12 | 16:37:20 | Productions. |
| 13 | | The time is 4:37, we are going off the |
| 14 | | record. |
| 15 | | --oOo-- |
| 16 | | (The deposition concluded |
| 17 | | at 4:37 p.m.) |
| 18 | | |
| 19 | | _____ |
| 20 | | ANDREW VERITY |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

187