# Exhibit D to
# Supplemental Declaration of Ian K. Boyd in Support of Plaintiff's Motion for Preliminary Injunction

# Case No. C 07-02748 MHP

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---oOo---

MARK LILLGE d/b/a CREATIVE MARKETING
CONCEPTS,

                  Plaintiff,

                                                No. C07-02748

  v.

ANDREW VERITY and CHRISTINA CHANG,

                  Defendants.
_____/


VIDEOTAPED DEPOSITION OF

CHRISTINA CHANG

TUESDAY, JULY 24, 2007


CERTIFIED COPY

JOANNE BALBONI, CSR 10206

1

CHRISTINA CHANG

1   I, JOANNE BALBONI, CSR No. 10206, Certified Shorthand
2   Reporter, certify:
3   That the foregoing proceedings were taken before me
4   at the time and place therein set forth, at which time the
5   witness was put under oath by me;
6   That the testimony of the witness, the questions
7   propounded, and all objections and statement made at the
8   time of the examination were recorded stenographically by
9   me and were thereafter transcribed;
10  That the foregoing is a true and correct transcript
11  of my shorthand notes so taken.
12  I further certify that I am not a relative or
13  employee of any attorney of the parties, not financially
14  interested in the action.
15  I declare under penalty of perjury under the laws of
16  California that the foregoing is true and correct.
17  Dated this 27 day of July, 2007.

_____
JOANNE BALBONI, CSR NO. 10206

212

| | | |
|---|---|---|
| 1 | it's multiple order. And it's very important that you | 11:26:18 |
| 2 | make sure you stay on this so-and-so factory to have this | 11:26:20 |
| 3 | delivered on so-and-so date. | 11:26:25 |
| 4 | Q.    Right. | 11:26:25 |
| 5 | A.    So any specific event day, I made an effort of | 11:26:27 |
| 6 | telling her it's very important. | 11:26:31 |
| 7 | Q.    And when you say "a specific event day," what | 11:26:32 |
| 8 | are you referring to? | 11:26:34 |
| 9 | A.    Meaning if -- let's say you buy 100 mugs here. | 11:26:35 |
| 10 | Q.    A hundred cups here. | 11:26:40 |
| 11 | A.    And then you are doing an open house next | 11:26:42 |
| 12 | Friday. | 11:26:44 |
| 13 | Q.    Right. | 11:26:44 |
| 14 | A.    And then I will let Josie know, "By the way, | 11:26:44 |
| 15 | Mr. Boyd has an event on Friday. So please make sure | 11:26:48 |
| 16 | everything is done correctly and delivered no later than | 11:26:52 |
| 17 | Thursday." So that's just event -- | 11:26:56 |
| 18 | Q.    Okay. | 11:26:56 |
| 19 | A.    Yeah. So not just like as soon as possible. | 11:26:58 |
| 20 | Q.    Right. | 11:26:59 |
| 21 | A.    Yeah. | 11:27:00 |
| 22 | Q.    Would you pass down any of the information to | 11:27:00 |
| 23 | anyone at CMC about the characteristics of the customer, | 11:27:04 |
| 24 | like top on price? | 11:27:10 |
| 25 | A.    I did. I spent basically a whole afternoon | 11:27:11 |

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | with Mark, Mr. Lillge himself, on a big conference room -- | 11:27:17 |
| 2 | table, not room. | 11:27:21 |
| 3 | Q.    Right. | 11:27:21 |
| 4 | A.    And also there were a few reps. For example, | 11:27:23 |
| 5 | it was Lisanina. And I briefly spoke to Jeff, but it | 11:27:27 |
| 6 | wasn't really like specifically because I was mainly | 11:27:36 |
| 7 | passing down all the information, what was pending, my | 11:27:38 |
| 8 | ticklers file, anything that he should look up, any buyers | 11:27:44 |
| 9 | characteristics to Mark. I gave him a lot of information. | 11:27:47 |
| 10 | Q.    Okay. | 11:27:50 |
| 11 | A.    Yeah. And then he, based on the information | 11:27:50 |
| 12 | and the instruction, he'll ask me, "What do you think is a | 11:27:53 |
| 13 | better fit in terms of having which rep handling mine" -- | 11:27:57 |
| 14 | Q.    Right. | 11:27:57 |
| 15 | A.    -- and then I gave him information based on | 11:28:02 |
| 16 | what I see. | 11:28:04 |
| 17 | Q.    Okay. | 11:28:05 |
| 18 | A.    And he gave me a whole list, many pages of my | 11:28:05 |
| 19 | client contact. So we went through the whole list one at | 11:28:13 |
| 20 | a time and then group. For example, REDACTED, right? | 11:28:16 |
| 21 | Q.    Right. | 11:28:21 |
| 22 | A.    You know, there are a lot of -- a full page of | 11:28:21 |
| 23 | contacts. So I basically just say okay. So I do it as a | 11:28:24 |
| 24 | corporation. So REDACTED, what to | 11:28:28 |
| 25 | do with REDACTED what to do with so many other customer | 11:28:33 |

47

| | | |
|---|---|---|
| 1 | just by company. | 11:28:37 |
| 2 | Q. Okay. | 11:28:37 |
| 3 | A. Yeah. What they are in for, what do they | 11:28:38 |
| 4 | like. Or REDACTED, for example, who is the key buyer, what | 11:28:42 |
| 5 | do they like? And by the way, REDACTED was ready to place | 11:28:45 |
| 6 | an order. In my tickler file, it'll say June time. | 11:28:49 |
| 7 | That's easily $15,000. It's a no-brainer. | 11:28:56 |
| 8 | Q. Right. | 11:28:56 |
| 9 | A. Yeah. I did a conference call. I actually | 11:28:59 |
| 10 | won the client, like, massively earlier on in the year, | 11:29:01 |
| 11 | and then it was a great win. So I talked to the contact | 11:29:04 |
| 12 | at the time. And I said, "Mark, make sure you don't | 11:29:08 |
| 13 | forget to call. It's very important. Otherwise, it's | 11:29:11 |
| 14 | easy to repeat." Yeah. Just all these little important | 11:29:15 |
| 15 | information that -- it was very close my to my departure | 11:29:19 |
| 16 | time. I gave as much information to Mr. Lillge. | 11:29:25 |
| 17 | Q. And you mentioned Mr. Lillge also conferred | 11:29:27 |
| 18 | with you about, if I understood you correctly, about which | 11:29:30 |
| 19 | rep -- which would be the best fit for each customer? | 11:29:35 |
| 20 | A. Yes. | 11:29:38 |
| 21 | Q. And what did you take into account in | 11:29:39 |
| 22 | determining which rep, in your opinion, would be the best | 11:29:41 |
| 23 | fit for a certain customer? | 11:29:44 |
| 24 | A. I will say -- for example, if I say REDACTED | 11:29:45 |
| 25 | , if I say REDACTED, I say, "These kind of | 11:29:51 |

48

```
 1   through the contents.  And the second time I took a really      03:43:13
 2   good look, it was basically my termination time.                03:43:18
 3        Q.   Okay.  When did you return from maternity             03:43:24
 4   leave, approximately?                                           03:43:27
 5        A.   Maybe May.  May of 2006, yeah.                        03:43:28
 6        Q.   So it's your recollection that no one at CMC          03:43:41
 7   ever had any communications with you about this handbook?       03:43:44
 8        A.   Correct.                                              03:43:48
 9        Q.   Do you have any understanding as to why the           03:43:48
10   company created an employee handbook?                           03:44:02
11        A.   Trying to -- that's my understanding.  Before         03:44:05
12   this draft, there was another consultant that came in.  So     03:44:12
13   hopefully, to come up with a consensus on an office             03:44:16
14   protocol that everybody can work harmoniously and trying        03:44:24
15   to incorporate some company benefits in writing and some        03:44:35
16   inappropriate -- for example, you cannot drink when you         03:44:40
17   are on the job.  Stuff like that.                               03:44:44
18        Q.   So did you believe that this handbook applied         03:44:45
19   to all of CMC's employees then?                                 03:44:51
20        A.   I would hope so.  I would think so.  But I            03:44:53
21   didn't really read every single thing in depth because I        03:45:00
22   just casually found this in my pile.  And the copy I had        03:45:05
23   there was different from the one Bruce Malloy was showing       03:45:14
24   to me.  So I don't even know how old my copy on my desk         03:45:20
25   was.                                                            03:45:25
```

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | back up again. | 04:10:22 |
| 2 | You are privy to the impression that what I'm talking | 04:10:27 |
| 3 | about with respect to Mr. Verity's computer is the same | 04:10:32 |
| 4 | type of thing that had happened to you previously? | 04:10:35 |
| 5 | A.   Yeah.  So the server frequently failed to back | 04:10:37 |
| 6 | up.  And then the thing is, maybe it doesn't get back up | 04:10:40 |
| 7 | this weekend, back up next weekend, so whatever | 04:10:43 |
| 8 | information that's on the server would be backed up, | 04:10:46 |
| 9 | right?  I'm not a techy person.  This is just based on the | 04:10:49 |
| 10 | limited information I know about backing up.  Isn't that | 04:10:54 |
| 11 | the case? | 04:10:58 |
| 12 | Q.   Well, regardless of whether the situation with | 04:10:59 |
| 13 | respect to Mr. Verity's computer in April of 2007 is the | 04:11:02 |
| 14 | same and as to what you are talking about are different, | 04:11:07 |
| 15 | is it your testimony that you don't have any specific | 04:11:10 |
| 16 | understanding other than what you've already testified to | 04:11:12 |
| 17 | -- | 04:11:15 |
| 18 | A.   M-hm. | 04:11:15 |
| 19 | Q.   -- as to how Mr. Verity's computer may have | 04:11:15 |
| 20 | been taken off the backup? | 04:11:20 |
| 21 | A.   Nobody would know other than Dr. Barry. | 04:11:20 |
| 22 | MR. BOYD:  Let me hand you an exhibit that we'll mark | 04:11:58 |
| 23 | as Number 12? | 04:12:04 |
| 24 | THE COURT REPORTER:  13. | |
| 25 | MR. BOYD:  13. | |

181

| | | |
|---|---|---|
| 1 | Q. Okay. | 04:16:35 |
| 2 | A. Because it didn't work out, so you try to not | 04:16:36 |
| 3 | do that project. So all right. I have nobody to send it | 04:16:40 |
| 4 | to. Send it to her, since I was talking to her. | 04:16:43 |
| 5 | Q. And why did you send samples to her? | 04:16:45 |
| 6 | A. And we talked -- well, there wasn't any | 04:16:47 |
| 7 | particular reason. | 04:16:52 |
| 8 | Q. Did she ask you to send samples to her? | 04:16:53 |
| 9 | A. She didn't ask me. She didn't ask me not to | 04:16:56 |
| 10 | either, and basically we were just talking about -- she | 04:17:00 |
| 11 | told me she was a little bit unhappy with Creative | 04:17:04 |
| 12 | Marketing Concepts, how they handled my departure. This | 04:17:08 |
| 13 | is our conversation mainly at the beginning of the week. | 04:17:12 |
| 14 | So -- | 04:17:12 |
| 15 | Q. So this is a business day or two after you'd | 04:17:14 |
| 16 | left? | 04:17:16 |
| 17 | A. Yes. | 04:17:16 |
| 18 | Q. And what was she unhappy about with respect to | 04:17:17 |
| 19 | how CMC had handled your departure? | 04:17:22 |
| 20 | A. Because she found from another customer about | 04:17:23 |
| 21 | my departure. So the e-mail that I sent out Friday, my | 04:17:27 |
| 22 | last day at CMC, it was already an outdated information | 04:17:30 |
| 23 | for her. She found out from other people, third party. | 04:17:34 |
| 24 | Q. She found out before you sent your group | 04:17:36 |
| 25 | e-mail out? | 04:17:39 |

185