CHANDLER, WOODS, HARRINGTON & MAFFLY
RICHARD HARRINGTON (Bar #28099)
One Maritime Plaza, 4th Floor
San Francisco, CA 94111
Telephone: (415) 421-5484
Facsimile: (415) 986-4874

SHARTSIS FRIESE LLP
ROBERT CHARLES WARD (Bar #160824)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: rward@sflaw.com

Attorneys for Defendants and Counterclaimants
ANDREW VERITY and CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>Defendants. | Case No.  C 07-02748 MHP<br><br>**SUPPLEMENTAL OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   August 27, 2007<br>Time:   2:00 p.m.<br>Dept:   15, Hon. Marilyn Hall Patel |

**I.   INTRODUCTION**

Even with another round of declarations submitted with his reply papers, Plaintiff Mark Lillge dba Creative Marketing Concepts ("Plaintiff" or "CMC") has yet to establish the existence of trade secrets, let alone infringement by Defendants Andrew Verity and Christina Chang. Plaintiff's moving papers amount to the assertion that there *could be* trade secrets, and that Plaintiff has lost a handful of customers to Defendant. Plaintiff has yet to describe with significant detail any purported trade secret, other than his customer list. To have a legally recognizable trade secret, a party must be able to describe that trade secret in sufficient detail that

- 1 -
Case No. C 07-02748   SUPPLEMENTAL OPPOSITION

the opposing party and Court can recognize the trade secret and distinguish the purported trade secret from that which is not a trade secret. Plaintiff has not described any purported trade secret other than the customer list itself. That alone cannot be a trade secret absent a showing that the customer list was developed, maintained, organized or used in some unique and proprietary manner. All Plaintiff has asserted and supported is the unremarkable proposition that CMC worked hard to build the customer list. Plaintiff has described nothing that would make his customer list unique - - no special way of organizing the list, no software developed for CMC to manage the list, nothing that could constitute a trade secret. Former employees are free to pursue customers of their former employer to earn a livelihood, so long as the former employees do not misappropriate a trade secret, and there has been no proof of the existence of trade secrets here.

Similarly, in addition to doing no better than suggesting that there might be trade secrets, Plaintiff has proven at most that Defendants might have taken some information. First and foremost, Defendants are entitled to take with them and use competitively the industry knowledge, training, and professional contacts that they developed while employed by CMC. California law is clear that Plaintiff cannot deny Defendants the sue of such knowledge for the "unhampered pursuit of the occupations and likelihoods for which he is best suited." *Futurecraft v. Clary Corp.,* 205 Cal. App. 2d 279, 285-86 (1962); *see* also *Metro Traffic Control, Inc. v. Shadow Traffic Network,* 22 Cal. App. 4th 853, 861-63 (1994). There is no evidence of a stolen rolodex or database or any of the other types of evidence that usually exists in support of meritorious trade secrets claims. Instead, there is only red herring evidence that Verity's office computer was "disconnected" from a backup system but no evidence, despite an examination by a computer forensics expert, that anything was actually copied or sent from the computer. *See* Suppl. Verity Decl., ¶ 4-10. Plaintiff's motion is entirely premised on "might have" and "could" rather than "did." The only actions of Defendants by which they used CMC's contact list were the sending of announcements by Verity and Chang that they were leaving CMC. California law is clear that the departing employees have an absolute right to notify their customers that they are starting a new business. *See, e.g., Hilb, Rogal & Hamilton Ins. Services v. Robb,* 33 Cal. App. 4th 1812, 1821-22 (1995). Under the circumstances, the Court should dissolve the temporary

restraining order and decline to issue a preliminary injunction.

## II. **CALIFORNIA LAW FAVORS COMPETITION**

California law disfavors restraints on competition.

*Alliance Payment Systems, Inc. v. Walczer* (2007), Cal.App.4th [No. A111425. First Dist., Div. One. Jun. 25, 2007.] holds:

> B.   Application of Section 16000
>
> Section 16600's prohibition of contracts in restraint of trade codifies California's deeply rooted public policy favoring open competition. (*Howard v. Babcock* (1993) 6 Cal.4th 409, 416; *Hill Medical Corp. v. Wycoff* (2001) 86 Cal.App.4th 895, 900-901, 903.) Noncompetition agreements are void under this statute unless they are specifically {Slip Opn. Page 15} authorized by sections 16601 or 16602 (*Bosley Medical Group v. Abramson* (1984) 161 Cal.App.3d 284, 288), or they are necessary to protect trade secrets, or confidential or proprietary information (*Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4th 1425, 1429-1430).
>
> Antisolicitation covenants such as section 7(d), which prohibits the parties from soliciting each other's merchants for five years, are routinely viewed as, and voided as, illegal restraints of trade under section 16600.  (E.g., *Thompson v. Impaxx, Inc., supra,* 113 Cal.App.4th at pp. 1427-1429; *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 405-406; *Latona v. Aetna U.S. Healthcare Inc.* (C.D.Cal. 1999) 82 F.Supp.2d 1089, 1091, 1095-1096.)

*Strategix, Ltd. v. Infocrossing West, Inc.* (2006) 142 Cal.App.4th 1068, 1072 holds:

> California's public policy affirms a person's right to pursue the lawful occupation of his or her choice. (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859.) Our Legislature codified this public policy in section 16600. It provides, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  (*Ibid*.)  The nonsolicitation covenants here are subject to section 16600 because they restrict appellants' ability to compete. (*Thompson v. Impaxx, Inc*. (2003) 113 Cal.App.4th 1425, 1429.)

*Thompson v. Impaxx, Inc*. (2003) 113 Cal.App.4th 1425 1429 holds:

> Respondents are in general right on the facts. fn. 2 [2] This clause is less restrictive, and less anticompetitive, than the broad, traditional anticompetitive clauses they compare it to. It is nevertheless anticompetitive--why else would they ask employees to sign it? More to the point, "Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets."  (*Moss, Adams & Co. v. Shilling* (1986) 179 Cal. App. 3d 124, 129 [224 Cal. Rptr. 456] (*Moss, Adams*).)

- 3 -

Case No.         SUPPLEMENTAL OPPOSITION
C 07-02748

### III. PLAINTIFF MISCHARACTERIZES DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER TO PROTECT ITS FLEDGLING BUSINESS

Plaintiff's reply leads with a discussion of Defendants' request for a protective order for the identity of the small number of customers of their new business, Branding Boulevard, as if this request by Defendants' counsel were a damning admission. Plaintiff told only a fraction of the story in the reply, however, and neglected to include the pages from the Verity deposition transcript which transcribe Defendants' request. *See* Suppl. Ward Decl., Ex. A. A review of the actual words of counsel for Defendants reveals that the request was not made out of any concern for protecting trade secrets, but rather out of concern that Defendants' new business, Branding Boulevard, is very vulnerable while unilaterally subject to a restraining order while CMC is not so restrained. Branding Boulevard has only around 20 customers at this time and is far more vulnerable to a one-sided poaching campaign. There is nothing fair about allowing CMC to obtain Branding Boulevard's small customer list through discovery, and be free to use that list to destroy Branding Boulevard while Defendants remained limited by the TRO from competing freely.

If CMC wants to dissolve the TRO and fight fair, Plaintiff is welcome to the names of the 20 customers, because the customer lists themselves are not trade secrets. CMC was not interested in fighting fair, however, as Plaintiff wants Defendants restrained while CMC uses this litigation to troll for information to gain a unilateral and unfair advantage and to destroy Defendants' fledgling business.

### IV. SINCE ISSUANCE OF THE TEMPORARY RESTRAINING ORDER, PLAINTIFF HAS ENGAGED IN A COURSE OF ACTION CALCULATED TO PUT DEFENDANTS OUT OF BUSINESS AND DEPRIVE THEM OF A LIVELIHOOD.

Defendants' concerns that Plaintiff CMC may be using this litigation to obtain an unfair advantage are justified given other actions taken by Plaintiff. For example, Plaintiff sent a letter to suppliers in the industry misrepresenting the Court's temporary retraining order and suggesting that suppliers should not sell merchandise to Branding Boulevard. Suppl. Verity Decl., ¶ 6, Ex. A. There is no legitimate purpose for Plaintiff to send such a letter. Such a letter cannot serve to protect CMC's trade secrets. The suppliers are third parties who should not be in

- 4 -

Case No.
C 07-02748

SUPPLEMENTAL OPPOSITION

1  possession of any CMC trade secrets.  By definition, any information provided to suppliers could
2  not possibly constitute trade secrets owned by CMC.  Suppl. Verity Decl., ¶ 6.

3  Plaintiff has used information obtained through discovery in this action for the purpose of
4  trying to harm Defendants' business - - despite stipulating that he would not do so.  For example,
5  from deposition testimony, Plaintiff learned that Heidi Hua of Federal Occupational Health is one
6  of the small number of Branding Boulevard customers.  On August 1, Plaintiff contacted Ms.
7  Hua.  Plaintiff suggested that she could not do business with Branding Boulevard because of a
8  Court order and tried to win her back as a customer of CMC.  *See* Verity Decl., ¶ 19.  This action
9  by Plaintiff violated his own stipulation that he "will not take this information and us to for
10 CMC's own business gain."  Ward Decl., Ex. B (Verity Depo at 5:6-23).

11 Plaintiff's misuse of the discovery process in this litigation to gain a competitive
12 advantage over Defendants further demonstrates why the motion for a preliminary injunction
13 should be denied.  The Court should keep in mind that Defendants were fired by Plaintiff.  They
14 were fired and forced to find a way to earn a living as quickly as possible.  This case is not the
15 prototypical situation in which a key employee plans to leave to found a competing business.
16 Plaintiff was the one who decided to end Verity and Chang's employment with CMC, forcing
17 Defendants to scramble to replace their income from CMC.

18 **V.  THE BALANCE OF HARDSHIPS WEIGHTS HEAVILY IN FAVOR OF NOT DEPRIVING VERITY AND CHANG OF A LIVELIHOOD PENDING TRIAL**
19

20 Plaintiff argues in his reply that the balance of hardships tips in his favor.  Far from it.
21 Defendants' new business will be destroyed by the preliminary injunction sought by Plaintiff.
22 Andrew Verity and Christina Chang will be out of a job – again, having been fired earlier this
23 year by Plaintiff.  Defendants will be forced to find work in a new industry - - something that
24 California law mandate they should not be forced to do.  The Court would be forcing Defendants
25 to throw away years of experience and contact development in the promotional products industry
26 and instead accept what is likely to be far less lucrative employment in some other field.  *See*
27 Suppl. Verity Decl., ¶ 2.

28 Balanced against depriving Verity and Chang of a livelihood, CMC relatively will not

- 5 -
Case No.  SUPPLEMENTAL OPPOSITION
C 07-02748

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

suffer much harm pending trial, and lost sales can be quantified if Plaintiff ultimately can prove his case. In fact, Plaintiff at his deposition admitted that he would only be speculating to conclude that CMC is being harmed as a result of Defendants' activities.

> Q. Are you aware of any sales that Creative Marketing Concept would have obtained from customers because of anything done by Andrew Verity or Christina Chang?
>
> A. I can only speculate at this point.
>
> Q. Okay. So any observations that you would have about potential lost sales to Christina Chang or Andrew Verity would be speculative?
>
> A. Correct.
>
> Q. So as far as you know your business has not lost any money because of the competitive efforts of Christina Chang and Andrew Verity; is that correct?
>
> A. Perhaps. By deduction I might be able to take exception to that. But as far as evidence as of right this moment while we're here, no.

Ward Decl., Ex. C (Lillge Depo at 147:6-21). Plaintiff also admitted that he cannot distinguish between harm caused by Verity and Chang as competitors versus harm caused by CMC having fired them and not yet replaced these two key employees.

> Q. And can you attribute, in your mind, what among the discernible drop in sales since their departure is attributable to competitive loss in the marketplace versus simply having lost two key employees who you haven't replaced yet?
>
> A. No - - no way to measure that.

*Id.* at 149:9-14.

Thus, balanced against Defendants who will lose their business, and their livelihood, you have a Plaintiff who fired them in the first place and who is not even sure whether any harm he is suffering is the result of Defendants' actions or his own decision to fire two key employees.

/ / /

/ / /

/ / /

- 6 -
Case No.   SUPPLEMENTAL OPPOSITION
C 07-02748

## VI. CONCLUSION

Defendants Verity and Chang respectfully request that the Court dissolve the temporary restraining order and deny the motion for preliminary injunction.

DATED: August 10, 2007           SHARTSIS FRIESE LLP


By: */s/ Robert Charles Ward*
       ROBERT CHARLES WARD

Attorneys for Defendants
ANDREW VERITY and CHRISTINA CHANG

7475\001\RWARD\1451508.1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 7 -
Case No.         SUPPLEMENTAL OPPOSITION
C 07-02748