**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--oOo--

| | |
|---|---|
| MARK LILLGE dba CREATIVE MARKETING CONCEPTS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. C07-02748 MHP ) |
| ANDREW VERITY and CHRISTINA CHANG, | ) ) ) |
| Defendants. | ) ) |

VIDEOTAPE DEPOSITION OF

ANDREW VERITY

JULY 17, 2007

**CERTIFIED COPY**

REPORTED BY: JUDIE NICHOLAS, CSR 12229

NANCY SORENSEN REPORTING SERVICE
41 SUTTER STREET, SUITE 505
San Francisco, California 94104
(415) 986-4624-OFFICE
(415) 986-4627-FAX
califdepo@aol.com

| | | |
|---|---|---|
| 1 | 13:05:52 | working with currently that you did not work with |
| 2 | 13:05:54 | at CMC? |
| 3 | 13:06:00 | A.  Yeah.  I'm sure there is. |
| 4 | 13:06:05 | Q.  Do you recall any specifically? |
| 5 | 13:06:07 | A.  I'm working -- I did some work with |
| 6 | 13:06:11 | Minimedia.  I don't recall ever using them. |
| 7 | 13:06:16 | Diversified AT, I'm not sure if we ever placed |
| 8 | 13:06:20 | orders with them.  We probably did.  I don't recall |
| 9 | 13:06:21 | doing it myself.  I wasn't the only sales rep |
| 10 | 13:06:24 | there, so maybe they did business and I didn't. |
| 11 | 13:06:28 | There might be some others. |
| 12 | 13:06:30 | Q.  Okay.  Has Branding Boulevard engaged any |
| 13 | 13:06:35 | transactions with clients that you're aware of are |
| 14 | 13:06:38 | or were clients of CMC? |
| 15 | 13:06:40 | A.  Yes, we have. |
| 16 | 13:06:41 | Q.  And who are they? |
| 17 | 13:06:44 | MR. WARD:  At this point we need to get a |
| 18 | 13:06:46 | protective order in place, and what I would propose |
| 19 | 13:06:50 | is that, just as we have refrained from contacting, |
| 20 | 13:06:58 | soliciting directly, unless contacted first, known |
| 21 | 13:07:02 | existing customers of CMC, we're now talking about |
| 22 | 13:07:03 | known existing customers of Branding Boulevard, and |
| 23 | 13:07:06 | so I think it would be appropriate for Creative |
| 24 | 13:07:10 | Marketing Concepts to agree that they cannot |
| 25 | 13:07:13 | contact these people.  In other words, if these |

104

| | | |
|---|---|---|
| 1 | 13:07:15 | people choose to place an order with CMC, they can |
| 2 | 13:07:18 | do so, but I don't think it would be appropriate |
| 3 | 13:07:20 | for CMC to acquire this information and then use it |
| 4 | 13:07:24 | to go contact all these customers. |
| 5 | 13:07:27 | MR. BOYD: Well, I obviously don't know |
| 6 | 13:07:29 | what he's going to say, and I can certainly -- I |
| 7 | 13:07:35 | mean another question I'm certainly going to ask is |
| 8 | 13:07:38 | customers that are not CMC customers, and there I |
| 9 | 13:07:43 | can certainly appreciate the concern. |
| 10 | 13:07:44 | My concern here is these may be customers |
| 11 | 13:07:47 | that CMC is already contacting or interacting with |
| 12 | 13:07:52 | because they have done business. |
| 13 | 13:07:53 | MR. WARD: That's fine, and I don't have a |
| 14 | 13:07:54 | problem with that. What I have a problem with is |
| 15 | 13:07:57 | CMC is selling to a large part of the businesses |
| 16 | 13:08:02 | that are all around us in the Bay area. There are |
| 17 | 13:08:05 | a pool of potential customers for everyone in this |
| 18 | 13:08:07 | business. If CMC is armed with the knowledge of |
| 19 | 13:08:10 | who in this pool has decided that they don't like |
| 20 | 13:08:12 | doing business with CMC, they prefer doing business |
| 21 | 13:08:15 | with Verity, that gives him an advantage in terms |
| 22 | 13:08:18 | of trying to do whatever it takes to get those |
| 23 | 13:08:21 | customers back. That's, to my mind, information |
| 24 | 13:08:25 | that wouldn't be appropriate -- appropriately |
| 25 | 13:08:28 | obtained in this contact. This is a new business, |

105

| | | |
|---|---|---|
| 1 | 13:08:31 | there's only a limited number of customers.  It |
| 2 | 13:08:34 | seems to me that it's -- just as we have an order |
| 3 | 13:08:38 | in place that while there's been no finding as to |
| 4 | 13:08:42 | there being trade secrets, there has been an |
| 5 | 13:08:44 | agreement on our part that we are not going to go |
| 6 | 13:08:46 | out and deliberately poach existing CMC customers. |
| 7 | 13:08:51 | It needs to go both ways to preserve the status |
| 8 | 13:08:55 | quo.  In other words, there has to be an |
| 9 | 13:08:57 | understanding that CMC cannot go and poach away the |
| 10 | 13:09:03 | limited amount of customers of this fledgling |
| 11 | 13:09:06 | business. |
| 12 | 13:09:06 | MR. BOYD:  This is probably a good point |
| 13 | 13:09:08 | to break on so I can discuss it with my client, |
| 14 | 13:09:11 | but, again, concerns I would have, one, if it's |
| 15 | 13:09:14 | customary to run down the list of the top 50 |
| 16 | 13:09:17 | accounts you haven't heard from in six months or |
| 17 | 13:09:19 | something and in the course of sort of dialing for |
| 18 | 13:09:21 | dollars we come across someone and we're then |
| 19 | 13:09:23 | accused of trying to poach that client, unbeknownst |
| 20 | 13:09:29 | to us -- |
| 21 | 13:09:30 | MR. WARD:  Why don't you talk about it |
| 22 | 13:09:31 | with Mr. Lillge.  From his deposition, I'm familiar |
| 23 | 13:09:34 | enough with, I think, the way CMC does business and |
| 24 | 13:09:37 | the way these files move around and the way there |
| 25 | 13:09:40 | are reminder cards that I think we'll be able to |