# Exhibit A to Declaration of Ian K. Boyd in Support of Plaintiff's Motion For Partial Summary Judgment

# Case No. C 07-2748

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--oOo--

MARK LILLGE dba CREATIVE        )
MARKETING CONCEPTS,             )
                                )
        Plaintiff,              )
                                )
vs.                             )    No. C07-02748 MHP
                                )
ANDREW VERITY and CHRISTINA     )
CHANG,                          )
                                )
        Defendants.             )
                                )
_____

VIDEOTAPE DEPOSITION OF

ANDREW VERITY

JULY 17, 2007

CERTIFIED COPY

REPORTED BY:  JUDIE NICHOLAS, CSR 12229

NANCY SORENSEN REPORTING SERVICE
41 SUTTER STREET, SUITE 505
San Francisco, California 94104
(415) 986-4624-OFFICE
(415) 986-4627-FAX
califdepo@aol.com

1

ANDREW VERITY

1      STATE OF CALIFORNIA      )

2      COUNTY OF SAN FRANCISCO  )

3

4          I, JUDIE A. NICHOLAS, a Certified Shorthand

5      Reporter in and for the State of California, do

6      hereby certify:

7          That said proceedings were taken at the time

8      and place therein stated; that said proceedings

9      were reported by me, a Certified Shorthand Reporter

10     and a disinterested person, and thereafter

11     transcribed into typewriting under my direction.

12         I further certify that I am not in any way

13     interested in the outcome of said cause named in

14     the caption.

15

16                          IN WITNESS WHEREOF, I have

17

18                     hereunto set my hand this 23rd

19                     day of July, 2007.

20

21

22     _____

23          JUDIE A. NICHOLAS
            Certified Shorthand Reporter
24            State of California
              CSR Number 12229
25

                                                    188

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 12:18:33 | Q.  And did you believe that this employee |
| 2 | 12:18:44 | handbook applied to your conduct of the company as |
| 3 | 12:18:47 | well? |
| 4 | 12:18:47 | A.  It was my understanding it applied to |
| 5 | 12:18:50 | everyone's conduct at the company. |
| 6 | 12:18:53 | Q.  And that would include the code of conduct |
| 7 | 12:18:58 | referenced on page six -- |
| 8 | 12:19:05 | A.  Correct. |
| 9 | 12:19:06 | Q.  -- regarding the net profits and the |
| 10 | 12:19:23 | profit share calculation for each year of this |
| 11 | 12:19:25 | agreement that you had with Mr. Lillge.  Who |
| 12 | 12:19:28 | calculated the net profits at the end of each year? |
| 13 | 12:19:33 | A.  I calculated them using the P&L from the |
| 14 | 12:19:39 | computer and then it was agreed to by Mr. Lillge. |
| 15 | 12:19:43 | He also had a substantial amount of personal |
| 16 | 12:19:46 | expenses going through the books that we tried to |
| 17 | 12:19:49 | take out. |
| 18 | 12:19:49 | Q.  Did you have any personal expenses that |
| 19 | 12:19:52 | went through as well, too? |
| 20 | 12:19:54 | A.  I had a few, yeah. |
| 21 | 12:20:00 | Q.  Do you recall Mr. Lillge ever taking issue |
| 22 | 12:20:11 | with any expenses that you were charging to the |
| 23 | 12:20:15 | company that he believed should be a personal |
| 24 | 12:20:17 | expense for you? |
| 25 | 12:20:19 | A.  Yes, I do. |

73

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 14:18:38 | A.  Yes, I did. |
| 2 | 14:18:39 | Q.  And why did you want to see that? |
| 3 | 14:18:42 | A.  Because I'm a partner of the company.  Mr. |
| 4 | 14:18:47 | Molloy's remuneration comes out of my profit share. |
| 5 | 14:18:49 | As a part of the company, I think I have a right to |
| 6 | 14:18:51 | see those documents. |
| 7 | 14:18:52 | Q.  And were you provided a copy of that |
| 8 | 14:18:54 | document? |
| 9 | 14:18:54 | A.  No, I wasn't. |
| 10 | 14:18:58 | Q.  When you were at CMC, were you ever aware |
| 11 | 14:19:01 | of any efforts by yourself or Mr. Lillge or any |
| 12 | 14:19:07 | other CMC employees to keep the identity of CMC's |
| 13 | 14:19:11 | customers out of the hands of competitors or |
| 14 | 14:19:13 | potential competitors? |
| 15 | 14:19:15 | A.  In what way? |
| 16 | 14:19:16 | Q.  For example, do you recall Mr. Lillge's |
| 17 | 14:19:22 | instruction to pull goods from trade show floors |
| 18 | 14:19:26 | that would feature CMC products and CMC clients? |
| 19 | 14:19:30 | A.  Yes. |
| 20 | 14:19:31 | Q.  And what was your understanding as to why |
| 21 | 14:19:33 | Mr. Lillge instructed his staff do that? |
| 22 | 14:19:36 | A.  He had concerns about it.  I certainly |
| 23 | 14:19:40 | didn't think it was a secret in any way, but he had |
| 24 | 14:19:44 | concerns that -- he seemed to think that one of his |
| 25 | 14:19:48 | clients had been contacted by competitors at one |

126

ANDREW VERITY

| | | |
|---|---|---|
| 1 | 14:19:51 | point, seeing a -- after seeing their logo on an |
| 2 | 14:19:56 | item at a trade show. |
| 3 | 14:19:57 | Q.  Do you have any independent recollection |
| 4 | 14:19:59 | of that happening? |
| 5 | 14:20:00 | A.  It was before my time.  Such an occurrence |
| 6 | 14:20:04 | never happened during my time. |
| 7 | 14:20:08 | Q.  Did you yourself ever pull goods from a |
| 8 | 14:20:10 | trade show floor? |
| 9 | 14:20:11 | A.  I think I did on one or two occasions, per |
| 10 | 14:20:14 | Mr. Lillge's request. |
| 11 | 14:20:16 | Q.  What about with respect to the CMC |
| 12 | 14:20:19 | website, do you recall Mr. Lillge's instructions to |
| 13 | 14:20:24 | use quotes from either customer that were -- from |
| 14 | 14:20:28 | individuals that had moved on and no longer |
| 15 | 14:20:31 | customers of CMC, or to otherwise make it more |
| 16 | 14:20:33 | difficult to determine who CMC's actual customer |
| 17 | 14:20:36 | was at a specific company? |
| 18 | 14:20:37 | A.  No, I don't.  I'm not aware of their being |
| 19 | 14:20:42 | any customer quotes on the website. |
| 20 | 14:20:44 | Q.  Are you aware of any customer information |
| 21 | 14:20:46 | on the website that was designed in such a way so |
| 22 | 14:20:48 | that competitors could not determine who the |
| 23 | 14:20:51 | contact person was or the customer was? |
| 24 | 14:20:54 | A.  There's a list of customers there. |
| 25 | 14:20:56 | There's no contact person.  That's fairly standard |

127