# Exhibit B to Declaration of Ian K. Boyd in Support of Plaintiff's Motion For Partial Summary Judgment

# Case No. C 07-2748

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---oOo---

MARK LILLGE d/b/a CREATIVE MARKETING
CONCEPTS,

                      Plaintiff,

                                        No. C07-02748

v.

ANDREW VERITY and CHRISTINA CHANG,

                      Defendants.
_____/

VIDEOTAPED DEPOSITION OF

CHRISTINA CHANG

TUESDAY, JULY 24, 2007



CERTIFIED COPY

JOANNE BALBONI, CSR 10206

1

CHRISTINA CHANG

1    I, JOANNE BALBONI, CSR No. 10206, Certified Shorthand
2  Reporter, certify:
3    That the foregoing proceedings were taken before me
4  at the time and place therein set forth, at which time the
5  witness was put under oath by me;
6    That the testimony of the witness, the questions
7  propounded, and all objections and statement made at the
8  time of the examination were recorded stenographically by
9  me and were thereafter transcribed;
10    That the foregoing is a true and correct transcript
11  of my shorthand notes so taken.
12    I further certify that I am not a relative or
13  employee of any attorney of the parties, not financially
14  interested in the action.
15    I declare under penalty of perjury under the laws of
16  California that the foregoing is true and correct.
17    Dated this 27 day of July, 2007.
18
19
20
21                                          _____
22                                          JOANNE BALBONI, CSR NO. 10206
23
24
25

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | it's multiple order.  And it's very important that you | 11:26:18 |
| 2 | make sure you stay on this so-and-so factory to have this | 11:26:20 |
| 3 | delivered on so-and-so date. | 11:26:25 |
| 4 | Q.    Right. | 11:26:25 |
| 5 | A.    So any specific event day, I made an effort of | 11:26:27 |
| 6 | telling her it's very important. | 11:26:31 |
| 7 | Q.    And when you say "a specific event day," what | 11:26:32 |
| 8 | are you referring to? | 11:26:34 |
| 9 | A.    Meaning if -- let's say you buy 100 mugs here. | 11:26:35 |
| 10 | Q.    A hundred cups here. | 11:26:40 |
| 11 | A.    And then you are doing an open house next | 11:26:42 |
| 12 | Friday. | 11:26:44 |
| 13 | Q.    Right. | 11:26:44 |
| 14 | A.    And then I will let Josie know, "By the way, | 11:26:44 |
| 15 | Mr. Boyd has an event on Friday.  So please make sure | 11:26:48 |
| 16 | everything is done correctly and delivered no later than | 11:26:52 |
| 17 | Thursday."  So that's just event -- | 11:26:56 |
| 18 | Q.    Okay. | 11:26:56 |
| 19 | A.    Yeah.  So not just like as soon as possible. | 11:26:58 |
| 20 | Q.    Right. | 11:26:59 |
| 21 | A.    Yeah. | 11:27:00 |
| 22 | Q.    Would you pass down any of the information to | 11:27:00 |
| 23 | anyone at CMC about the characteristics of the customer, | 11:27:04 |
| 24 | like top on price? | 11:27:10 |
| 25 | A.    I did.  I spent basically a whole afternoon | 11:27:11 |

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | with Mark, Mr. Lillge himself, on a big conference room -- | 11:27:17 |
| 2 | table, not room. | 11:27:21 |
| 3 | Q. Right. | 11:27:21 |
| 4 | A. And also there were a few reps. For example, | 11:27:23 |
| 5 | it was Lisanina. And I briefly spoke to Jeff, but it | 11:27:27 |
| 6 | wasn't really like specifically because I was mainly | 11:27:36 |
| 7 | passing down all the information, what was pending, my | 11:27:38 |
| 8 | ticklers file, anything that he should look up, any buyers | 11:27:44 |
| 9 | characteristics to Mark. I gave him a lot of information. | 11:27:47 |
| 10 | Q. Okay. | 11:27:50 |
| 11 | A. Yeah. And then he, based on the information | 11:27:50 |
| 12 | and the instruction, he'll ask me, "What do you think is a | 11:27:53 |
| 13 | better fit in terms of having which rep handling mine" -- | 11:27:57 |
| 14 | Q. Right. | 11:27:57 |
| 15 | A. -- and then I gave him information based on | 11:28:02 |
| 16 | what I see. | 11:28:04 |
| 17 | Q. Okay. | 11:28:05 |
| 18 | A. And he gave me a whole list, many pages of my | 11:28:05 |
| 19 | client contact. So we went through the whole list one at | 11:28:13 |
| 20 | a time and then group. For example, REDACTED, right? | 11:28:16 |
| 21 | Q. Right. | 11:28:21 |
| 22 | A. You know, there are a lot of -- a full page of | 11:28:21 |
| 23 | contacts. So I basically just say okay. So I do it as a | 11:28:24 |
| 24 | corporation. So REDACTED, what to | 11:28:28 |
| 25 | do with REDACTED what to do with so many other customer | 11:28:33 |

47

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | just by company. | 11:28:37 |
| 2 | Q. Okay. | 11:28:37 |
| 3 | A. Yeah. What they are in for, what do they | 11:28:38 |
| 4 | like. Or REDACTED, for example, who is the key buyer, what | 11:28:42 |
| 5 | do they like? And by the way, REDACTED was ready to place | 11:28:45 |
| 6 | an order. In my tickler file, it'll say June time. | 11:28:49 |
| 7 | That's easily $15,000. It's a no-brainer. | 11:28:56 |
| 8 | Q. Right. | 11:28:56 |
| 9 | A. Yeah. I did a conference call. I actually | 11:28:59 |
| 10 | won the client, like, massively earlier on in the year, | 11:29:01 |
| 11 | and then it was a great win. So I talked to the contact | 11:29:04 |
| 12 | at the time. And I said, "Mark, make sure you don't | 11:29:08 |
| 13 | forget to call. It's very important. Otherwise, it's | 11:29:11 |
| 14 | easy to repeat." Yeah. Just all these little important | 11:29:15 |
| 15 | information that -- it was very close my to my departure | 11:29:19 |
| 16 | time. I gave as much information to Mr. Lillge. | 11:29:25 |
| 17 | Q. And you mentioned Mr. Lillge also conferred | 11:29:27 |
| 18 | with you about, if I understood you correctly, about which | 11:29:30 |
| 19 | rep -- which would be the best fit for each customer? | 11:29:35 |
| 20 | A. Yes. | 11:29:38 |
| 21 | Q. And what did you take into account in | 11:29:39 |
| 22 | determining which rep, in your opinion, would be the best | 11:29:41 |
| 23 | fit for a certain customer? | 11:29:44 |
| 24 | A. I will say -- for example, if I say REDACTED | 11:29:45 |
| 25 | , if I say REDACTED , I say, "These kind of | 11:29:51 |

48

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | official termination e-mail/letter. And Bruce Malloy, who | 03:27:30 |
| 2 | was the person who sent that e-mail of termination to me, | 03:27:37 |
| 3 | and he indicated he will be giving me additional five days | 03:27:41 |
| 4 | on the e-mail. | 03:27:50 |
| 5 | Q.     So on the e-mail that Mr. Malloy sent to you | 03:27:51 |
| 6 | -- | 03:27:54 |
| 7 | A.     Yes. | 03:27:54 |
| 8 | Q.     -- it's your recollection that he stated there | 03:27:54 |
| 9 | was this five-day period of vacation pay that CMC owed to | 03:27:56 |
| 10 | you, but hadn't paid you yet? | 03:28:01 |
| 11 | A.     No, not like that. | 03:28:03 |
| 12 | Q.     Okay. | 03:28:04 |
| 13 | A.     He is giving me on top of whatever it was | 03:28:05 |
| 14 | agreed, that I'm entitled, and he is giving me an | 03:28:08 |
| 15 | additional five days over and on top of whatever I had -- | 03:28:12 |
| 16 | Q.     Okay. | 03:28:16 |
| 17 | A.     -- on the termination e-mail letter. | 03:28:16 |
| 18 | Q.     So is it your understanding that these five | 03:28:19 |
| 19 | additional days were days that you hadn't necessarily | 03:28:21 |
| 20 | earned pursuant to CMC's policy, but it was something that | 03:28:24 |
| 21 | Mr. Malloy agreed to add on to your termination? | 03:28:28 |
| 22 | A.     Yes. | 03:28:30 |
| 23 | Q.     And this was added on by Mr. Malloy in an | 03:28:31 |
| 24 | e-mail that he sent to you? | 03:28:35 |
| 25 | A.     Yes. And that's actually responding to my | 03:28:37 |

153

CHRISTINA CHANG

| | | |
|---|---|---|
| 1 | through the contents. And the second time I took a really | 03:43:13 |
| 2 | good look, it was basically my termination time. | 03:43:18 |
| 3 | Q. Okay. When did you return from maternity | 03:43:24 |
| 4 | leave, approximately? | 03:43:27 |
| 5 | A. Maybe May. May of 2006, yeah. | 03:43:28 |
| 6 | Q. So it's your recollection that no one at CMC | 03:43:41 |
| 7 | ever had any communications with you about this handbook? | 03:43:44 |
| 8 | A. Correct. | 03:43:48 |
| 9 | Q. Do you have any understanding as to why the | 03:43:48 |
| 10 | company created an employee handbook? | 03:44:02 |
| 11 | A. Trying to -- that's my understanding. Before | 03:44:05 |
| 12 | this draft, there was another consultant that came in. So | 03:44:12 |
| 13 | hopefully, to come up with a consensus on an office | 03:44:16 |
| 14 | protocol that everybody can work harmoniously and trying | 03:44:24 |
| 15 | to incorporate some company benefits in writing and some | 03:44:35 |
| 16 | inappropriate -- for example, you cannot drink when you | 03:44:40 |
| 17 | are on the job. Stuff like that. | 03:44:44 |
| 18 | Q. So did you believe that this handbook applied | 03:44:45 |
| 19 | to all of CMC's employees then? | 03:44:51 |
| 20 | A. I would hope so. I would think so. But I | 03:44:53 |
| 21 | didn't really read every single thing in depth because I | 03:45:00 |
| 22 | just casually found this in my pile. And the copy I had | 03:45:05 |
| 23 | there was different from the one Bruce Malloy was showing | 03:45:14 |
| 24 | to me. So I don't even know how old my copy on my desk | 03:45:20 |
| 25 | was. | 03:45:25 |

| | | |
|---|---|---|
| 1 | Q.   And when was Mr. Malloy showing you a copy of | 03:45:26 |
| 2 | it? | 03:45:30 |
| 3 | A.   The last week of my termination, the week of | 03:45:30 |
| 4 | May 11th. | 03:45:32 |
| 5 | Q.   And it's your belief that that copy was a | 03:45:33 |
| 6 | different version than the one you'd been provided | 03:45:35 |
| 7 | previously? | 03:45:38 |
| 8 | A.   Oh, definitely. The dates were different, the | 03:45:38 |
| 9 | pages were different. And he said, "Oh, yeah. Refer to | 03:45:40 |
| 10 | the employee handbook." So I went through my CMC stuff. | 03:45:46 |
| 11 | I pulled this one out. I said, "What page? What are you | 03:45:51 |
| 12 | talking about?" About the PTO, all that stuff, whatever | 03:45:52 |
| 13 | the benefits I had. So I said, "You show me. What page." | 03:45:55 |
| 14 | And he looked. "Oh, it isn't?" So I even made an effort | 03:45:59 |
| 15 | to go to Mark's assistant, Josie. "Do you by any chance | 03:46:05 |
| 16 | have a current employee handbook? Can I see?" So she | 03:46:09 |
| 17 | showed me this and that. It's like, oh, everybody else | 03:46:12 |
| 18 | had a different copy than me. | 03:46:14 |
| 19 | Q.   Okay. | 03:46:16 |
| 20 | A.   Yeah. So nevertheless -- so he basically | 03:46:17 |
| 21 | said, "Okay. Now use my copy." And this is what you are | 03:46:20 |
| 22 | expecting. That's what you are expecting. He laid all | 03:46:23 |
| 23 | the terms verbally with me. | 03:46:26 |
| 24 | Q.   And was it during this conversation with Mr. | 03:46:28 |
| 25 | Malloy where he agreed to essentially grant you five | 03:46:31 |

164

| | | | |
|---|---|---|---|
| 1 | | additional days of vacation pay? | 03:46:36 |
| 2 | A. | No. | 03:46:37 |
| 3 | Q. | When did he actually agree to do that? | 03:46:38 |
| 4 | A. | The additional five days? | 03:46:40 |
| 5 | Q. | Right. | 03:46:42 |
| 6 | A. | At the termination e-mail that I requested of | 03:46:42 |
| 7 | | him. | 03:46:47 |
| 8 | Q. | Prior to receiving that e-mail, did you | 03:46:47 |
| 9 | | request that he grant you those five additional days, or | 03:46:51 |
| 10 | | -- | 03:46:51 |
| 11 | A. | No. | 03:46:51 |
| 12 | Q. | Was that a surprise to you when you saw it? | 03:46:54 |
| 13 | A. | It was a surprise, yeah. | 03:46:56 |
| 14 | Q. | When you were terminated by CMC, were you paid | 03:46:58 |
| 15 | | your wages to date? | 03:47:11 |
| 16 | A. | No, I was not. | 03:47:14 |
| 17 | Q. | When did you receive your last paycheck? | 03:47:18 |
| 18 | A. | That Friday May 11th, but I was not paid in | 03:47:20 |
| 19 | | full. | 03:47:26 |
| 20 | Q. | And what is your belief as to what was not | 03:47:26 |
| 21 | | paid to you at that time? | 03:47:29 |
| 22 | A. | At the time I was supposed to get paid for | 03:47:30 |
| 23 | | five vacation days. | 03:47:34 |
| 24 | Q. | Per Mr. Malloy's -- | 03:47:36 |
| 25 | A. | Yeah.  Per what we agreed verbally, yeah, and | 03:47:38 |

165

| | | |
|---|---|---|
| 1 | Q.    -- if I understand you now, it was your belief | 03:50:14 |
| 2 | that as of your termination date, you had accrued | 03:50:17 |
| 3 | five days of vacation days that weren't paid? | 03:50:21 |
| 4 | A.    Yes. | 03:50:24 |
| 5 | Q.    And did Mr. Malloy disagree with this when you | 03:50:24 |
| 6 | told him this? | 03:50:28 |
| 7 | A.    He says, "I don't know why you came out with | 03:50:28 |
| 8 | this," and then he e-mailed me back and given me what he | 03:50:30 |
| 9 | has calculated.  And then I said, "Where is" -- and I | 03:50:33 |
| 10 | e-mailed him back, "Where is my additional five days that | 03:50:36 |
| 11 | you indicated on my termination official letter."  And he | 03:50:39 |
| 12 | says, "I don't know where the confusion comes in."  And as | 03:50:44 |
| 13 | far as his belief, the case is closed.  And I just | 03:50:48 |
| 14 | thought, gee, very unclassy, and then what's the point of | 03:50:51 |
| 15 | dealing with somebody like that, wasting my energy. | 03:50:57 |
| 16 | Q.    So -- | 03:51:00 |
| 17 | A.    So he still owes me. | 03:51:01 |
| 18 | Q.    So in the e-mail that he sent to you later | 03:51:03 |
| 19 | that Friday, he agreed to pay you for the five days of | 03:51:06 |
| 20 | vacation pay that you said you were entitled to, and your | 03:51:09 |
| 21 | understanding is he threw an additional five days on top | 03:51:12 |
| 22 | of that? | 03:51:15 |
| 23 | A.    Yes. | 03:51:16 |
| 24 | Q.    And when you left that Friday, were you paid | 03:51:16 |
| 25 | for that first five days of vacation that you believed you | 03:51:19 |

168