# Exhibit B to Declaration of Mark Lillge in Support of Plaintiff's Motion For Partial Summary Judgment

# Case No. C 07-2748

AGREEMENT REGARDING CONFIDENTIAL

INFORMATION, INTELLECTUAL PROPERTY NON-SOLICITATION

In consideration of my employment or continued employment by Creative Marketing Concepts or any parent, division, subsidiary, affiliate, successor or assignee thereof (collectively the "Company"), and the compensation and benefits paid to me from time to time by the Company, I agree as follows:

1. *Competitive Employment.* While I am employed by the Company, I agree that, other than for the Company, I will not, either directly or indirectly, either as a principal, agent, employee, employer, partner or shareholder or in any other capacity, engage in any manner in the business conducted by the Company or any of its divisions, subsidiaries or affiliates.

2. *Definition of Confidential Information.* I realize that my position with the Company creates a relationship of high trust and confidence with respect to Confidential Information owned by the Company, its clients or suppliers that may be learned or developed by me while employed by the Company. I further acknowledge that my access to such Confidential Information is contingent upon my execution of this Agreement. For purposes of this Agreement, "Confidential Information" includes all information that the Company desires to protect and keep confidential or that the Company is obligated to third parties to keep confidential, including but not limited to "Trade Secrets" to the full extent of the definition of that term under California law. It does not include "general skills, knowledge and experience" as those terms are defined under California law.

3. *Examples of Confidential Information.* Confidential Information includes, but is not limited to: computer programs; unpatented inventions, discoveries and improvements; marketing, manufacturing, organizational, operating and business plans; the Company's internal system guides; strategic models; research and development; the Company policies and manuals and standard operating procedure; sales forecasts; personnel information (including the identity of the Company employees, their responsibilities, competence and abilities, and compensation); medical information about employees; pricing and nonpublic financial information; information and lists regarding any current and prospective clients, vendors, suppliers employees or contractors of the Company, as well as any clients that I know the Company is actively pursuing; information concerning planned or pending acquisitions or divestitures; and information concerning purchases of major equipment or property.

4. *General Skills, Knowledge and Experience.* If I leave the Company, I may take with me and use the general skills, knowledge and experience that I have learned or developed in my position or positions with the Company or others. However, for the avoidance of any doubt, I hereby agree and acknowledge that the Company considers any information and lists regarding any current and prospective clients, vendors, suppliers employees or contractors of the Company to be both its Confidential Information and Trade Secrets, and does not constitute general skills, knowledge and experience.

5. *Confidentiality Obligations.* During and after my employment with the Company, I will not (a) disclose, directly or indirectly, any Confidential Information to anyone outside of the Company or to any employees of the Company not authorized to receive such information (including, but not

limited, any future employer or contractor) or (b) use any Confidential Information other than as may be necessary to perform my duties at the Company. **In no event, at any time, will I disclose any Confidential Information to, or use any Confidential Information for the benefit of, any current or future competitor, supplier, vendor or client of the Company, whether on behalf of myself, any subsequent employer, or any other person or entity.**

6. *Duration.* With respect to Trade Secrets, my obligations under paragraph 5 shall continue indefinitely or until such Trade Secret information has been made available generally to the public either by the Company or by a third party with the Company's consent or is otherwise not considered a Trade Secret under California law. With respect to Confidential Information which is not a Trade Secret (herein referred to as "Proprietary Information"), my obligations under paragraph 5 shall continue in duration until the first to occur of the following: (a) five (5) years has elapsed since termination of my employment with the Company for any reason, or (b) the Proprietary Information has been made available generally to the public either by the Company or by a third party with the Company's consent.

7. *Geographic Scope.* I understand that the Company has sales and operations facilities throughout the United States and in a number of foreign countries, that it purchases equipment and materials from suppliers located throughout the world, and that it expects to expand the scope of its international activities in the future. I therefore agree that my obligations under paragraph 5 shall extend worldwide.

8. *Former Employers.* I acknowledge that the Company expects me to respect and safeguard the trade secrets and confidential information of my former employers. I have not and will not disclose to the Company, use in the Company's business, or cause the Company to use, any information or material that is confidential to any former employer, unless such information is no longer confidential or the Company or I have obtained the written consent of such former employer to do so.

9. *Return of Property.* Upon termination of my employment with the Company or upon the Company's request, I will deliver to the Company all the Company's property in my possession, including notebooks, reports, manuals, programming data, listings and materials, customer, vendor and supplier lists and contact information, engineering or patent drawings, patent applications, any other documents, file or materials which contain, mention or relate to Confidential Information, and all copies and summaries of such material whether in human- or machine-readable-only form, that I may have or that may come into my custody while employed by the Company.

10. *Restrictive Covenants.*
    (a) <u>Non-Solicitation of Employees</u>. While employed by the Company and for a period of twenty-four (24) months from the date of termination of my employment with the Company for any reason, I shall not directly or indirectly solicit, induce or encourage any the Company employee(s) to terminate their employment with the Company or to accept employment with any competitor, supplier or client of the Company, nor shall I cooperate with any others in doing or attempting to do so. As used herein, the term "solicit, induce or encourage" includes, but is not limited to, (i) initiating communications with a the Company employee relating to possible employment, (ii) offering bonuses or additional compensation to encourage the Company's employees to terminate their employment with the Company and accept employment with a competitor, supplier or client of the Company, or (iii) referring the Company's employees to personnel or agents employed by competitors, suppliers or clients of the Company.

    (b)<u>Non-Solicitation of Customers, Vendors and Suppliers</u>. For a period of twenty-four (24) months from the date of termination of my employment with the Company for any reason, I shall not, either directly or indirectly, as a principal, agent, contractor, employee, employer, partner or shareholder (other than as an owner of 2% or less of the stock of a public corporation) or in any other capacity, either solicit or engage in the business engaged in by the Company as of the date of termination of my employment ("CMC Business") with any current or prospective client, vendor or supplier which was a current or prospective client, vendor or supplier, of the Company within the twelve (12) months immediately preceding my termination.

    (c) I acknowledge that the restrictions set forth in this paragraph will not prevent me from obtaining gainful employment following termination of my employment with the Company.

    (d)In the event that any provision of this paragraph is held to be unreasonable, a court may modify such provision in any manner which results in an enforceable restriction.

11. *Injunctive Relief.* I acknowledge that my violation of the foregoing confidentiality, non-solicitation and non-competition obligations will cause the Company irreparable harm. I agree that the Company is entitled to protection from such violations, including protection by injunctive relief, in addition to other remedies available under the law.

12. *Definition of Developments.* For purposes of this Agreement, "Developments" shall mean all inventions, discoveries, developments, improvements, works of authorship and computer programs, ideas, concepts, enhancements, writings, graphics, designs, models, artwork, code, routines, compilations and related documentation (collectively, "Developments") that are or have been made, conceived, first reduced to practice or learned by me either solely or jointly with another or others while employed by the Company, including prior to the date hereof, whether or not they are patentable, copyrightable or subject to trade secret protection.

13. *Disclosure of Developments.* I will disclose promptly to the Company all Developments, including, to the extent not already done so, any Development made, conceived, first reduced to practice or learned by me either solely or jointly with another or others both prior to or after the date of this Agreement.

14. *Ownership of Developments.* I agree that, except as otherwise provided in paragraph 16 hereof, all Developments shall be the sole and exclusive property of the Company. Any Development for which copyright protection is available shall be considered a work made for hire. I agree to assign and do hereby assign, convey and transfer to the Company, or to some other legal entity ("Assignee") designated by the Company, all of my right, title and interest in and to all Developments in all media throughout the world in perpetuity. Without limiting the foregoing, I hereby assign, convey and transfer to the Company or an Assignee all of my right, title and interest in and to any Developments (other than Excluded Developments, as defined below) created prior to this Agreement. I further agree to waive any moral or similar rights to the Developments.

15. *Protection of Developments.* The Company or Assignee shall have the right to use the Developments and obtain Letters Patent, Copyrights (as author or assignee) or other statutory or common law protections for Developments in any and all countries. I will provide the Company or Assignee such assistance as may be requested in order for the Company to obtain or otherwise secure, and from time to time enforce, U.S. or foreign Letters Patent, copyrights or other statutory or common law protections for Developments, including the execution of any and all documents that the Company or Assignee may wish to use or obtain or otherwise secure or enforce such rights, together with any assignments thereof to the Company or Assignee, and to the successors and assigns of the Company or Assignee, transferring all of my right, title and interest in any Development, and the right to apply for or otherwise obtain any such rights. the Company or Assignee shall have the sole right to determine what action, if any, to take with respect to any Development. If I am unavailable for any reason, I hereby appoint the Company, as my agent and attorneys-in-fact, to execute and file any document(s) and to do all other acts to establish the Company's or Assignees ownership in, and further the prosecution, issuance, enforcement and maintenance of, any Development. All expenses incurred in obtaining and enforcing rights in Developments owned by or assigned to the Company shall be borne by the Company.

16. *Post-Employment Assistance.* If I am no longer employed by the Company, the Company or Assignee shall compensate me at a reasonable rate for time actually spent by me at the request of the Company or Assignee on the assistance referred to in paragraph 14. Such rate shall be determined by the Company and shall be based on my compensation at the time my employment with the Company was terminated. the Company or Assignee shall also reimburse me for pre-approved traveling and personal expenses incurred in complying with such request.

17. *Employee Inventions.* I understand that, as provided by California Labor Code § 2870, the provisions of paragraphs 12, 13 and 14 of this Agreement do not apply to an invention that I develop entirely on my own time and to which all of the following apply: (i) no equipment, supplies, facilities or trade secret information of Company are used, (ii) it is not related to Company's business or Company's actual or demonstrably anticipated research and development, and (iii) it does not result from any work performed by me for Company.

18. *Pre-Existing Developments.* I have identified at the end of this Agreement all Developments that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my employment with the Company and that I desire to exclude from operation of this Agreement ("Excluded Developments"). If there are no Developments listed, I represent that I have made no such Developments. If I incorporate or have prior to the date of this Agreement incorporated any Excluded Developments into any Company product or service or otherwise use or have used an Excluded Development for the Company's benefit as part of my Company employment activities, the Company is hereby granted and shall have a fully paid, nonexclusive, royalty-free, irrevocable, perpetual, worldwide, transferable and sublicensable license to make, have made, modify, create derivative works, reproduce, use, offer to sell, sell, import and distribute such Excluded Developments (as may be improved or enhanced by or for Company) and any Company product or Company service incorporating such Excluded Developments.

19. *Payments.* With respect to any Development for which the Company seeks to obtain U.S. or foreign Letters Patent, the Company will pay me the sum of Five Hundred Dollars ($500) when I execute an assignment of the Development to the Company, or when I execute the first patent application and assignment covering the Development, whichever occurs first. Divisional or continuation-in-part applications shall be considered to cover separate Developments. The payment of the sum of One Hundred Dollars ($100) shall relieve the Company of any obligation it may have had to make any further payments to me with respect to such Development. If there are several co-inventors, this sum shall be divided equally between them.

20. *Identification of Authorship.* The Company, its assignees and licensees are not required to designate me as the author of any Developments created as a work made for hire or assigned under this Agreement when any such work is distributed publicly, nor to make any such public distribution or any use thereof.

21. *Subsidiaries and Affiliates.* I understand and agree that this Agreement is executed by the Company on its own behalf and on behalf of each of its subsidiaries and affiliates, that my obligations under this Agreement shall apply equally to each of the Company's subsidiaries and affiliates and that such subsidiaries and affiliates may enforce this Agreement in their own names and if they were parties to this Agreement.

22. *Prior Agreements.* This Agreement supercedes all previous agreements relating to the same subject matter, including the Prior Agreement, except that the provisions of such previous agreements shall remain in effect with respect to any Developments disclosed by me to the Company prior to the date of this Agreement and this Agreement shall modify according to the terms hereof, but not terminate, any license or transfer of rights effected pursuant to such agreements. Any Development made or conceived during the term of such previous agreement but not disclosed until after the date of this Agreement shall be governed by the terms of this Agreement. The terms of this Agreement may only be modified in a writing signed by a senior officer of the Company.

23. *Severability.* If any provisions of this Agreement are held by a court to be void or unenforceable for any reason, the remaining provisions of this Agreement shall continue in full force and effect. If a court is of the opinion that any part of this Agreement is unreasonable, it may modify this Agreement to make it reasonable and enforceable in all respects.

24. *Recovery of Expenses.* I agree to pay to the Company the costs and reasonable attorney's fees incurred by the Company if it prevails in enforcing any or all of the terms of this Agreement.

25. *Survival of Obligations.* The provisions of paragraph 2-15 and 17-23 of this Agreement shall survive its termination.

26. *Assignment.*
    (a) By the Employee. I understand and agree that my duties and responsibilities under this Agreement are personal in nature and that this Agreement shall not be assigned, transferred or shared by me with any other person or entity without the prior written notification to and written approval of the Company, which approval may be withheld in the sole discretion of the Company.

    (b) By the Company. I acknowledge and agree that this Agreement and the rights and obligations of the Company hereunder may be assigned by the Company to an affiliate or successor by purchase or otherwise of the Company without my prior written approval, upon notice to me.

27. *Notification of New Employer.* If I leave Company for any reason, I consent to Company notifying my new employer of my rights and obligations under this Agreement.

28. *Governing Law.* This Agreement shall be construed in accordance with laws governing contracts made and to be performed in the State of California, without regard to its conflict of laws principles.

_____     _____
**EMPLOYEE**                        Date

**CREATIVE MARKETING CONCEPTS**

By: _____     _____

© 2006 Creative Marketing Concepts, Private & Confidential                6

Date

© 2006 Creative Marketing Concepts, Private & Confidential                                                                                7

The following are pre-existing Developments not covered by paragraphs 12-14, in which I have any right, title or interest, and which were conceived or written either wholly or in part by me prior to my employment with the Company, but neither published nor filed in any Patent Office.

**DESCRIPTION OF DOCUMENTS AND PATENTS (if applicable)**

| Title of Document | Date of Document | Name of Witness Document |
|---|---|---|
| _____ | _____ | _____ |