CHANDLER, WOOD, HARRINGTON & MAFFLY
RICHARD HARRINGTON (Bar #28099)
One Maritime Plaza, 4th Floor
San Francisco, CA 94111
Telephone: (415) 421-5484
Facsimile: (415) 986-4874

SHARTSIS FRIESE LLP
ROBERT CHARLES WARD (Bar #160824)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: rward@sflaw.com

Attorneys for Defendants and Counterclaimants
ANDREW VERITY and CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>    Defendants. | Case No. C 07-02748<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    March 3, 2008<br>Time:    2:00 p.m.<br>Dept:    15, Hon. Marilyn Hall Patel |
| ANDREW VERITY and CHRISTINA CHANG,<br><br>    Counter-Claimants,<br><br>v.<br><br>MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1 - 10,<br><br>    Counter-Defendants. | |

## I. INTRODUCTION

Plaintiff attempts to dispose summarily of counterclaims for which there is solid evidentiary support and which will prove very embarrassing to Lillge when this case is presented to a jury. Lillge owns a low-tech service business that depends on the hustle of his salespeople, yet forced his salespeople to sign unlawful non-competition agreements as a condition of continued employment. Lillge fired Chang in retaliation for refusing to sing such an agreement -- and quite likely also because he had just fired Chang's husband Verity. After firing them, and failing to get them deported through loss of their visas, Lillge engaged in a pattern of defamation, interference, and misuse of this litigation in order to stifle lawful competition from two of his top former employees who are just trying to earn a good living in their chosen field in their adopted country.

Chang cross-moves for partial summary judgment as to her Eighth Count for violation of Business & Professions Code section 17200. The evidence is undisputed that Lillge asked for -- and usually obtained -- agreements from employees, as a condition of continued employment, that unlawfully restricted the employees' post-termination right to compete.

Discovery is still ongoing in this case. Defendants still need to complete discovery that may unearth evidence relevant to this motion. Specifically, plaintiff Lillge's deposition will not be completed until February 12. Plaintiff has not yet allowed defendants to inspect CMC's office pursuant to inspection demand; and several third party depositions of customers have not been taken. Chang believes the evidentiary record is sufficient for the Court to deny the motion and grant the cross-motion. Chang nonetheless reserves the right to supplement the evidence in support of her motion when it becomes available.

## II. STATEMENT OF FACTS

While defendant Verity was employed as plaintiff Lillge's sales manager, responsible for most of the operations of CMC. Lillge asked Verity to obtain signatures from all employees on a confidentiality agreement. Verity Decl., ¶ 2. Verity discussed the agreement with Lillge's attorney who had drafted the document, including a non-competition provision that was in the agreement. Lillge's attorney told Verity that the non-competition provision was unlawful and

- 1 -

1   unenforceable, but that Verity should nonetheless try to get employees to sign it to "deter" them
2   from competing.  Verity Decl., ¶ 2, Ex. 1.  At Lillge's direction, Verity did so and obtained
3   signatures on the illegal agreement from most of CMC's employees.  Verity Decl., ¶ 3.  Verity
4   filed the agreements once they were signed and left those agreements at the office of CMC when
5   he was fired.  Verity Decl., ¶ 4.

6   Plaintiff Lillge fired defendant Verity and refused to pay Verity bonuses and deferred
7   compensation owed.  Verity Decl., ¶ 5.  Lillge demanded a three year non-competition agreement
8   from Verity as a condition of paying Verity a portion of what Verity was owed.  Verity Decl., ¶ 5.
9   At roughly the same time, Lillge demanded that defendant Chang, as a condition of continued
10  employment, sign a confidentiality agreement with the unlawful non-competition provision.
11  Chang Decl., ¶ 3.  Chang was refused, because neither she nor her husband could or would agree
12  to give up their ability to earn a livelihood in the United States.  Chang Decl., ¶ 3.  Lillge assumed
13  that by firing both Verity and Chang, he would destroy their visa status and essentially deport
14  them from the United States - - a convenient way to remove potential competitors.  Internal CMC
15  documents produced by Plaintiff show that Plaintiff was aware of the problem with immigration
16  status created by terminating Chang and Verity.

17  When Verity was fired on relatively short notice from Lillge, Verity immediately applied
18  for jobs.  Verity sought to remain in the U.S. on his wife Chang's visa.  As a backup plan, Verity
19  incorporated Verity Marketing Corporation, to maintain his immigration status as the owner of
20  his own business, should be unable to find another job and transfer his visa.  Verity Decl., ¶¶ 6, 7.
21  When Lillge fired Chang - - again on very short notice - - Verity and Chang now both had an
22  immediate crisis with their immigration status and faced deportation with their young son.  It was
23  only at this point, with Verity and Chang both fired on short notice with no other employment,
24  that they began working to establish their own business.  They did so because doing so was the
25  only thing within their control that Verity and Chang could do to remain in the United States.  the
26  only business that they could found with any reasonable prospects for enough success to earn a
27  livelihood was a promotional products business, their chose field for the past several years.
28  Verity Decl., ¶ 7.  Chang Decl., ¶ 5.  Neither Verity nor Chang took any steps to establish a

- 2 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

business competing with Lillge until after they had been fired. Verity Decl., ¶ 6, Chang Decl., ¶ 5. Verity and Chang established Branding Boulevard as the best means by which they could remain in the Unites States.

Once Lillge failed to get his former top manager and sales person deported out of the country, Lillge had to find other ways to avoid the inevitable loss of sales to former employees with a legitimate right to compete for business from the sales contacts they had developed over the years. Lillge targeted customers who had relationships with Chang or Verity, making defamatory statements. For example, one customer contact was told by Lillge that Chang had to leave the country because of a visa problem. Ward Decl., Ex. ___ (Pascual Depo. at ___.) Lillge wrote defamatory letters to suppliers, selecting, referring to and mischaracterizing this Court's orders. Lillge Decl., Exs. F, G. Lillge's letters suggest that this Court had ordered that Branding Boulevard could not sell to CMC customers, a patent falsehood since nothing in the Court's order forbids sales if the customer chooses to initiate contact with Branding Boulevard. Lillge's letters fail to mention that part of the Court's orders.

## III. ARGUMENT

The Court must view the evidence presented in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

### A. Plaintiff Is Not Entitled To Summary Judgment On Chang's Wrongful Termination Claim Because There Is Sufficient And Indeed Compelling Evidence That She Was Terminated For An Illegal, Anti-Competitive Reason

Plaintiff admits that Chang was fired because she would not sign a contract limiting her ability to compete should she be terminated by Plaintiff. MPA, p. 8, fn. 26. The agreement, Exhibit B to the Lillge Declaration, at paragraph 10(b), prevents employees, for two years post-termination, from engaging "in the business engaged in by the Company . . ." In other words, employees cannot work for a competitor in the promotional products industry. Business & Professions Code section 16600 ("Unauthorized Contracts") provides:

> Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void.

None of the eight exceptions in the chapter apply to CMC. *See* Cal. Bus. & Prof. Code § 16601-

- 3 -

16607. The agreement that Chang was asked to sign is illegal *per se*. If anyone should be moving for summary judgment on the wrongful termination claim, it should be Chang.

### 1. Plaintiffs Has Not Established That The Restrictive Covenant At Issue Was Enforceable.

Lillge's motion relies on a gross mischaracterization of both the restrictive covenant that Chang was asked to sign and the law on such covenants. Paragraph 10(b) of the confidentiality agreement is not limited to protection of trade secrets or a customer list. Rather, the covenant forbids employees, for two years, from being allowed to "engage in the business engaged in by the Company as of the date of termination of my employment ("CMC Business") with any current or prospective client, vendor or supplier which was a current or prospective client, vendor or supplier, of the Company within twelve (12) months immediately preceding my termination." This provision is the type of wholesale non-competition provision that is explicitly forbidden by Section 16600 and a long line of California cases. *See, e.g., Latona v. Aetna U.S. Healthcare, Inc.,* 82 F.Supp.2d 289 (employer's non-compete agreement which places a substantial segment of market off limits to former employee violates California restraint-of-employment statute); *Kolani v. Gluska,* 64 Cal.App.4th 402 (covenant not to compete in employment agreement prohibiting employee, for a period of one year from soliciting clients or potential clients of employer was void and unenforceable).

There is no authority whatsoever supporting the enforceability of a broad non-compete such as that which Lillge forced his employees -- and attempted to force Chang -- to sign. The three cases cited by Lillge certainly do not uphold the enforceability of the provision at issue. *Fowler v. Varian Associates, Inc.,* 196 Cal.App.3d 34 (1987), did not involve a post-termination non-compete. Rather, *Fowler* dealt with an employee who had engaged in competitive activities <u>while still employed</u> and was fired for it. The *Fowler* court most certainly did not approve the use of a blanket non-compete as a way to protect trade secrets. Similarly, *Gordon v. Landau,* 49 Cal.App.2d 690 (1958), does not hold that a broad non-compete is enforceable. Rather, in that case, the Court held that a <u>customer list</u> could be considered a trade secret and that an employer could enter into a contract with an employee restricting the right of the employee post-termination

- 4 -

1  to use the customer list itself. *Gordon* was focused on the actual list and did not involve a broad
2  agreement not to compete in the same industry as this case does. The third case, *Hollingsworth*
3  *Solderless Terminal Company v. Turley*, 622 F.2d 1324 (9th Cir. 1980), again did not uphold the
4  enforceability of a broad non-compete like the one Chang was asked to sign. In *Hollingsworth,* a
5  summary judgment <u>in favor of the employee</u> was reversed on appeal because the Ninth Circuit
6  found that there were disputed issues of fact as to whether the restrictive covenant at issue was an
7  illegal restraint under Section 16600. The Ninth Circuit held that the restrictive covenant at issue
8  <u>might</u> not be illegal. The Ninth Circuit most certainly did not hold that broad non-compete of
9  lengthy durations such as two years are enforceable against former employees.

**2.  Plaintiff Has Not Established That A Restrictive Covenant Forbidding Employees From Competing In The Same Business For A Period Of Two Years Is Necessary To Protect CMC Trade Secrets.**

12  The Court need not even evaluate the rest of plaintiff's argument with regard to Chang's
13  wrongful termination claim. The restrictive covenant that Chang was asked to sign is clearly
14  illegal. The only question ultimately will be Chang's damages to be awarded by the jury for her
15  termination because she would not sign an agreement with an illegal restrictive covenant.
16  However, should the Court be interested, plaintiff has failed utterly to show that such a broad
17  non-compete was or is necessary to protect its trade secrets. The key word is <u>necessary</u>. Plaintiff
18  has no good faith argument as to this covenant unless the extremely broad two year non-compete
19  was necessary to protect its trade secrets.

20  First, California has rejected the inevitable disclosure doctrine. *See Whyte v. Schlage*
21  *Lock Co.,* 101 Cal.App.4th 1443 (2002). The inevitable disclosure doctrine is the only theory
22  under which such a wholesale prohibition on working in the same industry could be necessary
23  and reasonable. Otherwise, the restrictive covenant should instead have limited the employee
24  from disclosing the actual trade secrets. For example, if Lillge had so chosen, paragraph 10(b)
25  could have been limited to prohibiting employees post-termination from using CMC's customer
26  list. Instead, the provision says simply and directly that the employee just is not allowed to work
27  in the same business for two years after being terminated by CMC. The argument that such a
28  broad restraint on competition is an appropriate means by which to protect trade secrets flagrantly

- 5 -

Case No.
C 07-02748

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

violates both the language of and policy for California Business & Professions Code section 16600.[1]

### B. There Is A Genuine Dispute As To Whether Chang Is Entitled To Additional Vacation Pay

Chang was promised an extra five days of vacation in connection with and as part of her termination by Plaintiff. Plaintiff does not challenge that the promise was made, only that it was a promise without consideration. Plaintiff is asking the Court to draw an inference from Chang's statement that the five additional days was not requested and a surprise to her. That Chang obtained a promise that she was not expecting does not establish lack of consideration for the promise. Inferences drawn from evidence must be viewed in the light most favorable to the party opposing summary judgment. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992). Viewing the evidence most favorably to Chang, a promise clearly was made and the inference that the Court must make is that it was not an idle promise by Lillge. In fact, the manager tasked by Lillge to terminate Chang, Bruce Molloy, stated in writing that the additional days would be paid "in consideration of your part-time contracting work prior to your regular full-time employment with CMC." Chang Decl., Ex.1. Plaintiff submitted no evidence of Molloy's intent in making the promise on behalf of Lillge. Disputes as to an employer's motives or state of mind raise factual issues precluding summary judgment. *See Sischo-Nownejad v. Merced Comm. College Dist.*, 934 F.2d 1104 (9th Cir. 1991). Molloy's emails informed Chang

---

[1] Chang does not need to address at this time Lillge's argument in Section IB, in which Lillge attempts to prove on summary judgment that he has established the existence of the trade secrets at issue. While the Court should not reach this issue on summary judgment, because the restrictive covenant is clearly far too broad to be necessary to protect any trade secrets, Chang will contest at trial the existence of the trade secrets claimed by plaintiff.

Plaintiff continues to misconstrue to the Court the significance of paragraph 9 of Chang's answer. Defendants, in that paragraph, made the unremarkable admission that some details of CMC's relationships with its customers may be trade secrets. <u>Defendants did not admit the existence of the trade secrets claimed by plaintiff</u>. Paragraph 9 of Lillge's complaint states generally that "there are many details regarding CMC's relationships with its customers which are not generally known to the public or CMC's competitors, and CMC derives independent economic value from this information which it has developed through substantial time effort and expense." Paragraph 9 of the complaint does not identify the trade secrets claimed by plaintiff and therefore defendants' admission of the unremarkable proposition that CMC might have some valuable confidential information is not a binding admission that establishes that CMC has proven the existence of the trade secrets at issue. The utter disingenuousness of this continued argument by plaintiff is demonstrated by defendants' answers to subsequent paragraphs in the complaint. For example, it is in paragraph 11 -- and thereby the existence of the claimed trade secrets -- of the complaint in which plaintiff lists the categories of trade secrets that it claims exists. Defendants deny the allegations in paragraph 11 of the complaint <u>in their entirety</u>.

- 6 -

Case No. C 07-02748 — DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### C. Chang, Rather Than Lillge, Is Entitled to Summary Judgment On Her Eighth Counterclaim Because Lillge Indisputably Engaged In The Practice Of Demanding That Employees Sign Illegal Non-Competition Agreements As A Condition Of Employment

Plaintiff Lillge knowingly engaged in a practice of asking his employees to sign, as a condition of continued employment, agreements that contained an unenforceable and unlawful non-competition covenant. Lillge admits that he asked employees to sign the agreement that is Exhibit B to his declaration. That agreement indisputably contains a restrictive covenant, at paragraph 10(b), by which he attempts to restrain employees from competing in the same business as CMC for a period of two years after termination. There is no California case law whatsoever holding that such a broad restrictive covenant is lawful and enforceable. To the contrary, every California case that has addressed a covenant of this nature has held it to be unlawful and unenforceable. *See supra* Section IIIA1. Based on the foregoing, the Court should grant partial summary judgment on Chang's eighth counterclaim because there can be no reasonable dispute that the restrictive covenant that Chang and other employees were asked to sign violates Section 16600. Section 17200 defines unfair competition as "any <u>unlawful</u>, unfair or fraudulent business act or practice." (emphasis added.) The restrictive covenant at issue is unlawful under Section 16600 and therefore Lillge's practice of asking employees to sign the agreement is a violation of Section 17200.

Lillge's standing defense to the Section 17200 claim is preposterous. Lillge argues that only a current employee would have standing to make a claim. Limiting potential plaintiffs under Section 17200 only to those still employed would reward Lillge for firing all employees who would not agree to the restrictive covenant. The real standing requirement is set forth in the statute itself. A Section 17200 claim may be made "by any person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Chang is exactly the right plaintiff to pursue this Section 17200 claim because she is an employee who lost her job and thereby income because of Lillge's unlawful and unfair business practice of demanding that employees sign a two year non-compete as a condition of continued

- 7 -

1 employment.

### D. There Are Disputed Issues Of Fact On The Defamation Counterclaim

Plaintiff first argues that Verity and Chang must prove special damages. This is incorrect for libel or slander per se -- statements that are defamatory on their face. *See, e.g., Triton Ins. Underwriters v. National Chiropractic Ins. Co.,* 232 Cal.App.2d 829, 833 (1965). Statements by Lillge that Chang had to leave the country because of an immigration problem are defamatory *per se*. An oral statement that tends directly to injure a person in her business is slander per se. Cal. Civ. Code § 46(3). As to statements published by Lillge that are not defamatory *per se*, there is certainly disputed evidence on the question of damages. Verity and Chang have not achieved sales anywhere near the level of their sales at CMC. Verity and Chang are entitled to let the jury decided if Lillge's defamation may be part of the course.

As to the two written communications, which Lillge admittedly broadcast to suppliers and customers, they are also defamatory on their face, in making accusations of wrongdoing against Verity and Chang. For example, the June 27, 2007 letter states: "We have reason to believe that they have used or threatened to use CMC trade secret information to solicit CMC's clients . . ." Lillge's September 7, 2007 email is worded to suggest that Verity and Chang are forbidden by Court order from doing business with CMC customers by describing <u>part of</u> the order but <u>omitting</u> any reference to the portion of the order that states that Verity and Chang "remained free to do business with those customers that contacted them."

Lillge has the burden at trial of establishing truth as a defense. Perhaps if Lillge had sent actual copies of the order, rather than selectively describing it, he could establish truth. Instead, there is a material issue as to whether Lillge intend mislead and defame with his partial description of the Court's order. More important, Lillge should not be publishing statements about the litigation in the industry. Lillge is not the enforcer of the Court's order; the Court is. If Lillge wants to prevent a violation of the order, he can seek contempt sanctions. If Verity or Chang had done the same thing that Lillge had done -- broadcast a communication to all industry contacts describing the Court order and emphasizing the portion of favorable to them -- Lillge, would have come howling to the Court seeking contempt sanctions. The only logical purpose for

- 8 -

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Lillge to send these letters to suppliers and customers was to dissuade them from doing business with Verity and Chang. With Verity and Chang limited in their ability to communicate with customers by the TRO, Lillge's actions were grossly unfair and defamatory.

### E. There Are Triable Issues Of Fact As To Whether Lillge Intentionally Interfered With The Prospective Economic Advantage Of Verity And Chang In Dealing With Industry Suppliers And Their Former Customers

The ability of Verity and Chang to compete for business with the customers and contacts with whom they have become acquainted is not just a mere "hope to sell" -- as Lillge characterizes it -- but rather a property right. The California Supreme Court has recognized that:

> Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formally been the customers of his former employer, provided such competition is fairly and legally conducted.

*Continental Car-Na-Var Corp. v. Moseley*, 24 Cal.App. 2d 104, 110 (1944). Therefore, as to the former customers with whom Verity and Chang worked while employed by CMC, Verity and Chang have more than a mere "hope" to do business.

There is substantial documentary evidence strongly suggesting that, but for Lillge's actions to interfere with Branding Boulevard, many of CMC's customers would choose to bring their business to Branding Boulevard. When Verity and Chang each announced their departure form CMC, each received a number of kind emails from customer contacts, many of which stated that they would prefer to do business with Andy and Christina, wherever they might be. Verity Decl., Exh. 1; Chang Decl., Exh. 2. When Lillge sent misleading statements regarding the litigation, some customers who might otherwise have done business with Branding Boulevard asked to be removed from Branding Boulevard's mailing list. Chang Decl., When Lillge sent misleading statements regarding the litigation, some customers who might otherwise have done business with Branding Boulevard asked to be removed from Branding Boulevard's mailing list. Chang Decl., ¶ 8, Exs. 3, 4.

Lillge's next challenge to the intentional interference count is that Verity and Chang have

- 9 -

Case No. C 07-02748 — DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

failed to establish economic harm proximately caused by Lillge. It is inappropriate for Lillge to argue damages on a motion for summary judgment, which is what he appears to be doing. There is one simple measure by which Verity and Chang can demonstrate that their new business has been damaged. Because of Lillge's statements to competitors and based on his obtaining from the Court a TRO and preliminary injunction based on evidence that will ultimately be proven false, Branding Boulevard has achieved sales that are substantially less than what Verity and Chang could otherwise have been reasonably expected to achieve with their new business. At the time that they were fired, Verity and Chang were personally and directly responsible for approximately $1.65 million in sales for CMC. Verity Decl., ¶ 8. Given the email communications establishing that several of their customers would prefer to do business with them, the Court and a trier of fact could reasonably conclude that Branding Boulevard should have achieved sales that were at least a significant percentage of their sales figures while at CMC (if not more). Instead, Branding Boulevard has only achieved sales of approximately $600,000 in the nine months since its founding.

## IV.   CONCLUSION

For the reasons set forth above, Chang respectfully requests that plaintiff's motion for partial summary judgment be denied and that the Court grant partial summary judgment in her favor on the eighth count in her counterclaim.

DATED:   February 11, 2008           SHARTSIS FRIESE LLP


                                     By: */s/ Robert Charles Ward*
                                           ROBERT CHARLES WARD

                                     Attorneys for Defendants
                                     ANDREW VERITY and CHRISTINA CHANG

7475\001\RWARD\1488858.1

- 10 -

Case No. C 07-02748 | DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT