# EXHIBIT 2

WARD DECLARATION IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF CHANG'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

MSN Hotmail - Message                                                                04/26/2007 10:06 AM

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat  Sign Out  Web Search: [          ] Go

  Hotmail                Today | Mail | Calendar | Contacts               Options | Help
bmolloy10@hotmail.com                                                                Free Newsletters

Reply | Reply All | Forward | Delete | Put in Folder | Print View

| From: | Bruce Molloy <bmolloy10@hotmail.com> |
|---|---|
| Sent: | Thursday, April 26, 2007 9:44 AM |
| To: | bmolloy10@hotmail.com |
| Subject: | H1B Visas |

B2B

Issues Arising from Termination of H1B Employees
Posted Dec 14, 2001

In this uncertain economic climate, we thought it timely to provide information on employer's and
employees' issues upon the termination of H1B Employees for the benefit of our MurthyBulletin and
MurthyDotCom readers.

The legal issue pertaining to termination of an H1B employee is an evolving area. We understand that there
are social and economic issues for the employer and the employee, low morale among the remaining employees
at the workplace, loss of income to the employee, loss of a sense of identity for certain employees, as
well as other psychological consequences of termination. These issues are beyond the scope of this
NewsBrief. With respect to termination, we focus on the immigration law angle based on existing law,
regulations, and INS policy guidance.

a. Obligation to provide reasonable costs of return transportation :

When an H1B worker is laid off before the end of the authorized period of stay, the H1B employer must
provide reasonable costs of return transportation for the employee to his or her last country of
residence. The law does not appear to require the H1B employer to pay the reasonable cost of the airline
ticket for returning the family members or for transfer of the H1B employee's property to the home
country.

Employers should keep in mind also that there is no obligation for an employer to provide the employee
return transportation costs if the H1B employee chooses to remain in the U.S.

The employer can choose to fulfill the obligation to pay return travel costs in various ways. For example,
the employer could either provide an amount equal to the reasonable return costs and obtain a written
release from the terminated H1B employee or, alternatively, the employer could provide the H1B employee

CMC 0600

with the return air ticket through the employer's travel agent, within a reasonable time after termination. This will ensure that the H1B employee does not collect the money and then decide not to depart the U.S.

If an employee believes that the employer is not complying with the above requirement, a complaint may be filed with the INS. Note, however, that INS policy regarding enforcement of the obligation is unclear and INS statutory authority to enforce this requirement is lacking.

It may be possible for a terminated H1B employee to enforce this obligation through state courts. However it is unclear as to whether this approach would succeed since there do not, as yet, appear to have been any cases pertaining to this issue. This is likely to be because it seems financially unsound to pursue litigation for a small amount of money.

We advise the employer to keep a record of compliance with this obligation.

b. Employer's obligation to notify INS of termination :

The law states that an H1B employer should notify the INS "immediately" of "any material changes in the terms and conditions of employment" regarding an H1B employee. Termination is considered such a change. The H1B employer should send a letter to the same INS Service Center that approved the H1B petition, notifying that Service Center of the termination of H1B employment.

Despite this provision, there is no sanction for failing to provide timely notification to the INS. However, failure to comply can cause confusion in the context of a U.S. Department of Labor (DOL) investigation. This matter is discussed more fully below.

After receiving notice, INS will revoke the H1B petition. This revocation typically does not occur immediately and may even take 2-4 months to be processed by INS.

We recommend that the employer send written notice of termination to the employee, by certified mail, return receipt requested, so that the H1B employee can consider making alternative arrangements to maintain valid status in the U.S. The employer may consider informing the employee that it is obligated to notify the INS and that therefore eventual revocation of the H1B Petition will occur.

It is recommended that the employer maintain an internal record of compliance with this obligation.

c. Obligation to continue to pay employee until termination :

The U.S. Department of Labor (DOL) has published regulations preventing the "benching" of H1B employees without full pay. The DOL requirement states that an employee who is temporarily non-productive due to the employer's request or lack of work, must continue to pay its H1B employee/s regular wages. The requirement ceases with a 'bona fide' termination.

DOL's policy has been that the employer is obligated to pay an H1B employee through bona fide termination until the employer has notified the INS. However, it appears that DOL will accept evidence such as written notice to the employee, as proof that the obligation to continue paying the employee has ceased and will not require additional proof of INS notification. In such an instance, the employer should comply with the INS notification regulation in order to avoid any ambiguity as to whether the employee was terminated or illegally "benched."

Note that, should the employer intend to rehire the employee on the prior H1B petition, subsequent to the termination, the DOL takes the position that the employer will be required to provide back pay for the entire period. Accordingly, it may make better sense to file a new H1B petition for the employee to indicate new employment, rather than relying on a previously approved H1B petition.

Employers should maintain careful records of an H1B employee's termination in the event that the Department of Labor questions the exact date of termination.

d. Consequences of termination for H1B employee :

Contrary to popular belief, rumor, and other confusion from various sources, there is no in-status "grace period" for terminated H1B employees. Therefore, the status ends on the final date of employment. A 60-day grace period was proposed by the INS in its June 19, 2001 Memo on the American Competitiveness in the Twenty First Century Act (AC21), as discussed below. This is still only a proposal, not the law.

INS policy is that time periods where an H1B employee receives severance salary payments or remains on the payroll without reporting to work are not periods of valid status.

Technically, an employee who remains in the U.S. after termination of the H1B petition dates, without extending or changing his/her status is violating his/her status. However, INS may exercise its discretion on a case-by-case basis to grant an extension, change, or amendment of status, in cases where the applicant was technically out of status for a brief period. It should be noted that the longer the time one is out of status, the less likely the INS is to approve the extension, change, or amendment of status. There are no set time limits in the law or regulations for the INS to exercise this discretion. It is safe to say that after September 11, 2001, INS discretionary actions in favor of the foreign national are less common.

CMC 0601

A general rule is that, typically, an H1B employee who is out of status for a period of 30 days or less would have a reasonable likelihood of having the out-of-status period disregarded by the INS. However, we cannot guarantee that this unofficial policy will always be honored.

e. Issues concerning the "Portability" under AC21 for terminated H1B employees :

The American Competitiveness in the Twenty First Century Act (AC21) of October 2000, now permits an H1B employee to start working for a new H1B petitioning employer immediately upon the filing of a non-frivolous H1B petition with the INS. Certain conditions also have to be met, one of which is that the new petition must be filed before the "date of expiration of the period of stay."

INS has not made clear exactly when the 'expiration of period of stay' occurs. It has been suggested that the expiration is the same as the expiration date on the I-94 card, rather than when the employee fails to maintain status. The INS stated in a memo by Michael Pearson, dated June 19, 2001, that "Congress does not appear to have limited portability benefits only to those who are working lawfully in H1B status at the time a new employer files a new H1B petition on their behalf. Nor, on the other hand, does Congress appear to have extended portability to any alien who has ever held H1B status, no matter how long ago or what the alien's current status in the United States. "

If the INS chooses to narrowly construe this provision and limit the definition of "date of expiration of the period of stay" to the time when the employment ceases, this will be problematic for many in H1B status. This is because if the period of stay is deemed to expire at the time when the employee fails to maintain H1B status - after the last day of employment - the employee is left with little or no time to coordinate the filing of a new H1B petition, with a new employer. There is some suggestion that INS may implement a grace period to allow terminated employees to take advantage of the portability rule, up to about 60 days, but the issue is unclear at this point.

Conclusion :

It is important for H1B employers to be aware of the obligations and responsibilities that arise once an H1B employee is terminated. The key is to maintain careful documentary records when facing this situation. In addition, there are issues that arise for the terminated employee.

We will continue to provide guidance in the MurthyBulletin and on MurthyDotCom, when and if the INS puts forth additional guidelines or regulations. In the meantime, terminated H1B employees should keep in mind that time is not on their side and they should act speedily if they wish to remain in the U.S. lawfully. We hope that this guidance in outlining some of the issues upon termination of H1B employment, is helpful to our MurthyBulletin and MurthyDotCom readers in planning from both the H1B employer's and H1B employee's perspectives.

*Bruce E. Molloy*

Cell: 415-269-7562

Fax: 510-225-3998

Email: bmolloy10@hotmail.com

CMC 0602