```
 1   HARVEY SISKIND LLP
     IAN K. BOYD (State Bar No. 191434)
 2   iboyd@harveysiskind.com
     SETH I. APPEL (State Bar No. 233421)
 3   sappel@harveysiskind.com
     RAFFI V. ZEROUNIAN (State Bar No. 236388)
 4   rzerounian@harveysiskind.com
     Four Embarcadero Center, 39th Floor
 5   San Francisco, California  94111
     Telephone:  (415) 354-0100
 6   Facsimile:    (415) 391-7124
 7
     Attorneys for Plaintiff
 8   Mark Lillge d/b/a Creative Marketing Concepts
```

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>           Plaintiff,<br><br>   v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>           Defendants. | Case No.  C 07-02748 MHP<br><br>**JOINT STATEMENT OF UNDISPUTED FACTS**<br><br>Date:   **March 3, 2008**<br>Time:  **2:00 p.m.**<br>Court: **Hon. Marilyn Hall Patel** |
| ANDREW VERITY and CHRISTINA CHANG,<br><br>           Counterclaimants,<br><br>   v.<br><br>MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1-10,<br><br>           Counterdefendants. | |

Pursuant to the direction of the Court, the parties hereby submit the following Joint Statement Of Undisputed Facts in conjunction with Plaintiff's motion for partial summary judgment. This joint statement contains solely facts which are undisputed for purposes of the pending motion only. The parties reserve the right to argue whether certain facts are material to the legal issues before the Court. The Court is also referred to the parties' respective pleadings, declarations or affidavits, citations to authority, and other evidence that the parties have submitted for the record.

## JOINT STATEMENT OF UNDISPUTED FACTS

1. Plaintiff Mark Lillge d/b/a Creative Marketing Concepts ("CMC") is a California sole proprietorship with its principal place of business on the 500 block of Market Street in San Francisco, California.
2. CMC is an industry-leading full-service advertising specialty and corporate apparel firm that sells businesses goods branded with the latter's corporate logo.
3. The promotional goods offered by CMC may be coffee cups, pens, shirts, or a countless number of items.
4. CMC has over 500,000 promotional products that it may custom brand for its customers.
5. Mark Lillge founded CMC in January 1992.
6. In 2006, CMC realized approximately $4,000,000 in gross revenue.
7. CMC typically spends approximately five percent of its annual gross revenue ($200,000) on marketing efforts to assist in developing its customer base.
8. When Defendant Chang left CMC, she advised CMC of certain customer information that she had developed over time in servicing these accounts on behalf of CMC, such as "buyer characteristics," and "who is the key buyer, what do they like?"
9. Defendant Chang advised that based on her interactions with a certain customer, and her familiarity with its purchasing history, this customer would likely have a need to place an order in June that would be "easily $15,000. It's a no-brainer."

–1–

10. Defendants admitted the following allegation in their Answer: "While the fact than any of CMC's actual customers might be willing to purchase promotional goods is information possibly available to CMC's competitors, there are many details regarding CMC's relationships with its customers which are not generally known to the public or CMC's competitors, and CMC derives independent economic value from this information which it has developed through substantial time, effort and expense."

11. CMC provides its employees with an Employee Handbook that discusses protection of what CMC believes to be its proprietary information.

12. CMC's Employee Handbook states that employees should not take home customer files or forward company e-mails without prior written authorization.

13. The CMC Employee Handbook expressly states that "CMC policy is that the company has invested significant resources to make contact with actual and potential clients. You will be required to sign a non-solicitation agreement to cover these relationships."

14. Regarding the Employee Handbook, Defendant Verity testified: "It was my understanding it applied to everyone's conduct at the company."

15. Defendant Chang testified that she also believed that the Employee Handbook applied to all of CMC's employees.

16. On January 31, 2007, while still employed by CMC, Defendant Christina Chang sent an e-mail to Plaintiff's principal Mark Lillge stating that she was "shocked!!!" to come across "2 pages of call-in [information] with tons of pertinent client project/quote info" in a recycling bin, as a "lot of pertinent info was written all over for an important client of ours . . . . I thought it is mandatory to shred all outdated artwork & paper containing client info."

17. Mr. Verity confirmed that he himself had removed samples of CMC customer information at trade shows on behalf of CMC in furtherance of this objective.

18. CMC's purchase orders state: "Client does not want over-run pieces to be used and/or distributed as samples nor shown in any printed materials, such as catalogs or flyers without prior written consent."

19. In April 2001, CMC hired Andrew Verity as Sales Manager.

20. In January 2005, CMC hired Christina Chang, Mr. Verity's wife.

21. As part of her job tasks, Ms. Chang prepared financial statements for the company, and had access to all customer account information.

22. At all times while employed by CMC, Ms. Chang was an at-will employee.

23. CMC asked Ms. Chang to sign the Agreement.

24. Ms. Chang refused to sign the Agreement.

25. CMC terminated Ms. Chang's at-will employment on May 11, 2007.

26. Since leaving CMC, Defendants Andrew Verity and Christina Chang have made sales to customers who previously had purchased products from CMC.

27. Neither Mark Lillge, nor any other representative of CMC, was present at these depositions, with the exception of CMC's counsel.

28. On June 1, 2007, the Court entered a Temporary Restraining Order against Defendants.

29. On October 2, 2007, the Court issued a Preliminary Injunction against Defendants.

30. On November 13, 2007, the Court entered an Order confirming the scope of the Temporary Restraining Order and Preliminary Injunction.

31. On November 2, 2007, Defendants filed an amended counterclaim.

32. Beginning on July 6, 2007, Defendants' counsel began sending letters demanding that CMC retract its letter, alleging that it was a "misrepresentation" of the Court's Order.

Respectfully Submitted,

DATED: February 11, 2008

HARVEY SISKIND LLP


By: ___/s/_____

Raffi V. Zerounian

Attorneys for Plaintiff/Counterclaim Defendants
Mark Lillge d/b/a/ Creative Marketing Concepts


SHARTSIS FRIESE


By: ___/s/_____

Robert Charles Ward

Attorneys for Defendants/ Counterclaimants
Andrew Verity and Christina Chang

## GENERAL ORDER 45 ATTESTATION

I, Raffi V. Zerounian, am the ECF User whose ID and password are being used to file this Stipulation to Extension of Time for Defendants to Respond to the Complaint. In compliance with General Order 45, concurrence in the filing of this document has been obtained from each of the other signatories and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated: February 11, 2008.

_____/s/_____