CHANDLER, WOOD, HARRINGTON & MAFFLY
RICHARD HARRINGTON (Bar #28099)
One Maritime Plaza, 4th Floor
San Francisco, CA 94111
Telephone: (415) 421-5484
Facsimile: (415) 986-4874

SHARTSIS FRIESE LLP
ROBERT CHARLES WARD (Bar #160824)
One Maritime Plaza, Eighteenth Floor
San Francisco, CA 94111
Telephone: (415) 421-6500
Facsimile: (415) 421-2922
Email: rward@sflaw.com

DE LA HOUSAYE & ASSOCIATES
C. ANGELA DE LA HOUSAYE (Bar #144218)
KARYNE T. GHANTOUS (Bar #191309)
1655 N. Main Street, Suite 395
Walnut Creek, CA 94596
Facsimile: (925) 944-3343
Phone: (925) 944-3300
Email: angela@delahousayelaw.com

Attorneys for Defendants and Counterclaimants
ANDREW VERITY and CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>Defendants. | Case No. C 07-02748<br><br>**DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO MARK LILLGE'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE ADJUDICATED IN CONTEMPT AND SANCTIONED**<br><br>Date: March 3, 2008<br>Time: 2:00 p.m.<br>Dept: 15, Hon. Marilyn Hall Patel |

Case No. C 07-02748   DEFENDANTS OPP LILLGE'S APP OSC WHY DEFENDANTS SHOULD NOT BE ADJ IN CONTEMPT AND SANCTIONED

| | |
|---|---|
| 1 | |
| 2 | ANDREW VERITY and CHRISTINA CHANG, |
| 3 | Counter-Claimants, |
| 4 | v. |
| 5 | MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1 - 10, |
| 6 | |
| 7 | Counter-Defendants. |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-02748

DEFENDANTS OPP LILLGE'S APP OSC WHY DEFENDANTS
SHOULD NOT BE ADJ IN CONTEMPT AND SANCTIONED

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS ................................................................................................ 1
    A. Procedural History ................................................................................................ 1
    B. Facts Concerning Communications With Past CMC Customers........................... 3
        1. Defendants' Contact With Chevron Federal Credit Union's Gina Lee.......................................................................................................... 3
        2. Defendants' Contact With Wells Fargo's Michelle Chan.......................... 4
        3. Defendants' Contacts With The Bingham Law Firm ................................ 5
        4. Defendants' Contacts With Kaiser Permanente Are Permitted By The Court's Order ..................................................................................... 5
    C. It is Plaintiff's Conduct In Connection With The Court's Orders That Merits Sanctions ..................................................................................................... 6

II. LEGAL ARGUMENT ....................................................................................................... 7
    A. Plaintiff Lacks Standing To Seek For Criminal Contempt Sanctions Against Defendants .............................................................................................................. 7
    B. Defendants Have Substantially Complied With The Court's Orders Here By Restricting Contact With Past CMC Customers To Only Those Who Contacted Defendants In Response To Their Notification of Change Of Address And Employment ...................................................................................... 9
    C. No Sanctions Are Merited: Plaintiff Has Suffered No Damage For Which It Should Be Compensated And Defendants Have Made Every Effort To Comply With The Order .................................................................................... 11

III. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Credit Indem. Co. v Sacks,*
   213 Cal. App. 3d 622 (1989).................................................................................................3

*Brunton v. Superior Court,*
   20 Cal. 2d 202 (1942), 124 P.2d 831 ..................................................................................10

*Crystal Palace,*
   817 F.2d at 1366..................................................................................................................12

*F.J. Hanshaw Enterprises, Inc. v. Emerald River Develop., Inc.,*
   244 F3d 1128 (9th Cir. 2001) ................................................................................................8

*Falstaff Brewing Corp. v. Miller Brewing Co.,*
   702 F.2d 770 (9th Cir. 1983) ..............................................................................................12

*Fonar Corp. v. Deccaid Services, Inc.,*
   983 F2d 427 (2nd Cir. 1993) ..............................................................................................11

*Hilb, Rogal & Hamilton Ins. v. Robb,* 33 Cal. App. 4th 1812, 1821 - 1822 (1994) ........................3

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.,*
   10 F3d 693 (9th Cir. 1993) ............................................................................................10, 11

*International Union, UMWA v. Bagwell,*
   512 US 821, 114 S.Ct. 2552 (1994) ...............................................................................7, 8, 9

*MAI Sys. Corp. v. Peak Computer, Inc.,*
   991 F. 2d 511 (9th Cir. 1993) ..................................................................................................3

*New York State Nat'l Org. for Women v. Terry*
   159 F3d 86 (2nd Cir. 1998) ..................................................................................................8

*O'Connor v. Midwest Pipe Fabrications, Inc.,*
   972 F2d at 1211 ..................................................................................................................12

*Reliance Ins. Co. v. Mast Const. Co.,*
   84 F3d 372 (10th Cir. 1996) .................................................................................................8

*Sorensen v. Superior Court*
   269 Cal. App. 2d 73 (1969) ................................................................................................10

*Spallone v. United States,*
   493 US 265, 110 S.Ct. 625, 632 (1990) ..............................................................................11

*Spindelfabrik Suessen–Schurr v. Schubert & Salzer,*
   903 F2d 1568 (Fed. Cir. 1990) .............................................................................................9

*Travelhost, Inc. v. Blandford,*

68 F3d 958 (5th Cir. 1995) ............................................................................................. 8

*United States v. Young,*
    107 F3d 903 (DC Cir. 1997) ................................................................................... 11

*Vertex Distribution, Inc. v. Falcon Foam Plastics, Inc.,*
    689 F.2d 885 (9th Cir. 1982) ................................................................................... 11

*Whittaker Corp. v. Execuair Corp.,*
    953 F2d 510 (9th Cir. 1992) ...................................................................................... 8

*Whitted v. Williams,*
    226 Cal.App. 2d 52 (1964) ....................................................................................... 3

**Statutes**

United States Code
    Title 18 §401 ............................................................................................................ 8

In a remarkable waste of this Court's Judicial resources, and of the Parties' time and financial resources, Plaintiff Mark Lillge d/b/a Creative Marketing Concepts ("Plaintiff" or "CMC" or "Lillge") seeks via his instant Application to impose criminal contempt sanctions against Defendants Andrew Verity ("Verity") and Christina Chang ("Chang") for conduct specifically permitted by this Court in its orders granting a Temporary Restraining Order and Preliminary Injunction.

While CMC lacks standing to seek the criminal contempt sanctions it lobbies for in its Application, its Application is utterly gutted by the fact that the evidence presented herewith (including that put forward by CMC in support of its Application) demonstrates that Verity and Chang have abided by the terms of the Court's Orders and have undertaken no action with regard to past CMC customers that this Court did not specifically authorize.

## I. STATEMENT OF FACTS

### A. Procedural History

On May 31, 2007, the Court issued a Temporary Restraining Order ("TRO"), which restricted Verity and Chang from soliciting past customers of CMC who did not make an effort to contact Defendants Verity and Chang. The restricted conduct, as well as the exception relating to customers that contacted Defendants, was stated as follows:

"They [Defendants] are not to solicit customers of CMC [but] if CMC's customers contact them, that's another matter..." (Transcript of the hearing on TRO, held on May 31, 2007, Declaration of Seth Appel ("Appel Decl."), Exhibit A, P16, LN 25 – P17, LN2).

The Court went on to elaborate, regarding the ongoing business, what Defendants could undertake with past CMC customers who had contacted Verity and Chang, by advising of a narrow exception to an all-out-ban on wholesale solicitations of CMC's past customers. The Court stated, "They [Defendants] better make sure that they can verify or substantiate the fact that those customers contacted them..." (Transcript of the hearing on TRO, held on May 31, 2007, Appel Decl. Exhibit A, P17, LN 2-3). The Court further elaborated that Defendants "can continue to do business with those Companies [that responded to Defendant's notification of change of address and employment]" (Transcript of the hearing on TRO, held on May 31, 2007,

Appel Decl. Exhibit A, P20, LN 23-24), and repeated that the burden of demonstrating that the business and solicitations were conducted and/or made following efforts by the past clients of CMC to communicate with Defendants, was Defendants' burden alone. (Transcript of the hearing on TRO, held on May 31, 2007, Appel Decl., Exhibit A, P20, LN 25 – P21, LN 6).

While the TRO issued on May 31, 2007 was not written, Defendants felt that they understood the Court's directive. They have carefully read the Court's Order granting the Preliminary Injunction and believe they have been careful to observe its restrictions. (Declaration of Andrew Verity ("Verity Decl."), ¶¶ 2,3,4,5; Declaration of Christina Chang ("Chang Decl."), ¶¶ 2,3,4,9).

Defendants have reasonably interpreted both Court Orders to allow them to do at least the following: (1) provide one notification to past CMC customers of Defendants new business contact information; and (2) attempt to sell to customer contacts that either responded to Defendants email notification or initiated contact with Defendants. (Verity Decl., ¶3; Chang Decl., ¶3.) Defendants have tried to keep careful records of their dealings with such customers, pursuant to the Court's guidance.

Using that understanding of the Court's orders, Defendants have not solicited anyone for business who they knew to be a past customer of CMC unless that customer either responded to Defendants' email notification or initiated contact on their own. (Verity Decl., ¶¶ 4,5,8; Chang Decl. ¶¶ 4,5,9,11,12,13).

In its October 1, 2007 Memorandum and Order issuing a Preliminary Injunction, the Court reiterated the restrictions stated in its TRO, as well as the narrow exception thereto, which permitted ongoing business with past CMC customers who contacted Defendants (Memorandum and Order, Appel Decl., Exhibit C, P4, LN 15-18). Further, in its Order on the Preliminary Injunction, the Court stated that, "…Defendants will be permitted to work with CMC's customers so long as Defendants do not solicit business from them." (Memorandum and Order, Appel Decl., Exhibit C, P11, LN 3-4, see also P12, LN 13-14).

The Court further clarified its restrictions, and the exception thereto, in its November 9, 2007 Order confirming the scope of the TRO and Preliminary Injunction, when it indicated that

providing notification to CMC's customers regarding their new businesses was not prohibited under the Orders (Order Confirming Scope, Appel Decl., Exhibit D, P2, LN 13-16) 1; and reiterated that "Defendants remained free to do business with those customers that contacted them" (Order Confirming Scope, Appel Decl., Exhibit D, P2, LN11).

### B. Facts Concerning Communications With Past CMC Customers

Under the facts presented by CMC in support of its Motion, as well as the additional supporting evidence provided by Defendants in their instant response to CMC's efforts to obtain criminal contempt sanctions against them, Defendants have not violated the Court's Order. Pursuant to the Court's exception to the "No Solicitation" rule, past CMC customers, by contacting Defendants in response to the neutral notifications, entered into the subset of past CMC customers that Defendants could do business with.

#### 1. Defendants' Contact With Chevron Federal Credit Union's Gina Lee

In CMC's recitation of the alleged evidence of violations by Defendants of the Court's TRO and Preliminary Injunction Order, CMC oddly appears to concentrate on providing a chronology of unrestricted actions by Defendants prior to the Court's May 31, 2007 TRO, with the same customer contact "Gina Lee" on which they largely based their TRO injunction arguments. While these facts are largely irrelevant, one key fact warrants additional consideration. In the recitation of Gina Lee of Chevron Federal Credit Union's contacts with Defendants, CMC admits, and has even provided the Court with evidence, proving that Ms. Lee contacted Defendant Chang in response to Chang's neutral notification of her change of address

---

1   Repeated Notifications of change of address of employment to a customer would, however, absent efforts by the customers to communicate with Defendants, constitute a violation of the Injunctions; and, under the law of this case has been defined by this Court as an impermissible initiation. (Order Confirming Scope, Appel Decl., Exhibit D, P2, LN 16-19). This holding by the Court follows California case law on the subject which holds that, merely announcing a job change, or impending job change, to clients of a former employer is not by itself solicitation of the business of those clients and is not actionable." *Hilb, Rogal & Hamilton Ins. v. Robb,* 33 Cal. App. 4th 1812, 1821 - 1822 (1994) (clients initiated transfer of accounts on learning of employee's job change).

"The announcement rule retains its validity ... and permits a former employee to announce a change of employment to individuals or firms he or she had serviced for the former employer even if those individuals or firms were on a protected trade-secret customer list because the right to announce a new affiliation is basic to an individual's right to engage in fair competition. *American Credit Indem. Co. v Sacks,* 213 Cal. App. 3d 622, 636 (1989); *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F. 2d 511, 52 (9th Cir. 1993); See also, *Whitted v. Williams,* 226 Cal.App. 2d 52, 59, 37 (1964). "The receipt or acceptance of further business by the new employer from former customers of the former employer who were not solicited or are not retained through the use of the former employer's trade secret may not be enjoined."

and employment (Declaration of Gina Lee ("Lee Decl.") P5, LN 17-19; Chang Decl. ¶5, Exhibit 1). This fact, as admitted by Plaintiff, negates any alleged violation by Defendants as to this customer.

Because Gina Lee responded to Chang's departure announcement, and asked where Christina was going, pursuant to the Court's Orders, Defendants considered her and her company to be a customer that they were allowed to solicit. There was already ongoing dialogue between Ms. Lee and Defendants at the time the Court issued the TRO. Defendants would not have tried to get business from her after the issuance of the Court's Orders, if she had not responded to Chang's email announcement. (Verity Decl. ¶8; Chang Decl. ¶5).

Furthermore, the evidence submitted by CMC indicates that CMC suffered no loss as a result of Lee's contact with Defendants, as Chevron, through Lee, purchased promotional items in May of 2007 from an unrelated third party. Regardless, CMC remained Chevrons "preferred vendor" thereafter. (Lee Decl. ¶10,11, Exhibit A).

Similar evidence demonstrates that the contacts with past CMC customers, which Plaintiff cites as examples of contempt by Defendants, also fall within the exception to the "No Solicitation" rule created by this Court, which permitted Defendants to do business with customers who contacted Defendants following their notification of change of address and employment[2].

### 2. Defendants' Contact With Wells Fargo's Michelle Chan

On May 11, 2007, as evidenced by CMC'S supporting Declarations, Michelle Chan of Wells Fargo e-mailed Defendant Chang following her neutrally worded e-mail notification of her change of address and employment. (Appel Decl., Exhibit E, P1).

When Ms. Chang sent her announcement of her last day at CMC, Michelle Chan, whom Defendant Chang had known even before Chan started work at Wells Fargo, sent Ms. Chang an email asking where she was going. Michelle Chan had initiated contact with Ms. Chang in

---

[2] Plaintiff's repeated use of the phrase "again initiating" (CMC'S Application for Order to Show Cause, P5, LN10, LN23; P6, LN9) is not only an oxymoron, but does not reflect the true facts that these persons and companies contacted Defendants.

response to her departure announcement, and it was only for that reason that Defendants had continued conversations with her. (Chang Decl. ¶11). Based on this evidence, Defendant cannot be found to have violated the Court's Orders as to this customer.

### 3. Defendants' Contacts With The Bingham Law Firm

Rebecca Gutfran of the Bingham Law Firm ("Bingham") also contacted Defendant Chang on May 11, 2007 in response to her e-mail notification of change of address and employment. (Appel Decl., Exhibit F, P2); (Chang Decl. ¶12 – May 22 phone conversation).

Furthermore, Tess Pasqual of Bingham had also contacted Defendant Chang immediately in response to her departure announcement and had indicated that Bingham would most likely continue to do business with Defendant rather than CMC because she was very pleased with the service that Defendant Chang had provided to Bingham in the past. Rebecca Gutfran was part of the same team at Bingham as Tess Pasqual and Defendant viewed interactions with Rebecca as part of an ongoing dialogue that had been initiated by Tess Pasqual of Bingham. (Chang Decl., ¶12). Tess Pascual testified that she contacted Defendant Chang in response to her notification of address and employment change because, she, on behalf of Bingham wanted to continue to do business with Defendant Chang and her new company. (Declaration of Robert Charles Ward ("Ward Decl.") ¶2, Exhibit A, Pascual Deposition Transcript, P72, LN 4 – P73, LN 7). Plaintiff has not only shown no violations as to this customer, but no justification for bringing its instant Application.

### 4. Defendants' Contacts With Kaiser Permanente Are Permitted By The Court's Order

The accusation that Defendants violated the Court's Orders through their contact with Doug DiFranco at Kaiser Permanente is equally unjustified. Doug DiFranco called Defendant Chang via cell phone on the date she sent her notification of change of address e-mail requesting that they maintain contact and inquiring about her business opportunity. Another Kaiser Permanente employee, Curshanda Cusseaux Woods, had also contacted Defendant Chang almost immediately in response to her announcement that she was leaving CMC. Woods made it very clear that Kaiser Permanente wanted to continue to do business with Defendants for promotional

products because they were very pleased with the service that Defendant Chang had provided in the past. Defendants viewed their communications with Doug DiFranco and Curshanda Woods as part of their larger interactions with Kaiser Permanente in response to their initiating contact with Defendant Chang in response to her departure announcement. (Declaration of Doug DiFranco, ¶3,4); (Chang Decl., ¶3). Plaintiff has shown no violation here, as with the others.

### C. It is Plaintiff's Conduct In Connection With The Court's Orders That Merits Sanctions

Although Defendants intend to file a noticed motion seeking to dissolve or modify the Preliminary Injunction and/or increase the Plaintiff's bond in the next few days, Defendants also invite this Court to address, on a *sua sponte* basis, the issue of CMC's contact with potential customers of Defendants. The identity of CMC's customers is simply no secret. The declaration of Timothy Schmolder demonstrated just how much information is publicly available just by walking into CMC's showroom. *See* Declaration of Timothy Schmolder. Lillge obtained provisional relief from this Court based on misrepresentations about the nature of his business and supposedly valuable confidential information. Having misled the Court, Lillge has compounded the wrong by misrepresenting, with broadside communications to hundreds of customers, that this Court's Orders prevent Verity and Chang customers from having any contact with them. To discourage customers from switching their business to Verity and Chang, Lillge also told potential customers that Defendants would be deported from the United States. In Tess Pascual's deposition testimony, she related how she was told by the "President of CMC" [Mark Lillge] that Defendant Chang would be departing for Canada shortly because of "visa issues". (Ward Decl., ¶2, Ex. A, Pascual Deposition Transcript, 73:8- 23). Gina Lee's declaration also demonstrates that CMC had contacted her and provided information concerning the Court's Order without explaining the exception that allowed customers to initiate contact with Defendants. In December 2007, Lee expressed to Chang that she had been told by CMC that there was a Court order that precluded Defendants from contacting her. This statement indicates that CMC had not accurately described the "Court's" orders to Lee. (Lee Decl., ¶14). In Michelle Chan of Wells Fargo's E-mail of November 8, 2007, she indicated that CMC contacted her to provide Lillge's

interpretation of the Court's Orders. (Appel Decl., Exhibit E, P5). Because of CMC's misinformation to past customers, Michelle Chan asked Defendant to take her off their contact list (Chang Decl., ¶11) - - depriving Branding Boulevard of a sales lead with whom contact clearly was allowed under the Court's order. (Chang Decl., ¶ 8.)

CMC has broadcast defamatory statements to suppliers and customers. (Verity Decl., Exhibit 1, to CMC's June 28, 2007 letter to industry suppliers. Exhibit 2, CMC's September 7, 2007 email to its customer contacts).[3] CMC's phone and e-mail communications with persons in the industry suggested that people should not do business with Defendants because the Court's Orders forbade it. Because of the Court Order, CMC took liberties to take uncontested potshots at Defendants in the marketplace. In response to these communications, some of Branding Boulevard's customers asked Verity and Chang if they were allowed to do business with them. For those who asked, Defendants reassured them that they were allowed to buy from them, as the Court had explained in its Orders. It is unknown, however, how many people simply decided not to speak with or buy from Defendants because they accepted CMC's statements that this Court's Orders expressly forbade contact with Verity and Chang. (Verity Decl., ¶ 6,7; Chang Decl. ¶¶ 8,11).

## II.  LEGAL ARGUMENT

### A.  Plaintiff Lacks Standing To Seek For Criminal Contempt Sanctions Against Defendants

A TRO or preliminary injunction may be enforced by either a civil or criminal contempt proceeding related to alleged violations. In the application at hand, Plaintiff seeks to have this Court impose criminal contempt sanctions, but lacks stranding to bring such an application. As the Supreme Court stated in the International Union case, civil contempt proceedings are instituted by a party; whereas criminal contempt is usually instituted by the Court. *International Union, UMWA v. Bagwell,* 512 US 821, 826, 114 S.Ct. 2552, 2556 (1994).

---

[3]  Lillge admitted that he "selectively" described the Court's orders to customer contacts. Ward Decl., Ex. 2 (Lillge Depo at 289:19-292:10. Lillge chose specifically to omit reference to any portion of the Court order that allowed customers to contact Verity and Chang because that part of the order was not "relevant" to his business and because he did not want to "promote" Defendants' business. *Id.* at 294:2-295:10; 298:9-299:24 [Lillge Depo.]

The Court alone may institute an action for criminal sanctions based on the procedural requirements for criminal contempt proceedings which are set forth in Rule 42 of the Federal Rules of Criminal Procedure, including the right to bail, trial by jury in certain cases and a host of other protections afforded accused criminals. [*F.J. Hanshaw Enterprises, Inc. v. Emerald River Develop., Inc.*, (9th Cir. 2001) 244 F3d 1128, 1139]. *[See International Union, UMWA v. Bagwell* 512 US 821, 831–832, 114 S.Ct. 2552, 2556 (1994) - "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires in criminal proceedings"].

Furthermore, the burden of proof in determining whether an act of contempt has taken place shifts depending on whether civil or criminal contempt is sought. In a criminal contempt proceeding, proof of the contempt must be established beyond a reasonable doubt. In a civil proceeding, the contempt must be established by "clear and convincing" evidence[4] (not merely a preponderance of the evidence). [*Whittaker Corp. v. Execuair Corp.*, 953 F2d 510, 517 (9th Cir. 1992); *Reliance Ins. Co. v. Mast Const. Co.*, 84 F3d 372, 377 (10th Cir. 1996)].

The difference between civil and criminal contempt proceedings involves the character and purpose of the sanction (fine or imprisonment) that is sought to be imposed. If the purpose is to vindicate the authority of the Court and to punish the violation, the sanction is criminal. In contrast, if the purpose is to compensate the complainant for losses caused by the violation and to coerce compliance with the injunction, the sanction imposed is civil (remedial) in nature. *Id. New York State Nat'l Org. for Women v. Terry* (2nd Cir. 1998) 159 F3d 86, 94–95.

In its Application, Plaintiff has referred this Court to portions of the U.S. Criminal Code which state, "A court of the United States shall have power to punish by fine or imprisonment or both, at its discretion, such contempt of its authority" 18 U.S.C. §401 (Plaintiff's Application for Order to Show Cause Re Contempt, P6, LN 24 - 26). Plaintiff further indicates that, "The Court's sanction should include... a substantial fine to Defendants in order to coerce future compliance

---

[4] "Clear and convincing evidence" has been defined as evidence that produces in the mind of the trier of fact "a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction without hesitancy, of the truth of the precise facts" at issue. [*Travelhost, Inc. v. Blandford*, (5th Cir. 1995) 68 F3d 958, 961 (5th Cir. 1995)].

- 8 -

with the preliminary injunction. Such coercive sanctions need not be matched to any actual loss suffered by Plaintiff, as they serve solely the purpose of ensuring prospective compliance." (Plaintiff's Application for Order to Show Cause Re Contempt, P7, LN 11 - 14). Despite couching the sanctions sought as civil in nature, in reality Plaintiff seeks criminal sanctions that are solely within the purview of this Court to initiate. As such, Plaintiff lacks standing to bring its instant application.

When a civil contempt order is designed to coerce compliance, the sanctions imposed must always give the contemnor the opportunity to purge itself of the contempt by complying with the Court's Order. Sanctions for past conduct usually indicate a criminal contempt, whereas fines announced before the violation occurs indicate a civil contempt, (because the party can avoid the fine by not violating the order). [*See International Union, UMWA v. Bagwell*, supra, 512 US at 836–837, 114 S.Ct. at 2562]. Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge, Plaintiff has not sought the imposition of a purgeable sanction, only a criminal penalty. Thus, "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." [*International Union, UMWA v. Bagwell*, supra, 512 US at 829, 114 S.Ct. at 2558]

In the *Spindelfabrik* case, the Court looked beyond a similarly labeled "civil" contempt sanction to analyze the true nature of the sanctions sought, despite the words used, the contempt proceedings were criminal in nature because the fine was unconditional (could not be avoided by future compliance) and far exceeded any damages suffered by plaintiff. [*Spindelfabrik Suessen–Schurr v. Schubert & Salzer*, 903 F2d 1568, 1579 (Fed. Cir. 1990); see *International Union, UMWA v. Bagwell*, supra, 512 US at 829, 114 S.Ct. at 2558]. Implementation of the same analysis to Plaintiff's Application in this case would similarly characterize its Application for Sanctions as seeking criminal sanctions that it lacks standing to seek.

**B.    Defendants Have Substantially Complied With The Court's Orders Here By Restricting Contact With Past CMC Customers To Only Those Who Contacted Defendants In Response to Their Notification of Change Of Address And Employment**

As described herein, and as demonstrated in the evidence presented by both sides, Defendants have complied with the Court's Orders as they reasonably, and they believe properly, understand them. To the extent, however, that this Court finds that Defendants did not comply with the Court's Orders as it intended its restriction on contacts, and business with past CMC customers to be followed, then this Court should still not hold Defendants in contempt based on their good faith efforts at full and complete compliance with the Court's restrictions as they understood these to affect their interactions with past CMC customers.

In such an event, Defendants would urge this Court to find that they acted in substantial compliance with the Court's Orders, regardless of the interpretation the Orders were given. As the Court in the Dual-Deck Video Cassette Recorder Antitrust Litigation case held, "substantial compliance" with a court order is a defense to civil contempt and is not vitiated by a "few technical violations" where reasonable efforts have been made to comply. [*Dual-Deck Video Cassette Recorder Antitrust Litig.*, In re (9th Cir. 1993) 10 F3d 693, 695].

The acts constituting contempt must be clearly and specifically prohibited by the terms of the injunction. The party subject to the injunction must be able to determined from its terms what he or she may and may not do, and thus may not be held guilty of contempt for violating and injunction that is uncertain or ambiguous [*Brunton v. Superior Court*, (1942) 20 Cal. 2d 202, 205, 124 P.2d 831; *Sorensen v. Superior Court* (1969) 269 Cal. App. 2d 73, 78, 74, Cal. Rptr. 597]. Thus, if this Court determines that Defendants have misinterpreted Orders, based on the Court's language, and the interpretation discussed herein, Defendants did so in good faith. While Defendants do not believe the Orders, as they understand them, to be ambiguous, if the Court's interpretation of its Orders varies from that of Defendants, then such difference was based solely on a lack of understanding based on ambiguity, and not based on any willful intent to disobey the Court's Orders as explained in the Defendants' declarations. (Verity Decl. ¶¶ 2,3,4,8; Chang Decl. ¶¶ 2,3,4,5,11,12,13).

In determining whether an order is sufficiently clear to support a contempt conviction, some courts apply an objective standard that takes into account: (1) the language of the order; (2) the context in which it was issued; and (3) the audience to which it was addressed. [*United States v. Young*, 107 F3d 903, 908 (DC Cir. 1997)].

A district court may punish a party for contempt only if the order is clear and unambiguous: "An unclear order provides insufficient notice to justify a sanction as harsh as contempt." [*Fonar Corp. v. Deccaid Services, Inc.*, 983 F2d 427, 429–430 (2nd Cir. 1993).

As the *Dual Deck* Court stated, a person could not properly be held in contempt if his or her actions "appear to be based on a good faith and reasonable interpretation of the court's order." [*Dual-Deck Video Cassette Recorder Antitrust Litig.*, In re supra, 10 F3d at 695] (9th Cir. 1993) See also *Vertex Distribution, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889, (9th Cir. 1982).

CMC bears the burden of proof, "by clear and convincing evidence that under a good faith, reasonable interpretation of the protective order, the party allegedly in contempt did not substantially comply with the order." *Id.* Based upon the facts presented herein, CMC's Application must fail.

C. **No Sanctions Are Merited: Plaintiff Has Suffered No Damage For Which It Should Be Compensated And Defendants Have Made Every Effort To Comply With The Order**

Finally, given the lack of evidence of any actual damages, no sanctions should issue, even if the Court did not find that Defendants' interpretation was wholly in compliance, they acted in substantial compliance therewith, as they understood it.

In a civil contempt proceeding, "in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.' " [*Spallone v. United States*, 493 US 265, 280, 110 S.Ct. 625, 632 (1990). In a civil contempt context, "if the sanction is imposed to coerce compliance with the court's order, it must provide for "purging" (terminating the sanction) upon compliance. (Otherwise, the sanction would be criminal in nature.) If a fine is imposed for compensatory purposes, the amount must be based upon the complainant's actual losses suffered as a result of the contempt." [*O'Connor v. Midwest Pipe Fabrications, Inc.*, supra, 972 F2d at

- 11 -

1211; see also, *Crystal Palace*, 817 F.2d at 1366 (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)].

Here, Plaintiff has offered no evidence demonstrating any actual loss as a result of Defendants' alleged violations of the Court's Orders, and thus, no sanctions are merited as part of Plaintiff's Application.

### III. CONCLUSION

For the reasons set forth, Verity and Chang respectfully request that the Court deny the application. Plaintiff overreached to obtain the injunction. The request crosses the line. Plaintiff's use of this lawsuit to obtain unlawful competitive leverage should be discouraged.

DATED: February 15, 2008                SHARTSIS FRIESE LLP


By: */s/ Robert Charles Ward*
        ROBERT CHARLES WARD

Attorneys for Defendants
ANDREW VERITY and CHRISTINA CHANG

7475\001\RWARD\1492777.2