1  CHANDLER, WOOD, HARRINGTON & MAFFLY
   RICHARD HARRINGTON (Bar #28099)
2  One Maritime Plaza, 4th Floor
   San Francisco, CA 94111
3  Telephone: (415) 421-5484
   Facsimile: (415) 986-4874
4
   SHARTSIS FRIESE LLP
5  ROBERT CHARLES WARD (Bar #160824)
   One Maritime Plaza, Eighteenth Floor
6  San Francisco, CA 94111
   Telephone: (415) 421-6500
7  Facsimile: (415) 421-2922
   Email: rward@sflaw.com
8
   DE LA HOUSAYE & ASSOCIATES
9  C. ANGELA DE LA HOUSAYE (Bar #144218)
   KARYNE T. GHANTOUS (Bar #191309)
10 1655 N. Main Street, Suite 395
   Walnut Creek, CA 94596
11 Facsimile: (925) 944-3343
   Phone: (925) 944-3300
12 Email: angela@delahousayelaw.com

13 Attorneys for Defendants and Counterclaimants
   ANDREW VERITY and CHRISTINA CHANG
14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                      SAN FRANCISCO DIVISION

18

19 | MARK LILLGE d/b/a CREATIVE          | Case No. C 07-02748
   | MARKETING CONCEPTS,                 |
20 |                                     | **DECLARATION OF ANDREW VERITY
   |           Plaintiff,                | IN OPPOSITION TO APPLICATION FOR
21 |                                     | ORDER TO SHOW CAUSE RE:
   | v.                                  | CONTEMPT**
22 |                                     |
   | ANDREW VERITY and CHRISTINA         | Date:  March 3, 2008
23 | CHANG,                              | Time:  2:00 p.m.
   |                                     | Dept:  15, Hon. Marilyn Hall Patel
24 |           Defendants.               |

- 1 -
Case No.          DECL OF ANDREW VERITY IN OPP TO APPLICATION FOR
C 07-02748                    OSC RE: CONTEMPT

|   |   |
|---|---|
| ANDREW VERITY and CHRISTINA CHANG, | |
| Counter-Claimants, | |
| v. | |
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1 - 10, | |
| Counter-Defendants. | |

I, ANDREW VERITY, declare as follows:

1. I am a defendant in this action. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify thereto under oath.

2. I have done my best to comply with the Court's orders. The temporary restraining order issued on June 1, 2007 was not written, but I felt that I understood the Court's directive. I carefully read the Court's order granting the preliminary injunction and have been careful to observe its restrictions.

3. I have interpreted both Court orders to allow me to do at least the following: (1) provide one notification to my former customer contacts of my new business contact information; and (2) attempt to sell to customer contacts who either responded to my email giving them notice of my departure or initiated contact with me after I left CMC.

4. Based on my understanding of the Court's orders, I have not solicited anyone for business who I knew to be a customer of CMC at the time I was fired <u>unless</u> that person either responded to my email announcement or initiated contact with me later.

5. One problem with the interpretation of the Court's prior orders has been the part of the order allowing me to announce my new business address but not allowing me to do so more than once. When Lillge fired me, and I announced to my customer contacts that I was leaving CMC, I had no new business address to provide to my contacts. I did not start trying to establish Branding Boulevard until after both my wife, Christina Chang and I had been fired by Lillge. So when I sent my announcement that I was leaving CMC, the only forwarding contact information

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 2 -
Case No. C 07-02748
DECL OF ANDREW VERITY IN OPP TO APPLICATION FOR OSC RE: CONTEMPT

that I could provide was a personal email address, which did not suggest in any way that I was going to another business. Despite this, many of my customer contacts responded with gracious comments and requests to know where I was going. To those contacts who responded, I later sent my Branding Boulevard contact information after I got that company up and running. I also think that I should have been able to announce my new business more broadly to all of my customer contacts. My one widespread announcement just said that I was leaving and I feel that I was, and still am, entitled to announce my employment at Branding Boulevard. However, because of threats from Lillge's counsel and out of fear that the Court would interpret such an announcement as a "second" announcement, I have refrained from a widespread announcement of my new affiliation with Branding Boulevard. My restraint in this regard, by doing even less that what I reasonably think the Court's order allows me to do, shows how seriously I have taken the Court's orders and how careful I have been.

6.  Another problem with the injunction is that a large proportion of customers in this industry come through referrals from other customers. This was true of Creative Marketing Concepts. Lillge has stated that a majority of CMC customers were given to sales reps. This was just not the case. Usually a rep would start with one contact in say the marketing department and they would recommend that the rep call a certain contact in the HR department and so on. The injunction does not make clear how a customer is defined, either by company or by contact at a company. By way of example, Christina Chang did the first order with Bingham McCutchen at CMC. Over the years those customers were so pleased with her service that they referred other contacts at Bingham who called and asked for Christina to help on other jobs. The court should be clear that those customers called for Christina's help and not for CMC. This pattern was repeated across many customers. CMC is believed to have information that shows that a far greater amount of new business came from referrals versus from cold calling as Lillge claims but is refusing to hand it over.

7.  Contrasted with restraint in dealing with the marketplace in response to this litigation, Lillge has broadcast defamatory statements to suppliers and customers. Attached hereto as Exhibit 1 is a copy of a June 28, 2007 letter that Lillge sent to industry suppliers.

- 3 -

Attached hereto as Exhibit 2 is a copy of a September 7, 2007 email that Lillge sent to customer contacts. These Lillge communications suggest that people should not do business with us. Because of the Court order, I was powerless to respond, despite how grossly unfair it was for Lillge to take uncontested potshots at us in the marketplace. In response to these communications, as well as telephone conversations with Lillge in which he also tried to discourage people from doing business with Branding Boulevard some of our customers asked Christina or me if they were allowed to do business with us. For those who asked, we reassured them that they were allowed to buy from us. What I do not know is how many people never asked and decided not to buy from us because they accepted Lillge's statements that a Court order forbade it.

8. Gina Lee is one of the customer contracts who responded to Christina's departure announcement. Because she responded and asked where Christina was going, we considered her to be someone that we were allowed to solicit. There was already dialogue ongoing with her at the time the Court issued the TRO. We would not have tried to get business from her if she had not responded to Christina's email announcement.

Executed this 15th day of February 2008 at Berkeley, California.

*/s/ Andrew Verity*
ANDREW VERITY

7475\001\RWARD\1491770.1

- 4 -
Case No.
C 07-02748
DECL OF ANDREW VERITY IN OPP TO APPLICATION FOR OSC RE: CONTEMPT