HARVEY SISKIND LLP
IAN K. BOYD (State Bar No. 191434)
iboyd@harveysiskind.com
SETH I. APPEL (State Bar No. 233421)
sappel@harveysiskind.com
RAFFI V. ZEROUNIAN (State Bar No. 236388)
rzerounian@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone:  (415) 354-0100
Facsimile:    (415) 391-7124

Attorneys for Plaintiff and Counterdefendant
Mark Lillge d/b/a Creative Marketing Concepts

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>　　　　　　Defendants. | Case No.  C 07-02748 MHP<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE ADJUDGED IN CONTEMPT AND SANCTIONED**<br><br>Date:    March 3, 2008<br>Time:   2:00 p.m.<br>Court:  Hon. Marilyn Hall Patel |
| ANDREW VERITY and CHRISTINA CHANG,<br><br>　　　　　　Counterclaimants,<br><br>　v.<br><br>MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1-10,<br><br>　　　　　　Counterdefendants. | |

1    Defendants struggle to conjure up uncertainty and ambiguity regarding the Court's Orders in
2    the hope of finding (or justifying) a loophole. Yet the Court's decrees are summed up very simply by
3    a sentence that is found, appropriately, in the Court's own Order:

> Defendants will be permitted to work with CMC's customers so long as Defendants do not solicit them.[1]

6    Multiple "contacts" or "notifications" from Defendants to Plaintiff's customers are deemed a
7    solicitation.[2] Therefore, the question before the Court is whether Defendants solicited the CMC
8    customers at issue in violation of the Orders, or vice versa.

9    In their Opposition, Defendants take the untenable position that they have free rein to pursue
10   business opportunities with (i.e. solicit) any CMC client who provided any response whatsoever to
11   the Defendants' farewell emails. Apparently, the only CMC contacts off limits from Defendants'
12   repeated solicitations are those who did not have the common courtesy to wish Defendants well, or
13   otherwise respond in any way, after receiving Defendants' farewell emails.

14   After claiming that their conduct was permitted under the Court's Orders, Defendants argue
15   that if their conduct was not permitted, it must not be their fault, but that of the Court, because if
16   Defendants violated any Orders of the Court, it is only because the Court was too ambiguous.

17   Should the Court find that Defendants violated the Court's Orders, and that the Court was
18   sufficiently clear in issuing its Orders, Defendants close with the argument that they "substantially
19   complied" with the Court's Orders prohibiting them from soliciting CMC's contacts. Yet Defendants
20   failed to undertake reasonable efforts to ensure compliance with the Court's Orders. Therefore
21   Defendants are in violation.

22   The Court's Orders are clear and unambiguous. Defendants were personally present at the
23   hearings to hear the Court's findings (and warnings). If Defendants truly had any uncertainty as to

---

[1] Defendants are aware of this provision not only because it is in the Court's Preliminary Injunction Order, but because they also cite this line in their own papers. Opp., 2:24-2:26 (citing Memorandum & Order re: Plaintiff's Motion for Preliminary Injunction, Declaration of Seth I. Appel in Support of Application for Order to Show Cause ("Appel Dec.") Exh. C, at 11:3-11:4).
[2] Appel Dec., Ex. D (Order Confirming Scope of Temporary Restraining Order and Preliminary Injunction), at 2.

–1–

the effect of the Court's Orders, they chose to keep such concerns to themselves, and they thus have only themselves to blame for their conduct.

### 1.     Defendants Distort the Court's Orders

Defendants creatively argue that the Court's Orders allow them to "to do at least the following: (1) provide one notification to past CMC customers of Defendants [sic] new business contact information; and (2) attempt to sell to customer contacts that either responded to Defendants email notification or initiated contacts with Defendants."[3]

Defendants' version of the Court's Order with respect to this second element is incorrect.[4] They argue that Defendants can repeatedly attempt to solicit business indefinitely from any CMC customers that provided any response whatsoever to Defendants' farewell emails. Such responses apparently could have included anything from "Please don't contact me anymore," "Thanks," "Who is my new representative at CMC?," "Where are you going?," and "I really want to buy products from you if you are staying in this line of business." One wonders whether even an "Out of Office" reply would be sufficient for Defendants to claim open season on this contact.

Defendants admit this repeatedly in their opposition brief.[5] Given the number of years that the Defendants had been at CMC, it is inevitable that most of CMC's contacts would respond politely to wish the Defendants well in a reply email. Importantly, such replies were not solicitations to Defendants for current or future business from these contacts.

Tellingly, in order to justify their conduct, Defendants must add expansive language in parentheses to support their version of the Court's Order, and omit the key language preceding such language. For example, Defendants write:

---

[3] Opp., at 2 (citing Declaration of Andrew Verity ("Verity Decl.") at ¶3 and Declaration of Christina Chang ("Chang Decl.") at ¶3.
[4] Plaintiff does not dispute that the Court Orders permit Defendants to provide one notification e-mail to their customers advising them of their new contact information.
[5] "Defendants would not have tried to get business from her after the issuance of the Court's Order, if she had not responded to Chang's email announcement." Opp., at 4. "[CMC Customer] had initiated contact with Ms. Chang in response to her departure announcement, and it was only for that reason that Defendants had continued conversation with her." Opp., at 5.

–2–

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF                                    Case No. C 07-02748 MHP
APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT

1   "The Court further elaborated that Defendants 'can continue to do business with those
2   Companies [that responded to Defendant's notification of change of address and employment]'"
3   Opp., at 1. This snippet is misleading, and a full read of the passage at issue does not justify
4   Defendants' inserted language.

5   The full quote from the TRO hearing is as follows:

> "The Court: If you want [Defendants] to list also not just whom they've entered into any transactions with, whether they've signed agreements or whether there are oral agreements or any kind of preliminary offers, you know, and responses to those offers, they're to provide that information. *And if, in fact, those solicitations were not by these defendants,* in fact, it was a response to a notification, then they can continue to do business with those companies."[6]

10  Read in its entirety, it is clear that Defendants can continue to pursue solicitations that came in
11  response to Defendants' notification, but not solicitations that came from Defendants themselves. Put
12  simply, "those solicitations" that exist must not have been made by Defendants.

13  To the extent that such language regarding the Court's Orders was at any point unclear to
14  Defendants, they have no one but themselves to blame. Despite the aforementioned warning by the
15  Court to Defendants, as noted *infra,* Defendants chose to neither consult with their counsel regarding
16  the effect of the Court's Orders, nor did they seek any clarification from the Court.

17  If Defendants truly perceived any ambiguity, they sought to exploit it, rather than clarify it.[7]

18  **A.   Ms. Lee did not solicit defendants—they solicited her**

19  Defendants cannot contend that Ms. Lee solicited them for business. While Ms. Lee did
20  respond to Ms. Chang's May 11 e-mail by calling her to ask who would now be handling Ms. Lee's
21  account on behalf of CMC, she never at any time solicited Defendants for their new business.[8] Yet
22  once the Court's TRO was in place, Defendants nonetheless continued to solicit Ms. Lee by

---

[6] Appel Dec., Exh. A, TRO Transcript 20:18-25 (emphasis added).
[7] Defendants' own papers assert that the Court's Orders "specifically authorized" the conduct in question, leaving Defendants little room to assert any purported uncertainty regarding the Court's Orders. Opp., 1:11.
[8] Declaration of Gina Lee ("Lee Decl.") ¶5.

–3–

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF                                    Case No. C 07-02748 MHP
APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT

telephoning her in August 2007, sending her a catalog in August 2007, and calling Ms. Lee in December 2007. This is evidence of at least three violations of the Court's Orders.[9]

### B. Defendants offer no admissible evidence to refute soliciting Ms. Chan

Despite being admonished by the Court that Defendants' inability to substantiate their contacts with CMC's contacts would be "interpreted against [Defendants] when in doubt," Defendants curiously fail to submit any admissible evidence that "those solicitations" originated from Ms. Chan.[10] Defendants offer only the declaration of Christina Chang, which states that "[Ms. Chan] and I spoke a couple of times during the summer of 2007, during which [Ms. Chan] said that [her employer] had no orders for promotional products but that if she needed anything in the future, she would think of me." Chang Decl., ¶11. Ms. Chang's declaration regarding Ms. Chan's comments is, of course, hearsay.

Moreover, notwithstanding that their inability to establish a proper evidentiary trail for such communications would be "interpreted against them when in doubt," Defendants tellingly fail to submit either a declaration from Ms. Chan, nor did they notice her deposition.

What we are left with from an evidentiary standpoint is that there can be no question that Ms. Chang's November 8 e-mail to Ms. Chan was in fact another solicitation of Ms. Chan.

### C. Defendants offer no admissible evidence to refute soliciting Ms. Gutfran

Similar to the situation regarding Ms. Chan, Defendants offer only their own account of a May 22 phone conversation with this contact. Again, this testimony regarding Ms. Gutfran's comments is hearsay. Defendants further argue quite creatively that this contact was "part of the same [employer] team" as another contact, and "Defendant viewed interactions [with Ms. Gutfran]

---

[9] What is even more galling here is that Ms. Lee advised Defendants that she did not wish to do business with them on at least four occasions (twice verbally in May 2007, once in writing in May 2007, and once again verbally in December 2007). Lee Decl., ¶6, 9, 11, 14. Yet they kept coming at her.

[10] There can also be no question that Defendants had already solicited Ms. Chan before the TRO, as Defendant Chang's "notification" e-mail of May 22, 2007 stated: "We no[t] only offer the same branded products as all other vendors, but also large volume direct import. … I would love to help you with all your upcoming projects." Appel Decl., Ex. E.

–4–

1  as part of an ongoing dialogue that had been initiated by [another contact] at" this employer.
2  Defendants, of course, neglect to mention that that other contact is employed in the San Francisco
3  office of this nationwide employer, while Ms. Gutfran is employed in Hartford, Connecticut.[11]
4  Applying this same pretzel logic, Defendants' improper contact with Ms. Lee is therefore apparently
5  tantamount to an improper contact with everyone else employed by Ms. Lee's employer across the
6  country, and the same is true of Defendants' improper contacts with Ms. Chan regarding her co-
7  workers across the country. Again, Defendants fall short of their evidentiary threshold.

8  **D.   Defendants fail to offer evidence to refute that they solicited Mr. DiFranco**

9  Defendants do present a declaration from Mr. DiFranco, but this document is most notable
10 for what it does not contain. Mr. DiFranco confirms that he spoke with Ms. Chang prior to the TRO
11 in May 2007. DiFranco Decl., ¶3. The next paragraph of the declaration jumps to August 2007,
12 where Mr. DiFranco places an order with Defendant Chang. While Mr. DiFranco carefully states
13 that he "solicited quotes from a local vendor," he only advises that Ms. Chang's pricing was more
14 competitive than that local vendor. DiFranco Decl., ¶4. It would have been a simple matter to
15 include that Mr. DiFranco also solicited Ms. Chang for a quote for her business, as he did with the
16 "local vendor." But such a statement is not present in Mr. DiFranco's sworn document, and of
17 course Defendants' counsel would not have overlooked such a crucial point in drafting Mr.
18 DiFranco's declaration.[12] Again, Defendants fail to meet their burden.

19 **2.   Civil Contempt Sanctions are Proper**

20 **A.   CMC seeks and is entitled to civil contempt sanctions**

21 Defendants argue that the Court should not award sanctions for their contempt because CMC
22 does not have standing to seek criminal contempt sanctions. The problem with this argument is that

---

[11] Indeed, if these two employees were truly on the same "team," there would have been no need for Ms. Chang's June 11, 2007 e-mail advising Ms. Gutfran what projects Ms. Chang was working on for that employer's other offices.

[12] It is no defense for Defendants to argue that some of the CMC customers that Defendants improperly solicited might have ultimately purchased products from Defendants anyway. We will never know, because Defendants improperly solicited them first. And the effects of these improper solicitations, and the true extent of the loss to CMC, may not be fully known for some time.

–5–

CMC does not seek criminal sanctions. While CMC notes correctly that the Court, *sua sponte*, may initiate criminal proceedings against Defendants, CMC only seeks civil contempt sanctions. This is apparent from CMC's motion—"The Court's sanction should include both payment to CMC for its damages to compensate it for Defendants' misconduct and a substantial fine to Defendants in order to coerce future compliance with the preliminary injunction." Mot., at 7.

In their opposition, Defendants do not dispute that "if the purpose is to compensate complainant for losses caused by the violation and to coerce compliance with the injunction, the sanction imposed is civil (remedial) in nature." Opp., at 6. CMC does not seek anything different here.

The bottom line is that "[c]ivil contempt is remedial in nature, serving to coerce compliance with the court order, or to compensate the other party for losses sustained due to noncompliance." *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 554 (3rd Cir. 2003). "If civil contempt sanctions are not designed to punish, they may be retroactive. District courts hearing civil contempt proceedings are afforded broad discretion to fashion a sanction that will achieve full remedial relief." *Id.*[13]

### B.    Defendants did not act in good faith in attempting to comply with the Court's Orders

Defendants cannot assert good faith in attempting to defeat the sanctions. First, as their own authority confirms, good faith is not a defense to contempt. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993) ("contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to the court order."). Yet even if good faith is considered to be a mitigating factor regarding the scope of the remedy, it is absent here.

Defendants argue that the Court's Orders may be ambiguous, but point to no language or circumstances to explain the supposed ambiguity. In truth, Defendants have attempted to create

---

[13] For example, such discretion could include not only monetary sanctions, but issue sanctions as well.

–6–

ambiguity through a creative reading of the Court's Orders. Worse, they never sought any clarification from the Court regarding the scope of the Court's Orders.

Defendants also apparently never even sought the advice from one of the three law firms representing them in this action. Both Mr. Verity and Ms. Chang state in identically worded declarations that "I felt that I understood the directive." Chang Decl., ¶2; Verity Decl., ¶2 (emphasis added). This is because they each state that "I have interpreted both orders … " Chang Decl., ¶3; Verity Decl., ¶3 (emphasis added). No mention is made of their counsel's interpretation. Therefore, each of the Defendants state, "[b]ased on my understanding of the Court's Orders," they are confident that no such violation has occurred. Chang Decl., ¶4; Verity Decl., ¶4 (emphasis added). Defendants' willful refusal to consult with their own counsel regarding such crucial matters as the scope and effect of the Court's Orders precludes any assertion of good faith.

Yet even if one gives Defendants the benefit of every doubt regarding any purported ambiguity: "When a legitimate question exists as to the scope or effectiveness of a court's order, those who know of the decree, yet act unilaterally, assume the risk of mistaken judgments." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75 (1st Cir. 2002).

If Defendants believed that the Court Orders were ambiguous, they should have requested clarification from the Court (or at least their counsel). Defendants, however, chose to go it alone. *See Goya Foods*, 290 F.3d at 75 (Appellants "chose instead to rely on their own judgment as to [the interpretation of the order]. In so doing, the appellants acted at their peril.").[14] Having long assumed the risk of any purported misinterpretation, Defendants cannot belatedly escape liability.

**C.   Defendants have not "substantially complied" with the Court's Orders**

Defendants argue in the alternative that they "substantially complied" with the Court's Orders. This too rings false.

---

[14] *Sorensen v. Superior Court*, 269 Cal. App. 2d 73, 78 (Cal. Ct. App. 1969) and *Brunton v. Superior Court of Los Angeles County*, 20 Cal. 2d 202, 205 (1942), relied upon by Defendants, involved actions for criminal contempt that involved imprisonment.

–7–

Defendants' actions were conscious and deliberate, and did not amount to "harmless technical violations" under *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 696 (9th Cir. 1993), which Defendants cite to support their argument that their actions were in substantial compliance with the Court's Orders. The Court in *Dual-Deck* held that "contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to the court order." *Id.* at 695 (citing *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). Moreover, substantial compliance is only a defense to "'a few technical violations' where <u>every reasonable effort</u> has been made to comply." *Dual-Deck*, 10 F.3d at 695 (citation omitted) (emphasis added). Here, for the reasons noted above, including a failure to confer with the Court regarding any purported ambiguity, Defendants have not made "every reasonable effort" to comply with the Court's Orders, and the violations are nothing near "technical." Rather, Defendants' actions were deliberate and based upon bad faith—either direct knowledge or willful ignorance.

**3.    Plaintiff is Entitled to Recover its Attorneys' Fees**

Defendants do not dispute that Plaintiff is entitled to recover its attorneys' fees to be made whole. *Harcourt Brace Jovanovich Legal & Professional Publications v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994).[15] Accordingly, Plaintiff requests that it be able to promptly submit an affidavit concerning its fees to date regarding this motion.

///
///
///
///
///
///

---

[15] Defendants request that the Court issue sanctions against CMC *sua sponte* based upon alleged statements that are the subject of Defendants' defamation counter-claim without citing any authority supporting their request. As described in further detail in CMCs motion for partial summary judgment, Defendants' defamation claims are meritless. More to the point, Defendants repeatedly fail to understand that there is no injunction in place against CMC.

–8–

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF         Case No. C 07-02748 MHP
APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT

# CONCLUSION

Defendants have every right to compete fairly against Plaintiff. They are free to solicit as much business as they can handle from the thousands and thousands of non-CMC contacts in the Bay Area, and the hundreds of thousands of potential contacts nationwide. The Court's Orders further provide them with the ability to do business with any of CMC's contacts that solicit them. The only limited restriction on Defendants' business, which has received over $600,000 in just nine short months, is that they are not permitted to solicit CMC's contacts. Yet they willfully did so in violation of the Court's Order. If the Court's Orders are to have any effect, there must be consequences for such willful noncompliance.

DATED: February 25, 2008

Respectfully submitted,

HARVEY SISKIND LLP

By: _____/s/_____
Ian K. Boyd
Attorneys for Plaintiff and Counterdefendant
Mark Lillge d/b/a/ Creative Marketing Concepts