RICHARD HARRINGTON (SBN 28099)
CHANDLER WOOD HARRINGTON & MAFFLY LLP
One Maritime Plaza, Fourth Floor
San Francisco, California 94111 3404
Telephone:    415 421 5484
Facsimile:    415 986 4874
Email:        harr@well.com

ROBERT CHARLES WARD (SBN 160824)
SHARTSIS FRIESE LLP
One Maritime Plaza, Eighteenth Floor
San Francisco, California 94111 3404
Telephone:    415 421 6500
Facsimile:    415 421 2922
Email:        rward@sflaw.com

C. ANGELA DE LA HOUSAYE (SBN 144218)
BRENDAN J. DOOLEY (SBN 162880)
KARYNE T. GHANTOUS (SBN 191309)
DE LA HOUSAYE & ASSOCIATES, ALC
1655 N. Main Street, Suite 395
Walnut Creek, California 94596
Telephone:    (925) 944-3300
Facsimile:    (925) 944-3343
Email:        angela@delahousayelaw.com
              brendan@delahousayelaw.com
              karyne@delahousayelaw.com

Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE D/B/A CREATIVE MARKETING CONCEPTS,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW VERITY AND CHRISTINA CHANG,<br><br>    Defendants. | Case No: C-07-02748 MHP<br><br>**DECLARATION OF ANDREW VERITY IN SUPPORT OF MOTION TO DISSOLVE INJUNCTION OR, IN THE ALTERNATIVE, INCREASE BOND AND FOR PRELIMINARY INJUNCTION AGAINST PLAINTIFF**<br><br>Date:  April 7, 2008<br>Time:  2:00 p.m.<br>Dept:  Courtroom 15, 18th Floor<br>Judge: Hon. Marilyn H. Patel<br><br>Complaint Filed: May 25, 2007<br>Trial Date: None Set |

I, ANDREW VERITY, declare as follows:

1. I am a defendant in this action. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify thereto under oath.

2. I was fired by Mark Lillge ("Lillge"), as was my wife, Christina Chang.

3. Christina Chang and I <u>did not plan our exit</u>, lay the foundation for our new business, and execute a surprise raid on customers and employees of CMC. We were fired on short notice and created Branding Boulevard as a basis to obtain a replacement visa and remain in California with our young son.

4. For several years, I had been CMC's sales manager, earning substantial deferred compensation tied to the value of the business in exchange for my successful efforts and very long hours.

5. My wife, Christina Chang, came to work for the business and became CMC's best salesperson.

6. Sadly, the personal relationship between Lillge and I, who had once been good friends, deteriorated. In January 2007, Lillge told me that I was fired. I pleaded for two things: (1) employment at CMC through the end of 2007, so that I could find new employment and transfer my visa, and (2) the deferred compensation that I had earned. Initially Lillge agreed to both. Lillge then tried to change the deal and force me to accept less than what I was owed and only if I agreed to an onerous non-compete. Lillge gave me a short deadline to surrender to the changed and disadvantageous deal and fired me when I would not surrender. Attached hereto as Exhibit C, is a true and correct copy of the Deadline Correspondence from Lillge.

7. When I was fired, I immediately tried to find a new job with an employer who would sponsor the transfer of my visa. The plan for my wife, Christina Chang, was for her to stay at CMC to preserve both our immigration status and our ability to pay the mortgage. Unfortunately, within a couple of weeks, Lillge fired my wife, Christina Chang also.

8. Shortly after I was fired, I was advised by my immigration attorney that, if I could not find a new employer to sponsor my visa, I could obtain a visa as a business owner. For that reason, I incorporated Verity Marketing Corp. Verity Marketing Corp. was a shell to which I devoted no effort until Lillge fired Christina Chang. With neither of us in possession of an employer-sponsored visa any

longer, I was forced to implement the backup plan to remain in California. Christina Chang and I chose a name for the business - Branding Boulevard - and scrambled to launch a legitimate business in the only field in which we could do so quickly (to avoid deportation) and profitability (to pay the mortgage and for groceries).

9.   CMC has broadcast defamatory statements to suppliers and customers. Attached hereto as Exhibit A, is a true and correct copy of CMC's June 27, 2007 letter to industry suppliers. Attached hereto as Exhibit B, is a true and correct copy of CMC's September 7, 2007 email to its customer contacts.

10.  The Preliminary Injunction, by forbidding Christina Chang and I from soliciting the customer contacts developed through our years of hard work in the industry, has had a concrete deleterious effect on the new business Branding Boulevard. Based on the sales figures achieved by Christina Chang and I while working for CMC, and what we have been able to achieve with Branding Boulevard, there is compelling evidence that the damages for a wrongfully obtained injunction are going to be substantially higher than $100,000.

11.  Branding Boulevard's lost profits as a result of the TRO and injunction will be much greater than $100,000 by the time of trial.

12.  The factual peculiarity of the Plaintiff's computer accounting system is that it contains no database of client pricing by individual item, due to the fact the item numbers are not either printed or collected on the client invoice. The practice at CMC was not to print the product item number on invoices for clients. This was replaced by generic descriptions such as "Imprinted Mugs". The accounting system used at CMC was just a low technology bookkeeping system. The data collected mirrored what was printed on the invoice, so there was no collection of either item number or supplier, both essential items for a pricing database. The purchasing part of accounting system was not linked to the invoicing side in any way. In this way any claim that CMC has a database of customer pricing that rises to the level of a protectable Trade Secret is false.

13.  Regarding our sales volumes: In 2006, at CMC, I did $750,000 in sales and Christina Chang did $600,000 in the 7 1/2 months after she returned from maternity, making her annual sales rate around $950,000. Our combined annual sales rate was therefore $1.7M at a gross margin in excess of

-3-   Case No. C-07-02748 MHP

DECLARATION OF ANDREW VERITY IN SUPPORT OF MOTION TO DISSOLVE INJUNCTION OR, IN THE ALTERNATIVE, INCREASE BOND AND FOR PRELIMINARY INJUNCTION AGAINST PLAINTIFF

1 | 41%, which would result in $700,000 of gross profits.

      14.    At Branding Boulevard we achieved $600,000 in sales in our first 9 months in business, making the annual rate around $800,000 and around 36% gross margin, which would result in $288,000 of annual gross profits. The differential between the ability to procure sales before and after the Injunction is $412,000.00. Because 25% of our customers are not from CMC, the gross profit figure related to former CMC customers was approximately $216,000.00. Thus, the true result of the Injunction is $484, 000.00 in lost gross profits per year. I am aware that some customers are leaving CMC because of bad service, but not coming to us because of the restrictions on contacting them, other customers such as AC Transit need to get multiple bids on items and must buy from the lowest bidder, but Branding Boulevard is not allowed to even contact them to get on the quote list.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of March 2008 at San Francisco, California.

/ S /
_____
ANDREW VERITY

1 | I hereby attest, pursuant to General Order 45, section X.B., that I have on file all holograph signatures
2 | for any signatures indicated by a "conformed" signature (/S/) within this e-filed document.

/ S /
_____
BRENDAN J. DOOLEY

# EXHIBIT A

**EXHIBIT A**



572 MARKET STREET • SAN FRANCISCO, CA 94104
☎ 800.686.6462 • WWW.CMCPROMOS.COM

June 27, 2007

Dear President,

This is to put you on notice that on June 1, 2007, Judge Marilyn Hall Patel, of the United States District Court for the Northern District of California, San Francisco Division, granted a Temporary Restraining Order to prevent Andrew Verity and Christina Chang, former employees of Creative Marketing Concepts, from soliciting our clients or misappropriating any of CMC's trade secrets.

As you may be aware, Mr. Verity and Ms. Chang, have established their own promotional products business, which they have every right to do. We believe the name of the company is Branding Boulevard. However, CMC filed a lawsuit against Mr. Verity and Ms. Chang because we have reason to believe that they have used or threatened to use CMC trade secret information to solicit CMC's clients and acquire information about jobs that CMC has done in the past.

Accordingly, we ask that you inform the appropriate people in your organization that: 1) Mr. Verity and Ms. Chang are no longer employees of CMC and do not represent CMC in any way; 2) Mr. Verity and Ms. Chang are non entitled to any information regarding CMC clients, including products, pricing, artwork, etc.; and 3) please inform me directly if either Mr. Verity or Ms. Chang request any information about or relating to CMC's current or past clients.

CMC considers your company an important supplier and we have enjoyed the business relationship we have had with your company. As I trust you can appreciate, we must protect our mutual business interests and we will continue to pursue whatever legal actions are appropriate to preserve our valued client base and proprietary company information, which benefits your business as well as CMC's. I thank you for your cooperation.

Please contact me directly if you have any questions or need additional information.

Sincerely,

Mark Lilige
President

*Our mission is to provide the most suitable promotions for our clients with the best service at most competitive rates.*

# EXHIBIT B

**EXHIBIT B**

| | |
|---|---|
| **From:** | Mark Lillge |
| **Sent:** | Friday, September 7, 2007 10:19 PM (GMT) |
| **To:** | |
| **Subject:** | Creative Marketing Concepts Announcement |

Dear Valued Client,

Creative Marketing Concepts has been experiencing continued growth throughout 2007 and I am pleased to inform you that Phil Grosse has been promoted to Vice President of Sales for CMC. Phil joined CMC a few months ago and came to CMC with a solid background in sales and sales management. Since joining CMC, Phil has been a diligent and fast learner of the Promotional Products industry as well as the specific products and applications for these products that are important to our clients. Prior to CMC, Phil owned a management consulting firm and also served as President of the Board of Directors of the Polly Klaas foundation for several years. Phil will assume a leadership role in continuing the CMC tradition of providing "The most suitable products, with the best service, at the most competitive prices."

As you may be aware, Andy Verity and Christina Chang left CMC a few months back. You should note that Judge Marilyn Hall Patel, of the United States District Court for the Northern District of California, San Francisco Division has granted CMC a Temporary Restraining Order on June 1, 2007 which prohibits them not only from soliciting CMC clients but also restrains them from initiating contact with CMC clients. If you would like additional information about this situation, please contact me directly.

CMC is on track for another record-breaking year, thanks to our many loyal clients such as your company. In appreciation for your continued business, and with the holiday gift-giving season approaching, I would like to offer you 10% free goods on your next purchase before November 15th, 2007. Please mention this offer at the time of your purchase in order to qualify for this offer.

Thank you again for your business and we look forward to continue to provide your company with creative marketing ideas and outstanding customer service.

Sincerely,

Mark Lillge

---

Mark Lillge, President
Creative Marketing Concepts
572 Market Street
San Francisco, CA 94104

(415) 982-8618
mlillge@cmcpromos.com

*Our mission is to provide the most suitable promotions for our clients with THE BEST SERVICE at the most competitive rates*

This email is for the sole use of the intended recipient(s) and may contain confidential and proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.



Confidential

BM001435

# EXHIBIT C

**EXHIBIT C**

From: Mark Lillge <mlillge@cmcpromos.com>
Subject: Fwd: Final Offer
Date: April 26, 2007 12:07:42 PM PDT
To: Bruce Molloy <bruce@cmcpromos.com>
1 Attachment, 127 KB

Mark Lillge, President
Creative Marketing Concepts
572 Market Street
San Francisco, CA 94104

(415) 982-8618
mlillge@cmcpromos.com

*Our mission is to provide the most suitable promotions for our clients with THE BEST SERVICE at the most competitive rates*

Begin forwarded message:

From: Mark Lillge <mlillge@cmcpromos.com>
Date: April 26, 2007 11:59:09 AM PDT
To: andy.verity@sbcglobal.net
Cc: bethanymkaye@mycingular.blackberry.net, John Marlow <jmarlow@elawgrp.com>
Subject: Final Offer

Andy:

I am disappointed with your reaction to our proposal. As you know, the Agreement we prepared incorporated all of the monetary terms that you had originally requested, even though I disagreed with your calculations. Your latest demand goes far beyond what we had originally discussed, and is, quite frankly, unreasonable.

With regard to your demand regarding your visa, we have looked into this, and we cannot lawfully support your visa application unless you are actively employed by the Company.

And, although Christina's employment situation is separate from yours, as a married couple you are in fact a single legal entity. That is why we would require her agreement, as well.

Finally, the restrictive covenants we are seeking are narrowly drafted to protect the Company's proprietary information. Regardless of your Agreement, you may not use the Company's specific client contact information for your own (or another's) benefit as a matter of law. This is not public information that can be found on the Internet or in a phone book, which you are of course free to use.

EXHIBIT 8
WITNESS M. LILLGE V3
CONSISTING OF 3 PAGES
DATE 2-12-08
BEHMKE REPORTING & VIDEO SERVICES

CMC 0564

I am only concerned about the contact details that we have obtained through our hard work and marketing efforts. This information belongs to the Company under (among other things) the Uniform Trade Secrets Act, and we will take all steps necessary to protect it.

As you know, I like to lead with my best offer first, and I have done so here. Attached to this email is a slightly revised version of the Agreement Bruce sent you earlier this week. We have made some "clean up" edits and changed the termination date from tomorrow to Friday, to give you some additional time to consider the Agreement. In all other respects, it is substantially the same as the prior version.

If you do not accept this Agreement by 12 o'clock noon on Friday, April 27, I will have no choice but to terminate your employment at the end of the day.

As you are well aware, I have ample cause for taking this step, even though you are employed at-will. In addition to your abrasive management style, which has led to numerous employee complaints over the years, we have evidence of your misappropriation of Company funds. For example, I know that you used Company funds to pay $1,000 to expedite the processing of your visa, after we specifically discussed this issue and I told you that the Company would not pay this fee. Another example is your personal trip to China, which you charged to the Company's credit card and failed to recognize as a personal expense.

Upon your termination, you will be paid your final salary and accrued vacation. You will not be paid anything for the 2007 bonus, because to date the Company has not recognized a profit for fiscal year 2007, and therefore the amount of your pro-rata bonus is currently zero.

Because the Company was not sold or incorporated during your employment, and the Company remains a sole proprietorship, there is currently no value in your "ownership" interest. If and when I sell or incorporate the Company, you will receive 11.5% of the value (in cash or stock, respectively).

Finally, as required by law, we will provide you with a one-way, unrestricted, coach-class fare to Montreal. Also as required by law, we will notify the Bureau of Citizenship and Immigration, as well as the Department of Labor, that your employment has terminated.

At this point, I do not believe that further negotiation or discussion between us would be productive. If you, or your attorney, have questions, you may contact the Company's attorney in this matter, Bethany M. Kaye of Employment Matters Counseling & Consulting LLP. Her number is 415-642-6065. Also, I would ask that you do not come to the shop or our offices. If you have any Company property to return (such as your keys), we ask that you either mail them to us via certified mail, or have Christina bring them to the office.

Andy, we have known each other for a very long time, and I am truly sorry that our relationship is ending this way. I hope that you will reconsider my offer, and allow us to part amicable.


Verity-Chan....doc (127 KB)

Mark Lillge, President
Creative Marketing Concepts
572 Market Street
San Francisco, CA 94104

(415) 982-8618
mlillge@cmcpromos.com

*Our mission is to provide the most suitable promotions for our clients with THE BEST SERVICE at the most competitive rates*

CMC 0566