# EXHIBIT I

**EXHIBIT I**

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4  - - - - - - - - - - - - - - - - - -

5  MARK LILLGE d/b/a CREATIVE MARKETING   )

6  CONCEPTS,                              )    Case No.

7         Plaintiff,                      )    C07-02748

8  V.                                     )

9  ANDREW VERITY and CHRISTINA CHANG,     )

10        Defendants.                     )

11 - - - - - - - - - - - - - - - - - - -

12 AND RELATED CROSS-ACTION.              )

13 - - - - - - - - - - - - - - - - - - -

14

15       VIDEOTAPED DEPOSITION OF GINA LEE

16          FRIDAY, FEBRUARY 22, 2008

17

18

19

20

21       BEHMKE REPORTING & VIDEO SERVICES

22  BY: CHRISTINE L. JORDAN, CSR NO. 12262, RPR

23          160 SPEAR STREET, SUITE 300

24      SAN FRANCISCO, CALIFORNIA 94105

25              (415) 597-5600

1

1    Q.   Is there anything else she said that dissuaded

2  you from placing the order with CMC?

3    A.   I don't recall if she said it at the time

4  that I was placing the order, but she did say some

5  other things afterwards.

6    Q.   Okay.

7         So as far as in connection with that $20,000

8  order in the spring of 2007, what you've just

9  testified to is what you recall Ms. Chang saying that

10  influenced your decision as to who you were going to

11  give that business to?

12    A.   Yes.

13    Q.   Did either Jocy or Mark Lillge say anything to

14  you that influenced your decision not to place your order

15  with Creative Marketing Concepts?

16    A.   Yes.

17    Q.   What did -- who and what did they say that

18  influenced you?

19    A.   Mark had told me that they were going to

20  court with Christina.

21    Q.   Okay.

22         So do you -- is it your recall that when he

23  said this to you, he said it in sort of the future

24  tense as in, "We're going to court against them"?

25    A.   Yes, "We are planning to go to court."

1    Q.    And so when he told you, "We're going to go to
2    court against Christina Chang and Andy Verity," that was
3    something that affected your decision as to whether you
4    wanted to order merchandise from them?
5    A.    Yes.
6    Q.    That's because you didn't want anything to do
7    with a company embroiled in litigation?
8    A.    Um, for now, yes.
9    Q.    And Mr. Lillge volunteered that information to
10   you?
11   A.    I might have asked; he might have
12   volunteered.  I don't recall.
13   Q.    Is there anything else Mr. Lillge said that
14   dissuaded you from placing that order with Creative
15   Marketing Concepts?
16   A.    No.
17   Q.    Did Mr. Lillge ask you to sign a declaration
18   back in the spring of 2007 when he told you they were
19   going to court?
20   A.    No.
21   Q.    Why did you agree to sign a declaration?
22   THE WITNESS:  Um, should I answer that?  Yeah?
23   MR. BOYD:  You -- sure.
24   THE WITNESS:  Okay.
25        Because I felt that the events that occurred

59

1           UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3           SAN FRANCISCO DIVISION

4  - - - - - - - - - - - - - - - - - -

5  MARK LILLGE d/b/a CREATIVE MARKETING  )

6  CONCEPTS,                    )   Case No.

7        Plaintiff,        )   C07-02748

8  V.                       )

9  ANDREW VERITY and CHRISTINA CHANG,   )

10        Defendants.        )

11  - - - - - - - - - - - - - - - - - -

12  AND RELATED CROSS-ACTION.        )

13  - - - - - - - - - - - - - - - - - -

14

15       VIDEOTAPED DEPOSITION OF GINA LEE

16        FRIDAY, FEBRUARY 22, 2008

17

18

19

20

21       BEHMKE REPORTING & VIDEO SERVICES

22    BY: CHRISTINE L. JORDAN, CSR NO. 12262, RPR

23         160 SPEAR STREET, SUITE 300

24      SAN FRANCISCO, CALIFORNIA 94105

25           (415) 597-5600

CERTIFIED COPY

1          Did you contact anyone at Branding
2    Boulevard?
3       A.   No.
4       Q.   And did you get a call from Christina Chang in
5    the fall of last year?
6       A.   Yes.
7       Q.   Okay.
8            What do you recall about that?
9       A.   Not much.
10      Q.   Do you recall that she was pitching you for
11   business?
12      A.   That's normally why they'd call.
13      Q.   Okay.
14           And do you recall what you said to
15   Ms. Chang?
16      A.   I'm pretty sure it was along the lines of,
17   "Stop calling."
18      Q.   Okay.
19           Did you say anything to her about that she
20   shouldn't be calling you because of a court order?
21      A.   Yes.
22      Q.   And how did you acquire your understanding that
23   there was some court order that prevented her from
24   contacting you?
25      A.   I spoke with Mark, and he had mentioned that

39

1  they -- he couldn't tell me much, that there was a

2  legal proceeding, but that they were in court and

3  that she shouldn't be contacting me anymore.

4      Q.   So "Mark," being Mr. Lillge?

5      A.   Yes.

6      Q.   And he told you there was a court order that

7  prevented Christina Chang from contacting you?

8      A.   Yes.

9      Q.   Okay.

10         Did Mr. Lillge show you a copy of the court

11  order?

12     A.   No.

13     Q.   Did Mr. Lillge tell you that there is a

14  provision in the court order that allows Christina Chang

15  to contact customers who choose to initiate contact with

16  her?

17     A.   Um, no.

18     Q.   He didn't tell you that was in the court order?

19     A.   No.

20     Q.   And you had reached out to Ms. Chang when you

21  learned she was leaving to find out where she was going,

22  right?

23     A.   As a representative of CMC, yes.

24     Q.   But you had contacted her, right?

25     A.   Yes.

40

1  Gina, I'm coming by later this af- -- later this

2  afternoon if that's okay with you," something like

3  that?

4      A.    Yes.

5      Q.    Okay.

6            So did you feel it was discourteous, is that

7  the issue?

8      A.    It was awkward and it was unprofessional.

9      Q.    Okay.

10           (Sotto voce conference between Mr. Ward and

11           Ms. Chang.)

12  BY MR. WARD:

13     Q.    At some point, based on your prior testimony,

14  you recall Mr. Lillge telling you that they were going to

15  court against Mr. Verity and Ms. Chang?

16     A.    Yes.

17     Q.    Do you recall that?

18           And then there must have been some

19  subsequent conversation where he told you there was a

20  court order; is that correct?

21     A.    Yes.

22     Q.    Okay.

23           And what do you recall him telling you about

24  the court order?

25     A.    Um, he told me that she wouldn't -- she's

1  not supposed to be calling me anymore because there

2  was a court order.  I don't -- I don't recall too

3  much else.  I think he had mentioned that the judge

4  was a nice lady, that she was Indian.  I think that's

5  about it.

6      Q.   When you were asked to sign the declaration, did

7  anyone suggest to you that you would be subpoenaed in

8  this case if you didn't sign the declaration?

9      A.   Um, yes.  The attorney, Ian Boyd, he told me

10  that I can either sign a declaration or I could come

11  to a deposition.  But I don't know if he used the

12  word "subpoena."

13      Q.   Okay.

14          Did he suggest to you that the issues

15  covered in your declaration were going to be gotten

16  to one way or the other?

17      A.   I don't understand that question.

18      Q.   Well, in other words, did he suggest that if you

19  don't sign the declaration, he would have to take your

20  deposition instead?

21      A.   Yes.

22      Q.   And so is that part of why you agreed to sign

23  the declaration?

24      A.   Yes.

25      MR. WARD:  Okay.  You know, rather than taking a

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3        SAN FRANCISCO DIVISION

4   - - - - - - - - - - - - - - - - - - -

5   MARK LILLGE d/b/a CREATIVE MARKETING    )

6   CONCEPTS,                              )    Case No.

7        Plaintiff,                        )    C07-02748

8   V.                                     )

9   ANDREW VERITY and CHRISTINA CHANG,     )

10       Defendants.                       )

11  - - - - - - - - - - - - - - - - - - -

12  AND RELATED CROSS-ACTION.              )

13  - - - - - - - - - - - - - - - - - - -

14

15        VIDEOTAPED DEPOSITION OF GINA LEE

16          FRIDAY, FEBRUARY 22, 2008

17

18

19

20

21       BEHMKE REPORTING & VIDEO SERVICES

22   BY: CHRISTINE L. JORDAN, CSR NO. 12262, RPR

23          160 SPEAR STREET, SUITE 300

24      SAN FRANCISCO, CALIFORNIA 94105

25             (415) 597-5600

1

1  of an alarm clock on it.

2      A.   Um, I think so.  I'm not sure.

3      Q.   Did those have any effect on your decision to

4  order promotional goods from the company?

5      A.   No.

6      Q.   And -- strike that.

7      THE WITNESS:  What does that mean, "strike that?

8      MR. WARD:  Oh, it's when I -- it's for the court

9  record to be clear.

10     THE WITNESS:  Oh, okay.

11     MR. WARD:  I'm making it clear that it's not part

12 of my question to you.

13     THE WITNESS:  Oh, I see.  Okay.

14     MR. BOYD:  It's not actually stricken; it's still

15 there it's just ...

16     THE WITNESS:  Oh, okay.

17     MR. WARD:  It's sort of like a place holder.  I'm

18 saying that whatever I was muttering about before was

19 not intended to be part of the question to you.

20     THE WITNESS:  Oh, sure.  Okay.

21     MR. WARD:  We lawyers often have false starts.

22     THE WITNESS:  Oh, sure.  That's okay.

23 BY MR. WARD:

24     Q.   Do you consider your position as someone who

25 buys promotional products on behalf of Chevron Federal

1    Credit Union -- do you consider that to be something that

2    is -- is secret or difficult to determine in the

3    marketplace?

4        A.    No.

5        Q.    So, in other words, we could go to Chevron

6    Federal Credit Union's Web site and figure out that

7    you're the business development person for the -- for the

8    company, right?

9        A.    Yes.

10       MR. WARD:  Well, since I went to the trouble of

11   printing these, let's quickly go through them.

12       THE WITNESS:  Okay.

13           It's a good thing I updated, that, huh?

14           Oh, is this for her?

15       MR. WARD:  Yeah, she needs to mark that next.

16           (Interruption at the door.)

17       MR. WARD:  Hi, Christina.

18           This is Christina Chang.

19       THE REPORTER:  Okay.

20       MR. WARD:  And we're going to stop talking so

21   that you can mark that.

22       THE REPORTER:  Thank you.

23           (Defendants' Exhibit 1 was marked for

24           identification.)

25       MR. WARD:  Here's a copy for you.

20

```
 1  BY MR. WARD:
 2      Q.   Exhibit 1 is something that I printed yesterday
 3  from the Chevron Federal Credit Union Web site, and it
 4  appears to be the page that shows upcoming special
 5  events.
 6           Am I correct in this regard?
 7      A.   Yes.
 8      Q.   And is your contact information on this page?
 9      A.   Yes.
10      Q.   Okay.
11           So that's you down at the bottom where it
12  says, "G. Lee at" -- I forget whether it's "CFCU
13  dot-org"?
14      A.   "At Chevron FCU dot-org," and that's me,
15  yes.
16      Q.   Okay.
17           And so that's consistent with what you
18  testified earlier, which is that if people wanted to
19  figure out who you were as someone who buys
20  promotional products for Chevron Federal Credit
21  Union, it's pretty easy to do, isn't it?
22      A.   Yes.
23      THE REPORTER:  Exhibit 2.
24           (Defendants' Exhibit 2 was marked for
25           identification.)
```

21

1            UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4  - - - - - - - - - - - - - - - - -

5  MARK LILLGE d/b/a CREATIVE MARKETING   )

6  CONCEPTS,                              )    Case No.

7          Plaintiff,                     )    C07-02748

8  V.                                     )

9  ANDREW VERITY and CHRISTINA CHANG,     )

10          Defendants.                   )

11  - - - - - - - - - - - - - - - - - - -

12  AND RELATED CROSS-ACTION.             )

13  - - - - - - - - - - - - - - - - - - -

14

15        VIDEOTAPED DEPOSITION OF GINA LEE

16            FRIDAY, FEBRUARY 22, 2008

17

18

19

20

21        BEHMKE REPORTING & VIDEO SERVICES

22    BY: CHRISTINE L. JORDAN, CSR NO. 12262, RPR

23          160 SPEAR STREET, SUITE 300

24      SAN FRANCISCO, CALIFORNIA 94105

25              (415) 597-5600

1    break for me to review my notes, I'm assuming that

2    Mr. Boyd has some questions for you, and I'll review

3    them on the fly.

4        MR. BOYD:  I don't, actually.

5        MR. WARD:  Then I need a couple minutes --

6        MR. BOYD:  Sure.  That's fine.

7        MR. WARD:  -- and I think you're done.  But I

8    need to confer with my client and go over my notes.

9        THE WITNESS:  Sure.

10       THE VIDEOGRAPHER:  Going off the record.  The

11   time is 3:48 p.m.

12           (Recess taken.)

13       THE VIDEOGRAPHER:  We're back on the record.  The

14   time is 3:53 p.m.

15           Please begin.

16   BY MR. WARD:

17       Q.   Ms. Lee, I believe you told us that you recently

18   placed a $5,000 order with Creative Marketing Concepts?

19       A.   Yes.

20       Q.   And approximately when did you place that order?

21       A.   Last week.

22       Q.   Okay.

23           And did you get a -- did you get a good

24   price from Creative Marketing Concepts?

25       A.   Yes.

1    Q.    Was it a better price for that merchandise than

2    you could get from another vendor?

3    A.    Yes.

4    Q.    Was it a very competitive price?

5    A.    Yes.

6    Q.    Like a really good price?

7    A.    Yeah, like super.

8    Q.    And this was after you signed the declaration,

9    wasn't it?

10    A.    Actually, the -- well, it was after I signed

11    the declaration, yes.  But the pricing was not as

12    good as last year.

13    Q.    And it happens to be at around the same time

14    that you signed the declaration for Mr. Lillge, isn't it?

15    A.    Um, yes.

16    MR. WARD:  I have no further questions, Ms. Lee.

17    Thank you.

18    THE WITNESS:  Okay.

19    THE VIDEOGRAPHER:  This concludes the deposition

20    of Gina Lee.  The number of DVDs used was one.  The

21    original DVD will be retained at Behmke Reporting &

22    Video Services at 160 Spear Street, Suite 300,

23    San Francisco, California.

24    We're going off the record at 3:54 p.m.

25

77

# EXHIBIT J

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT

OF CALIFORNIA, SAN FRANCISCO DIVISION

---oOo---


MARK LILLGE, d/b/a CREATIVE
MARKETING CONCEPTS,


          Plaintiff,     NO. C07-02748

vs.


ANDREW VERITY and CHRISTINA
CHANG, et al.,


       Defendants.
_____/




VIDEOTAPED DEPOSITION OF HEIDI HUA

Tuesday, February 12, 2008



REPORTED BY:
JODY GIBNEY, RPR
CSR #12308


NANCY SORENSEN
COURT REPORTING SERVICES
41 SUTTER STREET
SUITE 505
SAN FRANCISCO 94104
(415) 986-4624

1

HEIDI HUA

1    contact.

2              MS. GHANTOUS:   Q.   But they were --

3    those two reasons were why you decided to choose

4    them as vendors --

5              MR. BOYD:   Same objections.

6              MS. GHANTOUS:   Q.   -- over CMC; low

7    prices and good customer service, correct?

8              A.   Yes.

9              Q.   Did Christina Chang or Andrew Verity

10   or anyone else from Branding ever speak

11   negatively of Mr. Lillge or anyone from CMC?

12             A.   I don't recall.

13             Q.   Do you recall anyone from CMC,

14   Mr. Lillge or anybody else, telling you that the

15   reason why Ms. Chang and Mr. Verity left CMC was

16   because they were getting deported to Canada or

17   had Visa problems?

18             A.   I don't recall that.

19             Q.   Did anyone from CMC ever tell you

20   that there was a federal court order that

21   prevented you from conducting business with

22   Branding?

23             A.   Mark.

24             Q.   Mark told you there was a federal

25   court order that prohibited you from conducting

## HEIDI HUA

1    business with anyone from Branding; is that

2    correct?

3              A.  Yes.

4              Q.  Do you recall -- and you don't have

5    to recall the specific wording -- but do you

6    recall receiving any kind of written materials

7    indicating that you were prohibited from doing

8    business with anyone from Branding?

9              A.  I don't recall.

10             Q.  Do you recall on how many occasions

11   Mr. -- do you recall on how many occasions

12   Mr. Lillge advised you that you were not

13   permitted to do work with anyone from Branding or

14   Branding Boulevard?

15             MR. BOYD:  Object to the extent that it

16   mischaracterizes the witness's testimony.

17             THE WITNESS:  Only that one

18   conversation.

19             MS. GHANTOUS:  Q.  And what did you

20   recall telling Mr. Lillge in response to his

21   advisement that you could no longer do business

22   with Branding?

23             A.  I didn't comment anything.

24             Q.  Did his words influence your actions

25   with regard to continuing to do work with

77

HEIDI HUA

1    vendor?

2              A.  No.

3              Q.  Do you continue to receive

4    communications from CMC regarding a desire to do

5    business with you?

6              A.  Catalogue.

7              Q.  They sent you their catalogue?

8              A.  Um-hm.

9              Q.  And just so the record is clear,

10   throughout this deposition when I have referred

11   to Branding, you understood that to be Branding

12   Boulevard?

13             A.  Correct.

14             Q.  And when I referred to defendants,

15   you understood that to be Mr. Verity and

16   Ms. Chang, correct?

17             A.  Correct.

18             MS. GHANTOUS:  I'm done.

19             MR. BOYD:  Just two follow-up questions.

20             FURTHER EXAMINATION BY MR. BOYD

21             MR. BOYD:  Q.  Ms. Hua, if you recall

22   earlier I asked you what Mr. Lillge, in your one

23   phone conversation with Mr. Lillge after

24   Ms. Chang and Mr. Verity had left, I asked you

25   what Mr. Lillge had said regarding the

HEIDI HUA

1   litigation, and I believe you said you couldn't

2   recall.  So I just want to get in your own words

3   to the best of your recollection what it is that

4   Mr. Lillge said to you about any litigation or

5   anything else regarding Mr. Verity or Ms. Chang.

6   Can you recall what he said?

7        A.   Not exact word, but said it is a

8   court restraining order for me to do business

9   with them.

10       Q.   Did he say that there was a court

11  order that precluded Ms. Chang from initiating

12  contact with you?

13       A.   I don't recall, yeah.

14       Q.   Did he say that there was a court

15  order in place that precluded Ms. Chang from

16  soliciting you?

17       A.   (Witness shook head.)

18       Q.   You don't recall?

19       A.   I don't recall.

20       Q.   Okay.

21       THE VIDEOGRAPHER:  The videotape

22  deposition of Heidi Hua taken on February 12,

23  2008, is now being concluded at 4:25 p.m.  This

24  ends Videotape 1, Volume 1.  All originals will

25  be held by Dan Mottaz Video Productions, phone

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT

OF CALIFORNIA, SAN FRANCISCO DIVISION

---oOo---


MARK LILLGE, d/b/a CREATIVE
MARKETING CONCEPTS,

            Plaintiff,      NO. C07-02748

vs.


ANDREW VERITY and CHRISTINA
CHANG, et al.,

            Defendants.
_____/




VIDEOTAPED DEPOSITION OF HEIDI HUA

Tuesday, February 12, 2008



REPORTED BY:
JODY GIBNEY, RPR
CSR #12308


NANCY SORENSEN
COURT REPORTING SERVICES
41 SUTTER STREET
SUITE 505
SAN FRANCISCO 94104
(415) 986-4624

1

HEIDI HUA

1    Mr. Lillge directly other than the invoices?

2        A.  No.

3        Q.  Is there a website or ad that

4    identifies your office as a purchaser of

5    promotional products?

6        A.  No.

7        Q.  Can distributors figure out how to

8    reach you to get bids to the FOH?

9        MR. BOYD:  Object to the extent it calls

10   for the witness to speculate.

11       THE WITNESS:  No.

12       MS. GHANTOUS:  Q.  So the only way to

13   reach you is through your direct contact with a

14   particular vendor?

15       A.  Yes.

16       Q.  Have you ever been solicited by

17   other vendors?

18       A.  I receive catalogues from other

19   vendors.

20       Q.  How do those vendors know to send

21   you catalogues?

22       A.  I don't know.

23       Q.  So other than CMC and Branding

24   Boulevard, there are no other vendors that you've

25   used?