1 | RICHARD HARRINGTON (SBN 28099)
CHANDLER WOOD HARRINGTON & MAFFLY LLP
2 | One Maritime Plaza, Fourth Floor
San Francisco, California 94111 3404
3 | Telephone:    415 421 5484
Facsimile:    415 986 4874
4 | Email:    harr@well.com

5 | ROBERT CHARLES WARD (SBN 160824)
SHARTSIS FRIESE LLP
6 | One Maritime Plaza, Eighteenth Floor
San Francisco, California 94111 3404
7 | Telephone:    415 421 6500
Facsimile:    415 421 2922
8 | Email:    rward@sflaw.com

9 | C. ANGELA DE LA HOUSAYE (SBN 144218)
BRENDAN J. DOOLEY (SBN 162880)
10 | KARYNE T. GHANTOUS (SBN 191309)
DE LA HOUSAYE & ASSOCIATES, ALC
11 | 1655 N. Main Street, Suite 395
Walnut Creek, California 94596
12 | Telephone:    (925) 944-3300
Facsimile:    (925) 944-3343
13 | Email:    angela@delahousayelaw.com
brendan@delahousayelaw.com
14 | karyne@delahousayelaw.com

15 | Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG

16

17 | UNITED STATES DISTRICT COURT

18 | NORTHERN DISTRICT OF CALIFORNIA

19 | SAN FRANCISCO DIVISION

20

21 | MARK LILLGE D/B/A CREATIVE
MARKETING CONCEPTS,
22 |

23 | Plantiff,

24 | v.

25 | ANDREW VERITY AND CHRISTINA CHANG,

26 | Defendants.

27

28

Case No: C-07-02748 MHP

**DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT OF MILES E. LOCKER**

Date:    April 7, 2008
Time:    2:00 p.m.
Dept:    15
Judge:    Hon. Marilyn Hall Patel

Complaint Filed: May 25, 2007
Trial Date: April 7, 2008

## I.    INTRODUCTION

Plaintiff seeks to advise this Court that there is a blanket prohibition against experts providing testimony that touches upon the ultimate issue to be determined by the trier of fact.  No such prohibition exists.  The proper gauge to determine the admissibility of expert testimony is whether the testimony is helpful and whether it would interfere with the trier of fact's ability to determine the ultimate issues on their own.  The proffered testimony of Miles E. Locker regarding the policies and procedures of the State's Department of Labor Standard and Enforcement ("DLSE") and the interplay between these policies and these procedures on those of other labor oversight entities and their policies is exactly the sort of intricate and complicated arena that justifies use of an expert witness to aid the trier of fact in navigating their way though the arcane and complex.

## II.    STATEMENT OF FACTS

Miles E. Locker has served in the capacity of an expert witness in a variety of employment law matters, particularly with respect to Division of Labor Standards Enforcement ("DLSE")  enforcement policies and procedures, and has been qualified as an expert and provided testimony in that capacity throughout the State of California, as well as before the United States District Court for the Central District of California.

While Plaintiff seeks to characterize Mr. Locker in his Motion to Strike as a garden variety employment attorney.  Mr. Locker was employed with the DLSE (also known as the Office of the State Labor Commissioner) of the Department of Industrial Relations of the State of California and charged with enforcement and interpretation of those policies for sixteen years.

While at the DLSE, he started out advising the Labor Commissioner on enforcement of policy issues; he drafted substantial portions of the 2002 DLSE Enforcement Policies and Interpretations Manual, and the 2005 Retaliation Complaint Investigation Manual.  Mr. Locker went on to become the Department's Chief Counsel, where he assisted in developing wage and hour law enforcement policies; authored DLSE opinion letters, setting forth the agency's interpretation of statutes and Industrial Welfare Commission ("IWC") wage orders.

This is a highly specialized and complicated area of law and his testimony on these topics will be of great help to the trier of fact.  Rather then acting in the role of an additional attorney in this matter,

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT OF MILES E. LOCKER

Mr. Locker will provide expert testimony regarding the following areas of inquiry: (1) the method followed by the DLSE for determining which IWC wage order applies to plaintiffs in this case, (2) the applicability of the commission sales exemption from overtime to plaintiffs in this case, and (3) the nature of the employer's duty to comply with meal period requirements under Labor Code sections 226.7 and 512, and under the applicable IWC order, the manner in which the IWC, the DLSE and the courts have interpreted those requirements, and the evolution and current state of DLSE enforcement policies regarding the requirement for duty free meal periods.

Clearly, the testimony Mr. Locker can provide would be of great value to the trier of fact in such a technical and complicated area of inquiry. Plaintiff will have a full opportunity to cross-examine this witness with regard to his qualifications and his opinions. Therefore, the helpfulness of the proffered testimony must be the gauge upon which this Court determines its admissibility, nothing more.

## III.    LEGAL ARGUMENT

Expert testimony is liberally admissible under the Federal Rules of Evidence ("Rules"). The general approach of the Rules is to relax traditional barriers to expert opinion testimony. The presumption under the Rules is that expert testimony is admissible. Weinstein's Federal Evidence §702.029[1]. See also, <u>United States v. Rahm</u>, 993 F.2d 1405, 1409-1410 (9th Cir. 1993) (expert testimony liberally admitted under Federal Rules of Evidence).

The general gauge under the Federal Rules of Evidence regarding Admissibility has been that if the expert's evidence will assist the finder of fact in any way in determining the factual issues before it, the evidence is admissible, assuming the other prerequisites to the admissibility of the expert's testimony are met. Weinstein's Federal Evidence §702.029[3].

### A.    <u>Helpfulness Is The Basis For Admissibility</u>

In the case of <u>United States v. Brawner</u>, 173 F.3d 966, 969 (6th Cir. 1999), the Court stated that, "It is, of course, well settled that 'necessity' is not a condition precedent for the admissibility of opinion testimony under Fed. R. Evid. 702; rather the test is whether the opinion 'will assist the trier of fact.'" <u>Id.</u> Under Federal Rules of Evidence §702, parties may use expert witnesses to provide the trier of fact with an explanation…principles that are relevant to the case and leave it to the trier of fact to apply those principles to the facts of the case. Expert witnesses may also testify to their opinions, reached as a result

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE THE EXPERT REPORT OF MILES E. LOCKER

1 | of their application of scientific, technical, or otherwise specialized principles to the facts of the case.

2 | Weinstein's Federal Evidence §702.029[2].

3 | ### B.    The Standards For The Admission Of Expert Testimony

4 | There are three basic prerequisites to the admissibility of evidence from expert witnesses.  First,

5 | evidence based on scientific, technical, or other specialized knowledge[1] must be useful to the finder of

6 | fact in understanding the evidence or in making factual determinations necessary to decide the ultimate

7 | issue of fact.  Second, the proposed witness must be qualified to provide the finder of fact with that

8 | assistance.  Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that,

9 | if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.  Weinstein's

10 | Federal Evidence §702.029[3].

11 | Federal Rules of Evidence §702 is the basic rule concerning expert witnesses.  In essence, an

12 | expert witness may be employed if the expert has specialized knowledge that would be helpful in

13 | deciding the case correctly, and if the expert's testimony is sufficiently reliable to assist the factfinder.

14 | The intent of the Rule is to liberalize the admissibility standard for expert testimony.  *See, e.g.,* Daubert

15 | v. Merrel Down Pharmaceuticals, Inc., 509 U.S. 579 (1993) (noting that cross-examination, rather than

16 | exclusion, is the correct means of dealing with 'shaky' expert testimony).  *See also,* United States v.

17 | Winters, 729 F.2d 602, 605 (9th Cir. 1984).

18 | ### C.    An Expert Opinion May Relate To An Ultimate Issue For Decision

19 | Federal Rules of Evidence §704(a) provides that an expert's opinion testimony "is not

20 | objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Mechanics &

21 | Metals National Bank v. Buchanan, 12 F. 2d 892 (9th Cir. 1993).

22 | ### D.    Legal Conclusions Made By An Expert Are Admissable At Trial

23 | Depending on the circumstances, opinion testimony that arguably states a legal conclusion is

24 | helpful to the jury, and thus, admissible.  For example, the testimony may be helpful if the case involves

25 |

26 |

27 | [1] The Rule is clearly not limited to scientific expert testimony.  It refers as well to technically or other specialized

28 | knowledge; all that is required is that expert testimony on the subject matter will assist the factfinder.  Consequently, any information that is not common knowledge can be an appropriate subject of expert testimony. *See, e.g.,* United States v. Romero, 57 F. 3d 565 (7th Cir. 1995).

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT OF MILES E. LOCKER

1  a specialized industry.  Also, the testimony may be helpful if it involves a specialized area of law.

2  Weinstein's Federal Evidence §704.04[2][a].  Most importantly, Federal Rules of Evidence §704 allows

3  the jury to receive the full benefit of a witness's judgment because the witness may testify in a more

4  natural manner uninterrupted by technical objections that interfere with the flow of the trial without

5  furthering the cause of truth. Weinstein's Federal Evidence §704.02.  This is the scenario the Court finds

6  here regarding the Promotional Product Industry and the field of employment related damages and

7  penalties as would be imposed by agencies such as the DLSE.

8       In Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990), the Court

9  allowed the admission of expert testimony as to legal conclusions in an insurance bad faith case because

10  of the complexity of insurance law.  Id.  The Court found the gauge to be whether the proposed

11  testimony would be helpful when it stated that,

12      "A trial judge has wide discretion anent the admission and exclusion of
       expert testimony,  and his decisions are to be sustained unless his
13      discretion has been abused….In this case, defendant presented two well-
       credentialed experts - attorneys versed in the nuances of insurance law -
14      who offered opinion evidence as to proximate cause.  Insurance is a
       complicated subject and the industry, over time, has developed a patina of
15      custom and usage.  Arcana abound.  Defendant's proffered experts could
       reasonably be expected to shed some light in a shadowy domain."  Id.  See
16      also,  Maffei v. Northern Ins. Co. of N.Y., 12 F.3d 892, 897 (9th Cir.
       1993) (witnesses allowed to testify because their opinions were helpful to
17      determine whether defendant involved in conspiracy); United States v.
       McSwain, 197 F.3d 472, 483 (7th Cir. 1999) (expert witness's testimony
18      that defendant and his then-wife "were chiefly responsible" for the sale of
       piperidine was not an impermissible legal conclusion, because testimony
19      focused on specific question of fact--defendant's involvement in piperidine
       scheme); Karns v. Emerson Electric Co., 817 F.2d 1452, 1459 (10th Cir.
20      1987) (in products liability suit, expert properly permitted to testify about
       unreasonable danger of device and defendant's recklessness in producing
21      and distributing it since facts were of a sufficiently technical nature that
22      the testimony was helpful to jury)."

23

24       Ultimately, courts determine whether an opinion on an ultimate fact is an inadmissible legal

25  conclusion on a case-by-case basis. Weinstein's Federal Evidence §704.04[1].  In Karns v. Emerson

26  Electric Co., the Court sought to elaborate on that process by stating,

27      "We do not believe, however, that the jury is likely to have been confused
       or misled by this testimony.  Indeed, the facts were of a sufficiently
28      technical nature that expert testimony could be expected to assist the jury

1    in deciding the case.  In both instances, [the expert] explained the bases
2    for his opinions in sufficient detail to permit the jury to independently
     evaluate his conclusions.  The legal terms used are not so complex or
3    shaded with subtle meaning as to be beyond the understanding of the
     average person, and [the expert's] use of those terms did not conflict with
4    the court's instructions.  Finally, the court instructed the jury that it was
     free to entirely disregard an expert's opinion "if you should conclude that
5    the reasons given in support of the opinion are not sound".  We do not
     believe that the jury was "prevailed upon to abdicate its function or
6    responsibility for reaching an independent judgment on the ultimate
     issues' in the case".  <u>Karns v. Emerson Electric Co.</u>, 817 F.2d 1452 (10th
7    Cir. 1987)

8
9        The touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness

10   to the jury.  <u>Kopf v. Skyrm</u>, 993 F.2d at 377-78 (4th Cir. 1993) (stating that while "[a]n opinion is not

11   objectionable simply because it embraces an ultimate issue to be decided by the trier of fact, . . . such an

12   opinion may be excluded if it is not helpful to the trier of fact"); Weinstein's Federal Evidence §

13   704.04[2][a].

14       In <u>United States v. Barile,</u> the Court permitted testimony regarding Internal Revenue Service

15   ("IRS") Regulations and Policies because of the nature of this technical area of law and regulation.  The

16   expert was permitted to testify about the procedure, practice, and history of IRS 510(k) submissions and

17   to respond to hypotheticals.  The Court, however, did not allow him to testify as to the particular IRS

18   510(k) submissions in question and as to whether the submissions were reasonable or correct or in

19   compliance with the law.  The expert was prepared to testify that the submissions were not unreasonable

20   and did not contain materially misleading statements.  The <u>United States v. Barile</u> Court held that the

21   district court's exclusion of all opinion testimony regarding the particular 510(k) submissions at issue

22   was too broad to be justified on the ground that his testimony addressed an issue exclusively within the

23   province of the finder of fact.  Federal Rules of Evidence §702 provides that "if scientific, technical, or

24   other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact

25   in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise."

26   <u>United States of America v. Barile</u>, 286 F.3d 749, 760-762 (4th Cir. 2002).  The court permitted the

27   expert testimony because the questions were more specific, did not invade the judge's province of

28

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE THE EXPERT REPORT OF MILES E. LOCKER

1    instructing the jury regarding the meaning of specialized terms, and would elicit responses that give the

2    jury insight into the bases for the expert's conclusion. Id.

3    　　　In United States v. Barile, the expert was prepared to testify that combining actual test data for

4    the Passport device along with actual test data for the ST Segment, was unclear but not unreasonable.

5    The Court held that opinion testimony on whether the data submitted in a 510(k) submission were

6    reasonable would not merely state a legal conclusion and was therefore not excludable on the ground

7    that it invaded the province of the jury.  Therefore, if the other rules of evidence have been met,

8    including the requisites of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d

9    469, 113 S. Ct. 2786 (1993), and its progeny, an expert opinion on whether various aspects of the 510(k)

10   submissions on which Barile was indicted were reasonable is precisely the type of expert testimony that

11   could assist the trier of fact in its determination.  United States of America v. Barile, 286 F.3d 749, 762

12   (4th Cir. 2002).  See also, United States of America v. McSwain, 197 F. 3d 472 (10th Cir. 1999); Specht

13   v. Jensen, 853 F. 2d 805, 809 (10th Cir. 1988) (concluding that "the [expert] witness did not invade the

14   court's authority by discoursing broadly over the entire range of the applicable law" because his

15   testimony "focused on a specific question of fact").

16   　　　**E.    No Prejudice Will Result From The Admission Of This Testimony**

17   　　　In our case, rather than excluding opinion testimony in this situation, the Court may choose to

18   admit the expert testimony with appropriate, limiting instructions.  "The appropriate instruction usually

19   addresses the weight the jury should give to the expert testimony."  Weinsten's Federal Evidence

20   §704.04[2][c].  Furthermore, "The danger of confusing the fact finder with expert testimony is, perhaps,

21   more easily ameliorated by cross-examination than are the dangers of irrelevant or prejudicial expert

22   testimony.  Trial courts should be aware of the curative powers of the adversary system."  Weinsten's

23   Federal Evidence §702.029[5].  See also, Singer Co. v. E.I. du Pont de Nemours & Co., 579 F.2d 433,

24   443 (8th Cir. 1978) (trial court properly refused to strike expert testimony as unsupported speculation

25   because evidentiary value of opinion was for jury, assisted by vigorous cross-examination).

26

27

28

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE THE EXPERT REPORT OF MILES E. LOCKER

1    IV.    **CONCLUSION**

2    Based on the foregoing, Mr. Locker's preeminent qualifications and his ability to shed light on a

3    topic not within the day to day intimate knowledge of the trier of fact must be considered helpful, and

4    therefore, render his proffered testimony admissible, since any issue regarding expert testimony must be

5    determined under the presumption towards admissibility.  Furthermore, any concerns of Plaintiff can be

6    addressed by vigorous cross-examination, and/or an appropriate instruction by this Court.

7

8    Dated: March 7, 2008                      DE LA HOUSAYE & ASSOCIATES, ALC

9

10                                             By: _____
                                                      BRENDAN J. DOOLEY, ESQ.

11                                             Attorneys for Defendants
                                               ANDREW VERITY AND CHRISTINA CHANG
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO
STRIKE THE EXPERT REPORT OF MILES E. LOCKER