RICHARD HARRINGTON (SBN 28099)
CHANDLER WOOD HARRINGTON & MAFFLY LLP
One Maritime Plaza, Fourth Floor
San Francisco, California 94111 3404
Telephone:    415 421 5484
Facsimile:    415 986 4874
Email:        harr@well.com

ROBERT CHARLES WARD (SBN 160824)
SHARTSIS FRIESE LLP
One Maritime Plaza, Eighteenth Floor
San Francisco, California 94111 3404
Telephone:    415 421 6500
Facsimile:    415 421 2922
Email:        rward@sflaw.com

C. ANGELA DE LA HOUSAYE (SBN 144218)
BRENDAN J. DOOLEY (SBN 162880)
KARYNE T. GHANTOUS (SBN 191309)
DE LA HOUSAYE & ASSOCIATES, ALC
1655 N. Main Street, Suite 395
Walnut Creek, California 94596
Telephone:    (925) 944-3300
Facsimile:    (925) 944-3343
Email:        angela@delahousayelaw.com
              brendan@delahousayelaw.com
              karyne@delahousayelaw.com

Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE D/B/A CREATIVE MARKETING CONCEPTS,<br><br>            Plaintiff,<br><br>    v.<br><br>ANDREW VERITY AND CHRISTINA CHANG,<br><br>            Defendants. | Case No: C-07-02748 MHP<br><br>**DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EXPERT REPORT OF JEFFRY C. MEYERS**<br><br>Date:    April 7, 2008<br>Time:    2:00 p.m.<br>Dept:    15<br>Judge:   Hon. Marilyn Hall Patel<br><br>Complaint Filed: May 25, 2007<br>Trial Date: April 7, 2008 |

## I. INTRODUCTION

Plaintiff seeks to advise this Court that there is a blanket prohibition against experts providing testimony that touches upon the ultimate issue to be determined by the trier of fact. No such prohibition exists. The proper gauge to determine the admissibility of expert testimony is whether the testimony is helpful; and whether it would interfere with the trier of fact's ability to determine the ultimate issues on their own. Jeffry Meyer's qualifications to provide expert testimony regarding the Promotional Products Industry are above reproach; his opinions will be helpful to the trier of fact; and will, in no way, prevent the trier of fact in this matter from sorting out reality from fantasy with regard to the claims made by the Plaintiff concerning the nature of his business operations.

## II. STATEMENT OF FACTS

In his Motion to Strike, Plaintiff labels Defendant's expert as a Certified Public Accountant ("CPA"), and on that basis, seeks to have his testimony excluded as unreliable. Such an analysis, however, strains Plaintiff's credibility since it seeks to have this Court ignore the fact that Jeffry C. Meyer has been active in the Promotional Product Industry for twenty-six years in various Chief Financial Officer and Chief Executive Officer capacities. During these twenty-six years, Mr. Meyers gained vast experience in the operations of distributors in the industry and was intimately involved with the consolidation of the largest group of companies in the industry. He earned the Master Advertising Specialist designation from the industry's trade association, the Promotional Products Association International ("PPAI"). During Meyer's career, he has evaluated, negotiated and consummated many acquisitions in the Promotional Product Industry and performed valuations on many more. In order to do this, he became intimately familiar with the operations of these companies and how each tried to "get a leg up" on the competition, including an analysis of whether any of these companies held a "trade secret" that provided it with a competitive advantage. In 2006, Meyer was voted by his peers as one of the 50 most powerful people in the Promotional Product Industry. Thus, Plaintiff's argument that this Court should strike the expert testimony of this distinguished member of the industry because he is also a CPA rings hollow.

Based on Mr. Meyer's vast experience in analyzing companies in the industry, he is in a unique position to opine that the value driver for promotional product distributors is the customer list and the

relationship of the salespeople to customers. This is supported by the vast diversification of the industry. Since the salespeople's relationships drive the sale, there are many distributors and approximately 200,000 salespeople in the industry. This dynamic has prevented significant consolidation that has occurred in other industries like office supplies. If the salespeople's relationships were not critical, there are a number of direct marketing and web based companies that would quickly render salespeople obsolete. But salespeople develop loyalty with customers through hard work, perseverance, creativity, reliability, and availability. These qualities are not unique to one competitor, as opposed to another.

Mr. Meyers has also identified that there are significant education opportunities through PPAI and the Advertising Specialty Institute ("ASI") that teach people how to run successful distributorships; sell corporate promotional programs, web based company stores; how to create artwork for customer orders; predict trends in end user purchasing; importing; and many others. Meyer's analysis and background allow him to opine that there is nothing about a distributor's operation that can be viewed as a unique secret, unknown to the industry or trade.

Finally, Mr. Meyer observes that users of promotional products are generally known to the public by the very nature of promotional products. That is, promotional products carry the name, logo, and contact information of the companies that use them. And those products are in fact given to the public free of charge. As such, not only does the public know the "customers names", competitors know the "customers names." It would not be unusual for a customer to routinely request and receive proposals from ten or more promotional product distributors. Free competition prevails because of the absence of trade secret customer lists. Therefore, in Meyer's opinion there are no trade secrets within a promotional product distributor. Given, Meyer's extensive qualification and his unique position to analyze the operations of companies such as those of the parties, his testimony must be viewed as helpful and non-prejudicial to the trier of fact's tasks of determining the merits of the claims at issue here.

### III.  LEGAL ARGUMENT

Expert testimony is liberally admissible under the Federal Rules of Evidence ("Rules"). The general approach of the Rules is to relax traditional barriers to expert opinion testimony. The

presumption under the Rules is that expert testimony is admissible. Weinstein's Federal Evidence §702.029[1]. See also, United States v. Rahm, 993 F.2d 1405, 1409-1410 (9th Cir. 1993) (expert testimony liberally admitted under Federal Rules of Evidence).

The general gauge under the Federal Rules of Evidence regarding Admissibility has been that if the expert's evidence will assist the finder of fact in any way in determining the factual issues before it, the evidence is admissible, assuming the other prerequisites to the admissibility of the expert's testimony are met. Weinstein's Federal Evidence §702.029[3].

A. **Helpfulness Is The Basis For Admissibility**

In the case of United States v. Brawner, 173 F.3d 966, 969 (6th Cir. 1999), the Court stated that, "It is, of course, well settled that 'necessity' is not a condition precedent for the admissibility of opinion testimony under Fed. R. Evid. 702; rather the test is whether the opinion 'will assist the trier of fact.'" Id. Under Federal Rules of Evidence §702, parties may use expert witnesses to provide the trier of fact with an explanation…principles that are relevant to the case and leave it to the trier of fact to apply those principles to the facts of the case. Expert witnesses may also testify to their opinions, reached as a result of their application of scientific, technical, or otherwise specialized principles to the facts of the case. Weinstein's Federal Evidence §702.029[2].

B. **The Standards For The Admission Of Expert Testimony**

There are three basic prerequisites to the admissibility of evidence from expert witnesses. First, evidence based on scientific, technical, or other specialized knowledge[1] must be useful to the finder of fact in understanding the evidence or in making factual determinations necessary to decide the ultimate issue of fact. Second, the proposed witness must be qualified to provide the finder of fact with that assistance. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. Weinstein's Federal Evidence §702.029[3].

---

[1] The Rule is clearly not limited to scientific expert testimony. It refers as well to technically or other specialized knowledge; all that is required is that expert testimony on the subject matter will assist the factfinder. Consequently, any information that is not common knowledge can be an appropriate subject of expert testimony. See, e.g., United States v. Romero, 57 F.3d 565 (7th Cir. 1995).

Federal Rules of Evidence §702 is the basic rule concerning expert witnesses. In essence, an expert witness may be employed if the expert has specialized knowledge that would be helpful in deciding the case correctly, and if the expert's testimony is sufficiently reliable to assist the factfinder. The intent of the Rule is to liberalize the admissibility standard for expert testimony. *See, e.g.,* Daubert v. Merrel Down Pharmaceuticals, Inc., 509 U.S. 579 (1993) (noting that cross-examination, rather than exclusion, is the correct means of dealing with 'shaky' expert testimony). *See also,* United States v. Winters, 729 F.2d 602, 605 (9th Cir. 1984).

### C.  An Expert Opinion May Relate To An Ultimate Issue For Decision

Federal Rules of Evidence §704(a) provides that an expert's opinion testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Mechanics & Metals National Bank v. Buchanan, 12 F. 2d 892 (9th Cir. 1993).

### D.  Legal Conclusions Made By An Expert Are Admissible At Trial

Depending on the circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible. For example, the testimony may be helpful if the case involves a specialized industry. Also, the testimony may be helpful if it involves a specialized area of law. Weinsten's Federal Evidence §704.04[2][a]. Most importantly, Federal Rules of Evidence §704 allows the jury to receive the full benefit of a witness's judgment because the witness may testify in a more natural manner uninterrupted by technical objections that interfere with the flow of the trial without furthering the cause of truth. Weinsten's Federal Evidence §704.02. This is the scenario the Court finds here regarding the Promotional Product Industry and the field of employment related damages and penalties as would be imposed by agencies such as the DLSE.

In Peckham v. Continental Casualty Ins. Co., 895 F.2d 830, 837 (1st Cir. 1990), the Court allowed the admission of expert testimony as to legal conclusions in an insurance bad faith case because of the complexity of insurance law. Id. The Court found the gauge to be whether the proposed testimony would be helpful when it stated that,

> "A trial judge has wide discretion anent the admission and exclusion of expert testimony, and his decisions are to be sustained unless his discretion has been abused….In this case, defendant presented two well-credentialed experts - attorneys versed in the nuances of insurance law - who offered opinion evidence as to proximate cause. Insurance is a

complicated subject and the industry, over time, has developed a patina of custom and usage. Arcana abound. Defendant's proffered experts could reasonably be expected to shed some light in a shadowy domain." Id. See also, Maffei v. Northern Ins. Co. of N.Y., 12 F.3d 892, 897 (9th Cir. 1993) (witnesses allowed to testify because their opinions were helpful to determine whether defendant involved in conspiracy); United States v. McSwain, 197 F.3d 472, 483 (7th Cir. 1999) (expert witness's testimony that defendant and his then-wife "were chiefly responsible" for the sale of piperidine was not an impermissible legal conclusion, because testimony focused on specific question of fact--defendant's involvement in piperidine scheme); Karns v. Emerson Electric Co., 817 F.2d 1452, 1459 (10th Cir. 1987) (in products liability suit, expert properly permitted to testify about unreasonable danger of device and defendant's recklessness in producing and distributing it since facts were of a sufficiently technical nature that the testimony was helpful to jury)."

Ultimately, courts determine whether an opinion on an ultimate fact is an inadmissible legal conclusion on a case-by-case basis. Weinsten's Federal Evidence §704.04[1]. In Karns v. Emerson Electric Co., the Court sought to elaborate on that process by stating,

"We do not believe, however, that the jury is likely to have been confused or misled by this testimony. Indeed, the facts were of a sufficiently technical nature that expert testimony could be expected to assist the jury in deciding the case. In both instances, [the expert] explained the bases for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions. The legal terms used are not so complex or shaded with subtle meaning as to be beyond the understanding of the average person, and [the expert's] use of those terms did not conflict with the court's instructions. Finally, the court instructed the jury that it was free to entirely disregard an expert's opinion "if you should conclude that the reasons given in support of the opinion are not sound". We do not believe that the jury was "prevailed upon to abdicate its function or responsibility for reaching an independent judgment on the ultimate issues' in the case". Karns v. Emerson Electric Co., 817 F.2d 1452 (10th Cir. 1987)

The touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness to the jury. Kopf v. Skyrm, 993 F.2d at 377-78 (4th Cir. 1993) (stating that while "[a]n opinion is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact, . . . such an opinion may be excluded if it is not helpful to the trier of fact"); Weinstein's Federal Evidence § 704.04[2][a].

In United States v. Barile, the Court permitted testimony regarding Internal Revenue Service ("IRS") Regulations and Policies because of the nature of this technical area of law and regulation. The expert was permitted to testify about the procedure, practice, and history of IRS 510(k) submissions and to respond to hypotheticals. The Court, however, did not allow him to testify as to the particular IRS 510(k) submissions in question and as to whether the submissions were reasonable or correct or in compliance with the law. The expert was prepared to testify that the submissions were not unreasonable and did not contain materially misleading statements. The United States v. Barile Court held that the district court's exclusion of all opinion testimony regarding the particular 510(k) submissions at issue was too broad to be justified on the ground that his testimony addressed an issue exclusively within the province of the finder of fact. Federal Rules of Evidence §702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." United States of America v. Barile, 286 F.3d 749, 760-762 (4th Cir. 2002). The court permitted the expert testimony because the questions were more specific, did not invade the judge's province of instructing the jury regarding the meaning of specialized terms, and would elicit responses that give the jury insight into the bases for the expert's conclusion. Id.

In United States v. Barile, the expert was prepared to testify that combining actual test data for the Passport device along with actual test data for the ST Segment, was unclear but not unreasonable. The Court held that opinion testimony on whether the data submitted in a 510(k) submission were reasonable would not merely state a legal conclusion and was therefore not excludable on the ground that it invaded the province of the jury. Therefore, if the other rules of evidence have been met, including the requisites of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), and its progeny, an expert opinion on whether various aspects of the 510(k) submissions on which Barile was indicted were reasonable is precisely the type of expert testimony that could assist the trier of fact in its determination. United States of America v. Barile, 286 F.3d 749, 762 (4th Cir. 2002). *See also,* United States of America v. McSwain, 197 F. 3d 472 (10th Cir. 1999); Specht v. Jensen, 853 F. 2d 805, 809 (10th Cir. 1988) (concluding that "the [expert] witness did not invade the court's authority by discoursing broadly over the entire range of the applicable law" because his

testimony "focused on a specific question of fact").

### E. No Prejudice Will Result From The Admission Of This Testimony

In our case, rather than excluding opinion testimony in this situation, the Court may choose to admit the expert testimony with appropriate, limiting instructions. "The appropriate instruction usually addresses the weight the jury should give to the expert testimony." Weinsten's Federal Evidence §704.04[2][c]. Furthermore, "The danger of confusing the fact finder with expert testimony is, perhaps, more easily ameliorated by cross-examination than are the dangers of irrelevant or prejudicial expert testimony. Trial courts should be aware of the curative powers of the adversary system." Weinstein's Federal Evidence §702.029[5]. *See also,* Singer Co. v. E.I. du Pont de Nemours & Co., 579 F.2d 433, 443 (8th Cir. 1978) (trial court properly refused to strike expert testimony as unsupported speculation because evidentiary value of opinion was for jury, assisted by vigorous cross-examination).

## IV. CONCLUSION

Based on the foregoing, Mr. Meyer's preeminent qualifications and his ability to shed light on a topic not within the day to day intimate knowledge of the trier of fact must be considered helpful, and therefore, render his proffered testimony admissible, since any issue regarding expert testimony must be determined under the presumption towards admissibility. Furthermore, any concerns of Plaintiff can be addressed by vigorous cross-examination, and/or an appropriate instruction by this Court.

Dated: March 7, 2008

DE LA HOUSAYE & ASSOCIATES, ALC

By: _____
BRENDAN J. DOOLEY, ESQ.

Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG