HARVEY SISKIND LLP
IAN K. BOYD (State Bar No. 191434)
iboyd@harveysiskind.com
SETH I. APPEL (State Bar No. 233421)
sappel@harveysiskind.com
RAFFI V. ZEROUNIAN (State Bar No. 236388)
rzerounian@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124

Attorneys for Plaintiff
Mark Lillge d/b/a Creative Marketing Concepts

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>Defendants. | Case No. C 07-02748 MHP<br><br>**PLAINTIFF'S REPLY BRIEF RE MOTION TO STRIKE THE EXPERT REPORT OF MILES E. LOCKER, ESQ.**<br><br>Date: April 7, 2008<br>Time: 2:00 p.m.<br>Court: Hon. Marilyn Hall Patel |
| ANDREW VERITY and CHRISTINA CHANG,<br><br>Counterclaimants,<br><br>v.<br><br>MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1-10,<br><br>Counterdefendants. | |

PLAINTIFF'S REPLY BRIEF RE MOTION                                                                                C 07-02748 MHP
TO STRIKE EXPERT REPORT OF MILES E. LOCKER, ESQ.

## INTRODUCTION

The Court should still strike the report of Andrew Verity and Christina Chang's expert, Miles E. Locker, Esq. Defendants are unable to overcome the fact that Mr. Locker is a legal expert who has been hired to impermissibly interpret facts and draw legal conclusions. Mr. Locker's report, essentially a thirty-one page legal brief, merely restates the legal arguments proffered by defense counsel. When Mr. Locker is not drawing legal conclusions, he uses basic arithmetic to compute damages allegedly owed, themselves the result of his legal conclusions. Such calculations are nothing that a juror with a grade school education cannot accomplish.

The allegedly "intricate and complicated" nature of employment law, as Defendants assert, does not justify Mr. Locker's usurpation of the role of the Court in determining the applicable law and the role of the jury in applying the facts to the law in a run of the mill suit for unpaid overtime. Defendants have enough lawyers arguing on their behalf. The Court should not allow Mr. Locker to offer his legal conclusions under the thin veil of an "expert."

## STATEMENT OF FACTS

Defendants' opposition brief emphasizes Mr. Locker's substantial credentials in the arena of labor and employment law. The three paragraphs Defendants devote to his prior experience are apparently offered to justify the legal conclusions they seek to include. Mr. Locker is asserted to be an experienced attorney with a long history of legal advocacy on labor and employment issues. But that fact that does not justify his speculation on what the result should be when the law is applied to the facts. By way of example, an overtime claim is no more complicated than a trade secrets claim, and one can readily imagine Defendants' (and the Court's) reaction to Plaintiff's submission of an expert report from an experienced trade secrets lawyer confidently confirming that Plaintiff does in fact have trade secrets in this action, and that Defendants have misappropriated them.

Defendants inappropriately offer Mr. Locker's testimony to inform the court and jury on which laws apply to the situation underlying this dispute. No attempt by Defendants to recharacterize or reword Mr. Locker's report changes the fact that he applies his conception of the laws to his

–1–

interpretation of the facts and concludes that Ms. Chang is owed substantial damages. This is hardly the role of an expert witness.

## ARGUMENT

Defendants assert that the nature of the case is such that a legal expert would be helpful here. However, the "help" Mr. Locker provides is nothing less than usurpation of the proper roles of the Court and jury. Perhaps if Mr. Locker were a judge in a bench trial then his assistance would be of "great value," as Defendants suggest, seamlessly selecting and interpreting the law, applying it to the facts, and announcing a result. However, before this Court, Mr. Locker may not advocate or draw legal conclusions and instead should leave such tasks to the attorneys, judge, and jury.

### A. An Expert Witness's Legal Conclusions Are Not "Helpful" to the Finder of Fact.

Citing *Weinstein's Federal Evidence*, Defendants state that the proper standard for the admissibility of expert testimony is whether it would "assist the finder of fact in any way determining the factual issues before it." [Defendants' Brief, 3]. Yet there are a number of caveats to that rule. One significant exception is when an expert inappropriately attempts to advocate legal conclusions through the guise of his or her "expert" status. *Weinstein's Federal Evidence*, to use Defendant's source, is quick to point out that "[a] troublesome issue arises when opinion testimony on an ultimate fact is couched in terms of a legal standard or legal conclusion. In general, testimony about a legal conclusion or the legal implications of evidence is inadmissible under Rule 704." *Weinstein's Federal Evidence §704.04[1]*. The treatise similarly notes that "[t]he most common reason for excluding opinion testimony that gives a legal conclusion is lack of helpfulness … [t]he testimony supplies the jury with no information other than the witness's view of how the verdict should read." *Weinstein's Federal Evidence §704.04[2][a]*.

This rule is well-established in the Ninth Circuit. *See*, *e.g.*, *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 (9th Cir. 2002) ("[A]n expert witness cannot give an opinion as to her *legal conclusion, i.e.*, an opinion on an ultimate issue of law"). As the Advisory Committee's notes to Federal Rule of Evidence 704 state, "under Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford

–2–

1  ample assurances *against the admission of opinions which would merely tell the jury what result to reach*, somewhat in the manner of the oath-helpers of an earlier day." *Fed. R. Evid. 704 Advisory Committee's notes* (emphasis added).

Further, the employment law claims underlying this matter are not so "specialized," as Defendants claim, as to require the assistance of a third party legal expert. [Defendants' Brief, 5]. The jurors here likely will have held a job at one time or another. They will be familiar with concepts such as overtime pay and meal breaks. This is not a case that requires, for example, an understanding of an obscure part of the tax code, the mechanics of a complex technology, or the inputs to a sophisticated financial model. Mr. Locker's legal conclusions, while conveniently parroting the legal arguments of the defense counsel, will not be "helpful" to the court or jury as it weighs the facts and applies the law.

### B. Legal Conclusions Made by an Expert Witness Are Generally Not Admissible.

The Court has the power to exclude all inadmissible evidence, including testimony of an expert witness that inappropriately advocates legal conclusions. *See, e.g., Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

For example, Defendants' own brief advocating the inclusion of the Locker Report describes one of the Report's "areas of inquiry" as "the nature of the employer's duty to comply with meal period requirements." Yet, such testimony regarding a legal duty is an inadmissible legal conclusion. To again quote Defendants' favored source, "other examples" of inadmissible legal conclusions proffered by an expert witness "include testimony on the existence of a legal duty." *Weinstein's Federal Evidence* §704.04[1]. The same article cites to *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537 (11th Cir. 1990) in which a party sought to include expert testimony regarding an insurance company's duty to hire a tax attorney. There, the court stated that the expert "testified that in his opinion [the insurance company] had a duty to hire tax counsel in this case. This was a legal conclusion, and therefore should not have been admitted. The district court abused its discretion by allowing [the expert] to testify about the scope of [the insurance company's] duty under the policy."

–3–

*Id at 1541*. Similarly, the Court should exclude Mr. Locker's report because he opines about the scope of Plaintiff's duty to Ms. Chang regarding her meal period breaks.

### C. The Locker Report Offers Little More Than Legal Conclusions.

As Plaintiff's first memoranda showed, the Locker Report is a legal brief from start to finish. Mr. Locker unabashedly asks—and of course answers—many of the central legal questions that make up this case. Some of these include whether Ms. Chang is owed overtime compensation under state and federal law (and, if so, how much), whether the Plaintiff complied with the meal break provisions of California law, whether Ms. Chang is owed waiting time penalties (and, if so, how much), and whether Ms. Chang is owed liquidated damages under the FLSA (and, if so, how much). [Locker Report 5-6, 15, 28-29]. To reach these legal conclusions, Mr. Locker takes on the simultaneous role of judge and jury: he evaluates the facts to determine the applicable law, examines legal precedent and legislative history to determine how the law should be applied, applies the law to the facts, and then arrives at an outcome, calculating damages to the nearest cent. Such testimony is inadmissible from an expert.

### D. The Locker Report Does More Than Permissibly Embrace the Ultimate Issues, It Impermissibly Advocates Legal Conclusions.

Defendants rely heavily on *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002) for the proposition that expert legal testimony is admissible when the legal subject matter is "technical." However, Defendants completely ignore the test that the appellate court used to determine whether impermissible legal conclusions have been drawn—a test that the Locker Report fails.

There, the Fourth Circuit evaluated expert testimony regarding pre-market notifications of product enhancements to the Food and Drug Administration, known as 510(k) submissions. The trial court had previously excluded the testimony for, among other reasons, drawing legal conclusions. When determining whether the expert's statements were merely a permissible form of "opinion testimony that embraces an ultimate issue of fact" or an impermissible "opinion testimony that that states a legal conclusion," the court cited a Sixth Circuit test from *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985). The *Barile* Court described the test as follows: "To determine when a

-4-

question posed to an expert calls for an improper legal conclusion, the district court should consider first whether the question tracks the language of the legal principle at issue or of the applicable statute, and second, whether any terms employed have specialized legal meaning." *Barile, 286 F.3d at 760.* If so, the testimony should be excluded. *Id.*

Applying the test used in *Barile*, it is clear that Mr. Locker's testimony goes far beyond permissibly embracing the ultimate issue—it advocates improper legal conclusions. The first prong of the test asks whether Mr. Locker's analysis repeatedly seeks to answer questions that "track the legal principle at issue." *Id.* To take one of many instances, Mr. Locker summaries the answers to the question he posed himself by stating that "[f]or almost her entire employment from January 1, 2005 until her discharge on May 11, 2007, the defendant failed to comply with the meal period provisions of IWC Order 7-2001…" [Locker Report, 15]. He then goes on, tracking the legal principles, to review the mandate of the IWC order ("The mandate of the IWC order is quite clear: 'No employer shall employ any person for a work period of more than 5 hours without a meal period of not less than 30 minutes'), its defined terms ("The IWC order expressly defines the term employ to include to 'suffer or permit to work'), and applies them to the facts ("Here, these prerequisites for a lawful on-duty meal period were entirely absent, as the nature of the work was not such as to prevent Ms. Chang from being relieved of all duty…").

Using the second prong of the test, we look to see whether any of the Mr. Locker's terms employed "have specialized legal meaning." *Barile, 286 F.3d at 760.* Here, Mr. Locker spends a great deal of time explaining the specialized legal meaning of words in the regulations he interprets. For example:

> "[the] word 'provide' in Labor Code §226.7(b) cannot be interpreted in isolation, but must be read in the context of the entire sentence in which it appears… the relevant inquiry is not whether meal periods were 'provided' by the employer, but rather, whether meal periods were provided 'in accordance with [the] applicable [IWC] order.' Linguistic analysis of the meaning of the word 'provide' is singularly unhelpful, as the IWC orders themselves tell us what an employer must do to provide a meal period under the requirements of each order."

[Locker Report, 17]

–5–

1  The fact that the Locker Report fails the test employed by Defendants' primary case speaks volumes about the report's admissibility: it is merely a series of impermissible legal conclusions that should only be reached by the Court or jury. Ultimately, the opinions proffered by Mr. Locker are either inappropriate or unhelpful. The Court should strike the Locker Report in its entirety.

## CONCLUSION

The Locker Report is no more than a legal brief that impermissibly draws a series of legal conclusions. Just as an experienced contracts professor should not be permitted to opine on the ultimate issue of whether a party has breached a contract, that Mr. Locker is an experienced labor and employment attorney does not make his conclusions any more admissible. Defendants' characterize his testimony as "helpful" to the Court and jury when, in fact, Mr. Locker seeks to usurp their important roles by determining the applicable law, applying it to his interpretation of the facts, and declaring the appropriate outcome.

Defendants need to stop underestimating the Court and the jurors in this action. The overtime claim will not overwhelm the Court and jury and require yet another lawyer's interpretation. The jurors will have ample opportunities to hear the parties' attorneys argue the law, with clear jury instructions and assistance from the Court to guide them as necessary.

The Court should strike the Locker Report in its entirety.

DATED: March 17, 2008

Respectfully submitted,

HARVEY SISKIND LLP

By: _____/s/_____
       Ian K. Boyd

Attorneys for Plaintiff and Counterdefendant
Mark Lillge d/b/a/ Creative Marketing Concepts