1  RICHARD HARRINGTON (SBN 28099)
   CHANDLER WOOD HARRINGTON & MAFFLY LLP
2  One Maritime Plaza, Fourth Floor
   San Francisco, California 94111 3404
3  Telephone:    415 421 5484
   Facsimile:    415 986 4874
4  Email:        harr@well.com

5  ROBERT CHARLES WARD (SBN 160824)
   SHARTSIS FRIESE LLP
6  One Maritime Plaza, Eighteenth Floor
   San Francisco, California 94111 3404
7  Telephone:    415 421 6500
   Facsimile:    415 421 2922
8  Email:        rward@sflaw.com

9  C. ANGELA DE LA HOUSAYE (SBN 144218)
   BRENDAN J. DOOLEY (SBN 162880)
10 KARYNE T. GHANTOUS (SBN 191309)
   DE LA HOUSAYE & ASSOCIATES, ALC
11 1655 N. Main Street, Suite 395
   Walnut Creek, California 94596
12 Telephone:    (925) 944-3300
   Facsimile:    (925) 944-3343
13 Email:        angela@delahousayelaw.com
                 brendan@delahousayelaw.com
14               karyne@delahousayelaw.com

15 Attorneys for Defendants
   ANDREW VERITY AND CHRISTINA CHANG
16

17                UNITED STATES DISTRICT COURT

18               NORTHERN DISTRICT OF CALIFORNIA

19                  SAN FRANCISCO DIVISION

20
   MARK LILLGE D/B/A CREATIVE              )   Case No: C-07-02748 MHP
21 MARKETING CONCEPTS,                     )
                                           )   DEFENDANTS ANDREW VERITY AND
22              Plaintiff,                  )   CHRISTINA CHANG'S MOTION TO
                                           )   COMPEL FURTHER RESPONSES TO
23     v.                                   )   DISCOVERY
                                           )
24 ANDREW VERITY AND CHRISTINA CHANG,)
                                           )   Date:    April 23, 2008
25              Defendants.                 )   Time:    3:00 p.m.
                                           )   Dept:    15
26 ─────────────────────────────────      )   Judge:   Hon. Marilyn H. Patel

27                                             Complaint Filed: May 25, 2007
                                               Trial Date: None Set
28

                                               Case No. C-07-02748 MHP
   ───────────────────────────────────────────────────────────────────
   DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO
                                    DISCOVERY

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................... 1

    A.     Plaintiff Has Not Established The Existence Of Any Trade Secrets. ............. 1

    B.     Lillge's Concocted Trade Secrets Claims ........................................................ 2

    C.     Plaintiff Has Failed To Identify His Trade Secrets .......................................... 2

    D.     Information In The Public Domain Cannot Be A Trade Secret. ..................... 3

    E.     The Identity Of Customers Is Not A Protectable Trade Secret. ..................... 3

    F.     Production of a "Document Dump" Is Not Tantamount To The Specific Identification of Trade Secrets ......................................................................... 5

    G.     Plaintiff's Refusal To Testify, Concerning His Termination Of Defendant Verity Is Unjustified. ...................................................................................... 6

III.   LEGAL ARGUMENT ............................................................................... 6

    A.     The Trade Secrets Have Not Been Identified .................................................. 7

    B.     Plaintiffs Production Of Tens Of Thousands Of Documents In 23 Banker Boxes Does Not Meet The Requirement Of A Legitimate Response Pursuant To Federal Rules Of Civil Procedure 33. ......................................... 9

    C.     Plaintiff's Refusal To Testify Regarding His Ultimatum To Verity To Sign An Illegal Non-Compete Agreement Or Be Terminated Is Improper ... 11

IV.    CONCLUSION ......................................................................................... 12

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY

1

## TABLE OF AUTHORITIES

2
**Cases**

3

4    Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County

5        132 Cal. App. 4th 826 (2005) ................................................................................. 7, 8

6    Aetna Building Maintenance Co. v. West

7        39 Cal 2d. 198, 203 (1952) ..................................................................................... 5

8    Al Barnett & Son, Inc. v. Outboard Marine Corp.

9        611 F.2d 32 (3rd Cir., 1979) .................................................................................. 11

10    Calcor Space Facility, Inc. v. The Superior Court of Orange County

11        53 Cal. App. 4th 216 (1997) .................................................................................. 9

12    City of Santa Cruz v. Municipal Court

13        49 Cal. 3d 74 (1989) ............................................................................................. 9

14    Computer Economics, Inc. v. Gartner Group Inc.

15        50 F. Supp. 2d 980 (1999) ..................................................................................... 7

16    Continental Car-Na-Var Corp. v. Moseley

17        24 Cal. 2d 104 (1994)………………………………………………………..……..3, 5

18    Daiflon, Inc. v. Allied Chemical Corp.

19        534 F. 2d 221 (10th Cir. 1976) ........................................................................ 9, 10

20    Diodes, Inc. v. Franzen

21        260 Cal. App. 2d 244 (1968) .............................................................................. 7, 8

22    IMAX Corp. v. Cinema Techs., Inc.

23        152 F.3d 1161 (9th Cir., 1998) .............................................................................. 7

24    J.J. Delaney Carpet Co. v. Forrest Mills, Inc.

25        34 F.R.D. 152 (S.D.N.Y. 1963) ........................................................................... 10

26    Rainbow Pioneer v. Hawaii-Nevada Investment Corp.

27        711 F.2d 902 (9th Cir. 1983) ............................................................................... 11

28    Religious Technology Ctr v. Netcom On-Line Communications Srvcs

907 F. Supp. 1361 (N.D. Cal. 1995) ............................................................ 3

Riley v. United Air Lines

32 F.R.D. 230 (S.D.N.Y. 1962) ............................................................ 10

Sabel v. Mead Johnson and Co.

112 F.R.D. 211 (N.D.Ind. 1986) ............................................................ 11

Universal Analytics v. MacNeal-Schwendler Corp.

707 F. Supp. 1170 (C.D.Cal. 1989) ............................................................ 7

**Statutes**

California Code of Civil Procedure §2019.210 ............................................ passim

Federal Rule of Civil Procedure 33 ............................................................ passim

Federal Rule of Civil Procedure 37(a) ............................................................ 6, 7

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY

1  I.    **INTRODUCTION**

2      The Court explicitly stated at the hearing on Plaintiff's Motion for Preliminary Injunction that

3  Plaintiff Mark Lillge ("Lillge") d/b/a Creative Marketing Concepts ("CMC") had not shown a

4  substantial likelihood of prevailing on the question of whether Plaintiff had the trade secrets that he

5  claims. (Declaration of Robert Ward in Support of Motion to Dissolve the Preliminary Injunction

6  ("Ward Decl.") ¶2, Ex. A, 9:26-28, 10:1-2, 10-21-23). To this day, Plaintiff has failed to identify with

7  requisite specificity legally cognizable trade secrets.

8      At this point in the case, however, after the parties have engaged in significant discovery and

9  Plaintiff has engaged in a pattern of abusive and tortious misuse of this litigation, it is time for the Court

10  to require the Plaintiff to identify his alleged trade secrets with the reasonable particularity required to

11  permit the Defendants to prepare for trial in this matter.

12      Despite clear obligations to do so under California Law, Lillge has yet to truly identify the

13  supposed trade secrets. His "identification" of trade secrets, pursuant to Code of Civil Procedure

14  §2019.210, identified general categories of items related to CMC's operations, but no specific trade

15  secrets and Lillge has refused to identify any in discovery. The reason is simple: There are none.

16  Further efforts to obtain this information and other information regarding the termination of Defendant

17  Verity has either been refused or stymied by Plaintiff's production of a "document dump" in lieu of

18  providing concise responses. This practice by Plaintiff is improper, and should not be permitted by this

19  Court.

20  II.    **STATEMENT OF FACTS**

21      This is a customer list case. Plaintiff Lillge does not want his two former employees to contact

22  the customers with whom they have developed professional relationships with over the years. Lillge

23  claims that his customer list is a trade secret, despite legal authority to the contrary and the absence of

24  anything remarkable or unique about how CMC built its customer list. Furthermore, there is no

25  evidence that Verity or Chang took or are using the customer list.

26      A.    **Plaintiff Has Not Established The Existence Of Any Trade Secrets.**

27      CMC is in a service industry. Its success has been grounded on the hard work and superior sales

28  and service skills of its employees. CMC invents nothing and manufactures nothing. CMC finds

-1-                          Case No. C-07-02748 MHP

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO
DISCOVERY

1    customers, takes orders for products with the customers' names and logos, orders those products

2    primarily from catalogs of the major suppliers, and delivers the promotional products to the customers.

3    CMC is a low-tech business successful because it out-hustles the competition. Unlike distributors such

4    as Dell or Amazon, CMC has not developed any unique and innovative methods of selling and

5    delivering products.

6    **B.    Lillge's Concocted Trade Secrets Claims**

7    When Plaintiff Lillge realized he would not succeed in his efforts to get Verity and Chang

8    deported, based on claims of alleged trade secrets, Lillge convinced the Court to issue a Temporary

9    Restraining Order ("TRO") and later a Preliminary Injunction. The Court ordered the Injunction despite

10    stating that Lillge had not carried his burden as to the likelihood of trade secrets. Ward Decl., ¶2, Ex. A,

11    9:26-28, 10:1-2, 10:21-23.

12    **C.    Plaintiff Has Failed To Identify His Trade Secrets**

13    Since the Injunction was granted, Plaintiff has failed to identify his trade secrets, as he is

14    obligated to do under California Code of Civil Procedure §2019.210. In a series of interrogatories,

15    Defendant Chang asked Lillge to "state all facts" in support of each of the categories of information that

16    Plaintiff contends are trade secrets. Ward Decl., ¶4, Ex. B. In response to the interrogatories, Plaintiff

17    restated general contentions about the trade secrets that are little more than copied language from his

18    Complaint. Ward Decl., ¶5, Ex. C. As part of an attempt to meet and confer over the inadequate

19    information provided regarding the supposed trade secrets, counsel for Plaintiff agreed only to provide

20    documents and did not agree to provide any further specificity with regard to identifying, describing or

21    elaborating on what Plaintiff contends is, and is not, a trade secret. Ward Decl., ¶4. Plaintiff has

22    produced thousands of pages of documents (contained in 23 bankers boxes), which appear to comprise

23    mostly of the customer files for the Plaintiff's business. Almost all of these documents have been

24    designated "confidential, attorneys-eyes-only", despite most of these documents being mundane

25    information that Plaintiff could not possibly assert as a trade secret. Id. Furthermore, by designating the

26    documents for "attorneys eyes only", and by failing to provide satisfactory interrogatory responses,

27    Plaintiff is apparently leaving it to counsel for Defendants to wade through tens of thousands of

28    documents in an attempt to guess what exactly Plaintiff contends is a trade secret.

1    From the beginning, Lillge planned this trade secret case as a fall back plan, if his efforts to have

2    Verity and Chang deported did not work, and if he subsequently found they had entered the same

3    marketplace.  Going through the general categories that Plaintiff claims are trade secrets (Ward Decl.

4    ¶2, Ex. B),  Plaintiff clearly has not established the existence of any legally cognizable trade secrets.

5    This is "put-up or shut-up" time for the Plaintiff.  Lillge's obligations under Rules of Discovery require

6    that he show the Defendants and this Court any and all information regarding actual trade secrets he

7    claims Defendants have misappropriated.  Merely stating a general label or a category is not sufficient,

8    Lillge must identify with reasonably particularity some specific collection of trade secrets that would

9    justify this lawsuit.  Based on what Plaintiff has provided or produced in this action, what Plaintiff

10   claims to be trade secrets simply are not.

11          **D.      Information In The Public Domain Cannot Be A Trade Secret.**

12          Much of what CMC claims as alleged trade secrets appear to be information in the public

13   domain.  Such public information cannot be trade secrets.  <u>Religious Technology Ctr v. Netcom On-Line</u>

14   <u>Communications Srvcs</u>, 907 F. Supp. 1361 (N.D. Cal. 1995).  Plaintiff cannot articulate anything unique

15   or proprietary as to how it competes, organizes or otherwise uses public information.  At his deposition,

16   Plaintiff could not articulate anything unique or proprietary regarding CMC's customer list.  Ward Decl.

17   in Support of Defendants Opposition To Motion For Temporary Restraining Order at 3:24-25, Ex. A

18   (Lillge Depo. at 28:16-29:1).  The information itself, such as a public company's Vice President of

19   Marketing, cannot be protected as a trade secret.

20          **E.      The Identity Of Customers Is Not A Protectable Trade Secret.**

21          California law is clear that salespeople cannot be restrained from doing business with contacts

22   and customers with whom they have developed relationships.  A company cannot prevent former sales

23   employees from soliciting business from their contacts developed in their industry, regardless of whether

24   those contacts were developed as an employee of that company.

25                  Every individual possesses as a form of property, the right to pursue any
                    calling, business or profession he may choose.  A former employee has the
26                  right to engage in a competitive business for himself and to enter into
                    competition with his former employer, <u>even for the business of those who</u>
27                  <u>had formerly been the customers of this former employer</u>, provided such
                    competition is fairly and legally conducted.  <u>Continental Car-Na-Var</u>
28                  <u>Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1994) (emphasis added).

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO
DISCOVERY

1    Neither has Plaintiff proven that its relationship with its customers are exclusive, nor has

2    Plaintiff shown that its customers are secret or obscure, such that a competitor would be unlikely to

3    identify and solicit them for orders.  The first category of trade secrets that are claimed by Plaintiff are

4    his customers.  The identity of CMC's customers are not secrets.  One can walk into CMC's showroom -

5    a public place - and learn the identity of <u>hundreds</u> of CMC customers.  See Declaration of Timothy

6    Schmolder.  Most if not all these customers do not consider themselves to be "secrets" possessed by

7    Lillge.  For example, Tess Pascual of Bingham McCutchen testified that she received solicitations from

8    other promotional products vendors and that her identity as a buyer for Bingham is not secret.  Ward

9    Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶10, Ex. G; Pascual

10   Depo. at 18:21 - 25; 69:24 – 70:20 – 23:9.  Other witnesses deposed in this action, such as Gina Lee,

11   Business Development Officer of Chevron Federal Credit Union have also provided more of the same

12   testimony.  Ward Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶12,

13   Ex. I; Lee Depo. at 19:24 – 20:9; P. 21; ¶11, Exhibit H, Woods Depo. at 34:20 – 37:25; 61:17 – 62:8;

14   ¶13, Ex. J; Hua Depo. at 62: 16 – 22.  The identity of the customers alone, therefore, cannot be trade

15   secrets and former employees like Verity and Chang are entitled to compete for business from CMC's

16   customers.

17   The Court granted the Preliminary Injunction on the basis of Lillge's claims specifically that he

18   may be able to establish customer pricing as a trade secret.  Bruce Molloy ("Molloy"), a senior manager

19   at CMC, provided a deposition that makes a mockery of Lillge's claim that pricing is a secret.  Ward

20   Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶9, Ex. F, Molloy Depo.

21   at 21:13 – 22:14; 59:18 – 62:1.  With regard to pricing, one of CMC's claimed alleged trade secrets,

22   Lillge admitted that most pricing in the industry is done based on established markup percentage.  <u>Id.</u> at

23   41:8-42:1.  Lillge also admitted that deviation from the standard, industry-wide pricing was the result of

24   management discretion, rather than any unique and proprietary techniques or methodology of CMC.  <u>Id.</u>

25   at 47:21-49:4, 52:22-53:1, 53:13-24, 54:9-55:2, 55:14-24.  Additionally Lillge had failed to make the

26   Court aware of a factual peculiarity of his computer accounting system that it contains no database of

27   client pricing by individual item, due to the fact that the item numbers are either not printed or collected

28   on the client invoice.  Verity Decl. in Support of Defendants Motion to Dissolve the Preliminary

---

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO DISCOVERY

1   Injunction, ¶12. At trial, Lillge will be unable to establish a database of customer pricing because it
2   simply does not exist.

3       The practice at CMC was not to print the product item number on invoices for clients. This was
4   replaced by generic descriptions such as "Imprinted Mugs". The accounting system used at CMC was
5   just a low technology bookkeeping system. The data collected mirrored what was printed on the
6   invoice, so there was no collection of either item number or supplier, both essential items for a pricing
7   database. The purchasing part of the accounting system was not linked to the invoicing side in any
8   way. In this way any claim that CMC has a database customer pricing is false. Id.

9       Another category of information that Lillge pleads are trade secrets is the pricing for the
10  merchandise sold by CMC. Yet Molloy, admitted that industry pricing is typically based on catalogs
11  provided by businesses other than distributors like CMC. Ward Decl. in Support of Defendants Motion
12  to Dissolve the Preliminary Injunction, ¶9, Exhibit F; Molloy Depo. at 21:13 – 22:14; 59:18 – 62:1.

13      Given California law that makes it very clear that Verity and Chang have a right to do business
14  with their former customers, the burden is on Lillge to draw the line between Defendants' right to
15  compete and trade secret information. The identities of Verity's and Chang's customers as well as their
16  preferences, habits and other information naturally acquired in a business relationship is information that
17  is presumptively Verity's and Chang's to use. Continental Car-Na-Var Corp. v. Moseley, 24 Cal 2d.
18  104, 110 (1994); Aetna Building Maintenance Co. v. West, 39 Cal 2d. 198, 203 (1952).

19      Given this, Lillge's abject failure to provide any specific information as to what he claims might
20  fall under the heading of a legally cognizable trade secret must not be permitted to continue given the
21  proximity of the trial in this matter.

22      **F.**     **Production of a "Document Dump" Is Not Tantamount To The Specific**
23           **Identification of Trade Secrets.**

24      Lillge's efforts to address his threshold shortcomings concerning the identification of trade
25  secrets by providing tens of thousands of documents in hopes that something within the 23 boxes of
26  documents might be recognized as a trade secret is not a permissible response to a specific discovery
27  request seeking the identity of the alleged trade secrets that are the very crux of his claims in this suit.
28  For example, Lillge has accused Verity and Chang of stealing secrets from CMC's computer system and

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO
DISCOVERY

yet, has provided virtually no documentation of anything obtained from CMC's computers. In addition, by indiscriminately marking everything for "attorneys-eyes-only," and then failing to specify the location of the information sought. Lillge seeks to prevent the only persons who might make sense of this "document dump" from sifting through Plaintiff's production. Everything provided should be made available, unless Lillge can justify otherwise.

> ### G.    Plaintiff's Refusal To Testify, Concerning His Termination Of Defendant Verity Is Unjustified.

Finally, Lillge must be compelled to testify regarding the circumstances surrounding his termination of Defendant Verity. Lillge provided Verity with four documents to sign in March and April of 2007. All of these documents contained various illegal Non-Compete provisions. The documents from Lillge were not offers to compromise but an attempt to abrogate the parties' original Agreement. Their existence proves Lillge's actions that he both understood that the earlier Agreement was enforceable and that Lillge had never previously asked for the signing of a Non-Compete by Verity. Lillge is now claiming that the documents and the termination e-mail were part of an offer to compromise, and refuses to testify regarding the topic. Such refusal is improper and this Court should compel responses by Lillge to all questions that might lead to the discovery of admissible relevant evidence.

## III.    LEGAL ARGUMENT

Federal Rule of Civil Procedure, Rule 37 discusses the procedure to be followed to address the failure to make disclosures or to cooperate in discovery; and the imposition of sanctions related to such failures.

The Rule states that, "... a party may move for an order compelling disclosure or discovery for failure to adequately respond to a question posed during a deposition in response to a written discovery request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, as has occurred in this matter." Fed. R. Civ. Proc. Rule 37(a). Ward Decl. ¶¶ 4 & 5. If the motion is granted – the court must (subject to certain exceptions), after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney

1    advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion,

2    including attorney's fees. Id.

3            A.    **The Trade Secrets Have Not Been Identified**

4            In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets

5    Act, before commencing discovery relating to any trade secrets, "the party alleging the misappropriation

6    shall identify the trade secrets with reasonable particularity...". Cal. Code Civ. Proc. §2019.210 (2007)

7    [Emphasis added].

8            The statutory obligation requires " that a plaintiff must make some showing that is reasonable

9    under all the circumstances to identify its alleged trade secrets in a manner that will allow the trial court

10   to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them

11   a fair opportunity to prepare and present their best case or defense at a trial on the merits". Id.

12           The purpose of §2019.210 is as follows:

13                   "First, it promotes well-investigated claims and dissuades the filing of
                     meritless trade secret complaints. Second, it prevents plaintiffs from using
14                   the discovery process as a means to obtain the defendant's trade secrets.
                     Third, the rule assists the court in framing the appropriate scope of
15                   discovery and in determining whether plaintiff's discovery requests fall
                     within that scope. Fourth, it enables defendants to form complete and
16                   well-reasoned defenses, ensuring that they need not wait until the eve of
                     trial to effectively defend against charges of trade secret
17                   misappropriation." Computer Economics, Inc. v. Gartner Group Inc., 50
                     F. Supp. 2d 980, 985 (1999); see also Advanced Modular Sputtering, Inc.
18                   v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th 826,
                     833-834 (2005).
19

20           The letter and spirit of §2019.210 require the plaintiff, subject to an appropriate protective order,

21   to identify or designate the trade secrets at issue with "sufficient particularity" to limit the permissible

22   scope of discovery by distinguishing the trade secrets "from matters of general knowledge in the trade or

23   of special knowledge of those persons … skilled in the trade." IMAX Corp. v. Cinema Techs., Inc., 152

24   F.3d 1161, 1164–1165 (9th Cir., 1998); see also Universal Analytics v. MacNeal-Schwendler Corp., 707

25   F. Supp. 1170, 1177 (C.D.Cal. 1989); see also Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253

26   (1968); see also Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132

27   Cal. App. 4th 826, 835 (2005).

28

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO
DISCOVERY

1    In <u>Diodes v. Franzen</u>, 260 Cal. App. 2d. 244 (1968), the Court held that general allegations

2  regarding the existence of trade secrets is not sufficient,

3         "The plaintiff must nevertheless allege the ultimate facts showing the
          existence of a trade secret or other confidential data to state such a cause

4         of action. An averment simply that the plaintiff has a "secret process" is a
          bare legal conclusion. Before a Defendant is compelled to respond to a

5         complaint upon claimed misappropriation or misuse of a trade secret and
          to embark on discover which may be both prolonged and expensive, the

6         complainant should describe the subject matter of the trade secret with
          sufficient particularity to separate it from matters of general knowledge in

7         the trade or of special knowledge of those persons who are skilled in the
          trade, and to permit the Defendant to ascertain at least the boundaries

8         within which the secret lies…the Plaintiff must not only identify the end
          product manufactured, but also supply sufficient data concerning the

9         process…to give both the Court and the Defendant reasonable notice of
          the issues which must be met at the time of trial and to provide reasonable

10        guidance in ascertaining the scope of appropriate discovery." <u>Diodes v.</u>
          <u>Franzen</u>, 260 Cal. App. 2d. 244, 252-253 (1968).

11

12    In <u>Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County</u>, 132 Cal.

13  App. 4th 826, 830 (2005), the court elaborated on what constituted a sufficient identification of trade

14  secrets under the Code, "…where the Plaintiff makes a showing that is reasonable, i.e. fair, proper, just,

15  rational, the trade secret has been described with 'reasonable particularity', and is sufficient to permit

16  discovery to commence." <u>Id.</u>

17    Just what constitutes a sufficient showing of "reasonable peculiarity" is not addressed by the

18  statues or the case law, and for good reason. As Chief Justice Rehnquist has said, the law is purposely

19  vague in some areas so that there is a "play in the joints". This is a descriptive way of saying that the

20  law is flexible enough for the referee or the trial court to achieve a just result depending on the facts,

21  law, and equities of the situation. <u>Advanced Modular Sputtering, Inc. v. The Superior Court of Santa</u>

22  <u>Barbara County</u>, 132 Cal. App. 4th 826, 835 (2005).

23    "Reasonable peculiarity", as mandated by §2019.210, means that the plaintiff must make some

24  showing that is reasonable, i.e., fair, proper, just and rational under all of the circumstances to identify

25  its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent

26  discovery, protect all parties' propriety information, and allow them a fair opportunity to prepare and

27  present their best case or defense at a trial on the merits. <u>Advanced Modular Sputtering, Inc. v. The</u>

28

1   Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 835-836 (2005);  see also City of Santa

2   Cruz v. Municipal Court, 49 Cal. 3d 74, 90 (1989).

3         The degree of "peculiarity" that is "reasonable" will differ, depending on the alleged trade

4   secrets at issue in each case.  A more exacting level of particularity may be required to distinguish the

5   alleged trade secrets from matters already known to persons skilled in that field.  Id.

6         The mandate that a party "reasonably particularize" …implies a requirement that the information

7   sought be reasonably particularized from the standpoint of the other party.  Any other interpretation

8   places too great a burden on the other party, regarding a guess as to what the identifying party is

9   referring to.  Calcor Space Facility, Inc. v. The Superior Court of Orange County, 53 Cal. App. 4th 216,

10  222 (1997).

11        **B.    Plaintiffs Production Of Tens Of Thousands Of Documents In 23 Banker Boxes**

12  **Does Not Meet The Requirement Of A Legitimate Response Pursuant To Federal**

13  **Rules Of Civil Procedure 33.**

14        By failing to "reasonably particularize" and instead produce tens of thousands of documents,

15  Plaintiffs seek to impose the burden on Defendants to search through the extensive "document dump"

16  provided, to see what they can find to fit Plaintiff's categories of alleged trade secrets.  This practice is

17  improper, and should not be condoned here.  Calcor Space Facility, Inc. v. The Superior Court of

18  Orange County, 53 Cal. App. 4th 216, 222 (1997).

19        If the answer to an interrogatory may be determined by examining, auditing, compelling,

20  abstracting, or summarizing a party's business records (including electronically stored information), and

21  if the burden of deriving or ascertaining the answer will be substantially the same for either party, the

22  responding party may answer by (1) specifying the records that must be reviewed, in sufficient details to

23  enable the interrogating party to locate and identify them as readily as the responding party could.  Fed.

24  R. Civ. Proc. Rule 33.

25        This exception applies only if the summary is not available and the party specifies the records

26  from which the information can be ascertained.  A broad statement that the information is available from

27  a mass of documents is insufficient.  Daiflon, Inc. v. Allied Chemical Corp., 534 F. 2d 221, 226 (10th

28  Cir. 1976).  This is exactly what has occurred in this case.

1    Under the Federal Rule, it has been held that if the answer is available in a more convenient

2    form, the proponent should not be required to search through records in order to obtain the proper data.

3    Daiflon, Inc. v. Allied Chemical Corp., 534 F. 2d 221, 226 (10th Cir. 1976).

4    It would be antipathetic to the spirit of the Discovery Rules to assume that Rule 33(d) was

5    intended to diminish the duty of the parties to provide all information requested.  Since a respondent is

6    required to answer proper interrogatories, it is not plausible to assume that a response may (or may not)

7    be found in its records, accompanied by an offer to permit their inspection is sufficient.  This is little

8    more than an offer to play the discredited game of blindman's buff at the threshold level of discovery.

9    Neither do the challenged answers furnish any information whatsoever, nor can the responses be read as

10   stating that the responding parties do not have or cannot obtain the information necessary to answer the

11   interrogatories.  Riley v. United Air Lines, 32 F.R.D. 230, 233 – 234 (S.D.N.Y. 1962).

12   In J.J. Delaney Carpet Co. v. Forrest Mills, Inc., 34 F.R.D. 152, 153 (S.D.N.Y. 1963), the Court

13   concluded that the option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give

14   information.  It does not shift to the interrogating party the obligation to find out whether sought after

15   information is ascertainable from the files tendered, but only permits a shift of the burden to dig it out

16   once the respondents have specified the records from "where the answer" can be derived or ascertained.

17   Id.

18   Directing the interrogating party to a mass of business records or by offering to make all of their

19   records available, justifying the response by the option provided by Rule 33… is an abuse of the option.

20   A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of

21   answering an interrogatory should offer them in a manner that permits the same direct and economical

22   access that is available to the party.  If the information sought exists in the form of compilations,

23   abstracts or summaries then available to the responding party, those should be made available to the

24   interrogating party.  A responding party has the duty to specify, by category and location, the records

25   from which answers to interrogatories can be derived.  The party invoking the option must be able to

26   represent that the party will be able to secure the information which is sought by the interrogatory in the

27   records and must refer to specific documents and state that the information sought can be found therein.

28   If only limited information is sought and the interrogated party can readily answer the interrogatories

1    with reference to its own records, Rule 33 should not be invoked. <u>Sabel v. Mead Johnson and Co.</u>, 112

2    F.R.D. 211, 212-13 (N.D.Ind. 1986); see also <u>Rainbow Pioneer v. Hawaii-Nevada Investment Corp.</u>,

3    711 F.2d 902 (9th Cir. 1983) (references to general categories of documents is insufficient)

4         The next prerequisite is that the burden of deriving or ascertaining the answer is substantially the

5    same for the party serving the interrogatory as for the party served. In <u>Sabel v. Mead Johnson and Co.</u>,

6    the Court was presented with a similar scenario to that here. The court addressed this issue by stating

7    that,

8    "It is simply absurd to contend that it is equally burdensome for the interrogating
      party to derive this information from the responding party's New Drug
9    Application when the only specification of records given by the responding party
      is the entire application, which is 154,000 pages in length. In addition, it must be
10   remembered that the responding party's employees generated the documents
      found in the New Drug Application and are charged with the responsibility of
11   maintaining them. They are clearly better able to extract the information which is
      needed to answer the interrogatories than is the interrogating party, who has no
12   familiarity with the records. Where there is a lack of specificity within a great
      mass of records to which the interrogating party is directed and where the index is
13   not adequate to direct the interrogating party to the specific documents or
      categories of documents where answers can be found, the responding party's
14   familiarity with its own records can fairly be taken into account in assessing
      relative burdens." <u>Id.</u> See also <u>Al Barnett & Son, Inc. v. Outboard Marine Corp.</u>,
15   611 F.2d 32, 35 (3rd Cir., 1979).

16   **C.    Plaintiff's Refusal To Testify Regarding His Ultimatum To Verity To Sign An**
17   **Illegal Non-Compete Agreement Or Be Terminated Is Improper.**

18        Discussions between the Plaintiff and Defendant Verity regarding his termination from CMC and

19   the surrounding circumstances are clearly within the scope of relevant discovery. Plaintiff's refusal to

20   answer questions at his deposition regarding these topics on the alleged basis that these discussions

21   amounted to compromise discussions and efforts by Plaintiff to resolve this dispute before it arose in this

22   litigation is unsupportable.

23        Plaintiff sought to have Verity sign an alleged Non-Compete/Non-Solicitation Agreement or else

24   he would be terminated. This ultimatum was memorialized in an e-mail to Verity. Plaintiff's efforts

25   here cannot be construed in any way, shape or form as efforts to compromise the dispute at hand.

26   Furthermore, even if such discussions were found to be efforts to compromise, however unlikely, the

1    litmus test for permissible discovery is not whether the question and answer will provide admissible

2    evidence, but rather whether the questions and responses might lead to the discovery of admissible

3    evidence.  Clearly, by cutting off questioning of Lillge on the discussions and circumstances related to

4    Verity's termination from CMC, Plaintiff failed to respond to legitimate questioning that was intended

5    to lead to relevant admissible evidence.  As such, Plaintiffs refused to respond to this questioning must

6    not be permitted, and Plaintiff must be compelled to respond to questioning regarding this arena of

7    inquiry.

8 **IV.**    **CONCLUSION**

9        Based on the foregoing, Defendants pray that this Court compel further responses from the

10    Plaintiff to achieve the "reasonable particularity" required in his identification of trade secrets allegedly

11    misappropriated by the Defendants pursuant to California Code of Civil Procedure §2019.210 and

12    Federal Rule of Civil Procedure 33; and compel the Plaintiff to testify regarding the documents and

13    topics he previously refused to discuss related to Defendant Verity's termination from CMC.

14    Defendants further pray that this Court award the legal fees and costs incurred in brining this motion as

15    called for pursuant to Federal Rule of Civil Procedure 37.

16

17 Dated: March 18, 2008             DE LA HOUSAYE & ASSOCIATES, ALC

18

19                           By: _____

20                               BRENDAN J. DOOLEY

21                      Attorneys for Defendants
                     ANDREW VERITY AND CHRISTINA CHANG

22

23

24

25

26

27

28

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION TO COMPEL FURTHER RESPONSES TO
DISCOVERY