RICHARD HARRINGTON (SBN 28099)
CHANDLER WOOD HARRINGTON & MAFFLY LLP
One Maritime Plaza, Fourth Floor
San Francisco, California 94111 3404
Telephone: 415 421 5484
Facsimile: 415 986 4874
Email: harr@well.com

ROBERT CHARLES WARD (SBN 160824)
SHARTSIS FRIESE LLP
One Maritime Plaza, Eighteenth Floor
San Francisco, California 94111 3404
Telephone: 415 421 6500
Facsimile: 415 421 2922
Email: rward@sflaw.com

C. ANGELA DE LA HOUSAYE (SBN 144218)
BRENDAN J. DOOLEY (SBN 162880)
KARYNE T. GHANTOUS (SBN 191309)
DE LA HOUSAYE & ASSOCIATES, ALC
1655 N. Main Street, Suite 395
Walnut Creek, California 94596
Telephone: (925) 944-3300
Facsimile: (925) 944-3343
Email: angela@delahousayelaw.com
       brendan@delahousayelaw.com
       karyne@delahousayelaw.com

Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE D/B/A CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY AND CHRISTINA CHANG,<br><br>Defendants. | Case No: C-07-02748 MHP<br><br>**DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE INCREASE THE AMOUNT OF THE BOND**<br><br>Date: April 7, 2008<br>Time: 2:00 p.m.<br>Dept: 15<br>Judge: Hon. Marilyn H. Patel<br><br>Complaint Filed: May 25, 2007<br>Trial Date: May 6, 2008. |

## I. INTRODUCTION

When the Court stated at the initial stage of this lawsuit that Plaintiff Mark Lillge ("Lillge") d/b/a Creative Marketing Concepts ("CMC") had not shown a substantial likelihood of prevailing on the question of whether Plaintiff had the trade secrets that he claims (Declaration of Robert Ward in Support of Motion to Dissolve the Preliminary Injunction ("Ward Decl.") ¶2, Ex. A, 9:26-28, 10:1-2, 10-21-23), but granted the Injunction nonetheless, it was anticipated that some further showing would be made by Plaintiff to bolster his trade secrets claim. To this day, however, Plaintiff has failed to identify with requisite specificity any legally cognizable trade secrets.

Despite clear obligations to do so under California Law, Lillge has yet to truly identify the supposed trade secrets, pursuant to Code of Civil Procedure §2019.210. Plaintiff admits that he has identified only the most general of <u>categories</u> of items related to CMC's operations, but no specific trade secrets. (Lillge's Opposition 13:16). As trial approaches, Lillge continues in his refusal to identify any specific secrets in discovery. The reason is simple: There are none.

Lillge has wrongfully exploited the Court's prior orders by publishing selective descriptions of them to the marketplace and following up by systematically making deliberate damaging and defamatory remarks on the telephone, while Andrew Verity ("Verity") and Christina Chang ("Chang") remain bound by the Orders. Furthermore, despite claims to the contrary, the rapid approach of trial in this matter make it all the more important for the Court to revisit and dissolve or modify the Preliminary Injunction. The existing $100,000.00 bond amount should be raised before trial begins, as time has now revealed the true nature of the damages Defendants have suffered as a result of the wrongfully obtained injunction and which can only be remedied if the required bond is increased now. Finally, Lillge wrongfully and improper representations to the market should be restrained by the Court to prevent any further resetting of the bond amount due to it being surpassed by Defendants' actual damages as a result of Plaintiff's unabated defamation of Defendants to the market.

## II. STATEMENT OF FACTS

This is a customer list case. Plaintiff Lillge does not want his two former employees to contact the customers with whom they have developed professional relationships with over the years. Lillge

claims that his customer list is a trade secret, despite legal authority to the contrary and the absence of anything remarkable or unique about how CMC built its customer list. Furthermore, there is no evidence that Verity or Chang took or are using the customer list.

### A. Plaintiff Has Not Established The Existence Of Any Trade Secrets.

CMC is in a service industry. Its success has been grounded on the hard work and superior sales and service skills of its employees. CMC invents nothing and manufactures nothing. CMC finds customers, takes orders for products with the customers' names and logos, orders those products primarily from catalogs of the major suppliers, and delivers the promotional products to the customers. CMC is a low-tech business successful because it out-hustles the competition. Unlike distributors such as Dell or Amazon, CMC has not developed any unique and innovative methods of selling and delivering products.

### B. Lillge's Concocted Trade Secrets Claims

When Plaintiff Lillge realized he would not succeed in his efforts to get Verity and Chang deported, based on claims of alleged trade secrets, Lillge convinced the Court to issue a Temporary Restraining Order ("TRO") and later a Preliminary Injunction. The Court ordered the Injunction despite stating that Lillge had not carried his burden as to the likelihood of trade secrets. Ward Decl., ¶2, Ex. A, 9:26-28, 10:1-2, 10:21-23. It was presumed that Plaintiff would make an effort to identify his claimed trade secrets as discovery progressed.

### C. Plaintiff Has Failed To Identify His Trade Secrets

Since the Injunction was granted, however, Plaintiff has failed to identify his trade secrets, as he is obligated to do under California Code of Civil Procedure §2019.210. In a series of interrogatories, Defendant Chang asked Lillge to "state all facts" in support of each of the categories of information that Plaintiff contends are trade secrets. Ward Decl., ¶4, Ex. B. In response to the interrogatories, Plaintiff restated general contentions about the trade secrets that are little more than copied language from his Complaint. Ward Decl., ¶5, Ex. C. As part of an attempt to meet and confer over the inadequate information provided regarding the supposed trade secrets, counsel for Plaintiff agreed only to provide documents and did not agree to provide any further specificity with regard to identifying, describing or

elaborating on what Plaintiff contends is, and is not, a trade secret. Ward Decl., ¶4. Plaintiff has produced thousands of pages of documents (contained in 23 bankers boxes), which appear to comprise mostly of the customer files for the Plaintiff's business. Almost all of these documents have been designated "confidential, attorneys-eyes-only", despite most of these documents being mundane information that Plaintiff could not possibly assert as a trade secret. Id. Furthermore, by designating the documents for "attorneys eyes only", and by failing to provide satisfactory interrogatory responses, Plaintiff is apparently leaving it to counsel for Defendants to wade through tens of thousands of documents in an attempt to guess what exactly Plaintiff contends is a trade secret.[1]

Going through the general categories that Plaintiff claims are trade secrets (Ward Decl. ¶2, Ex. B), Plaintiff clearly has not established the existence of any legally, cognizable trade secrets, only categories of potential secrets. That simply does not cut it. Lillge's obligations under Rules of Discovery require that he show the Defendants and this Court any and all information regarding actual trade secrets he claims Defendants have misappropriated. Merely stating a general label or a category is not sufficient, Lillge must identify with reasonably particularity some specific trade secrets that would justify this lawsuit. Based on what Plaintiff has provided or produced in this action, what Plaintiff claims to be trade secrets simply are not.

### D. The Trade Secrets Have Not Been Identified

In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act, before commencing discovery relating to any trade secrets, "the party alleging the misappropriation shall identify the trade secrets with <u>reasonable particularity</u>...". Cal. Code Civ. Proc. §2019.210 (2007) [Emphasis added].

---

[1] Lillge's efforts to address his threshold shortcomings concerning the identification of trade secrets by providing tens of thousands of documents in hopes that something within the 23 boxes of documents might be recognized as a trade secret is not a permissible response to a specific discovery request seeking the identity of the alleged trade secrets that are the very crux of his claims in this suit. For example, Lillge has accused Verity and Chang of stealing secrets from CMC's computer system and yet, has provided virtually no documentation of anything obtained from CMC's computers. In addition, by indiscriminately marking everything for "attorneys-eyes-only," and then failing to specify the location of the information sought. Lillge seeks to prevent the only persons who might make sense of this "document dump" from sifting through Plaintiff's production.

The statutory obligation requires " that a plaintiff must make some showing that is reasonable under all the circumstances to identify its alleged trade secrets in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits". Id.

The purpose of §2019.210 is as follows:

> "First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." Computer Economics, Inc. v. Gartner Group Inc., 50 F. Supp. 2d 980, 985 (l999); see also Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 833-834 (2005).

The letter and spirit of §2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with "sufficient particularity" to limit the permissible scope of discovery by distinguishing the trade secrets "from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." IMAX Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164–1165 (9th Cir., 1998); see also Universal Analytics v. MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D.Cal. 1989); see also Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (1968); see also Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 835 (2005).

In Diodes v. Franzen, 260 Cal. App. 2d. 244 (1968), the Court held that general allegations regarding the existence of trade secrets is not sufficient,

> "The plaintiff must nevertheless allege the ultimate facts showing the existence of a trade secret or other confidential data to state such a cause of action. An averment simply that the plaintiff has a "secret process" is a bare legal conclusion. Before a Defendant is compelled to respond to a complaint upon claimed misappropriation or misuse of a trade secret and to embark on discover which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the Defendant to ascertain at least the boundaries

within which the secret lies…the Plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process…to give both the Court and the Defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." Diodes v. Franzen, 260 Cal. App. 2d. 244, 252-253 (1968).

In Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 830 (2005), the court elaborated on what constituted a sufficient identification of trade secrets under the Code, "…where the Plaintiff makes a showing that is reasonable, i.e. fair, proper, just, rational, the trade secret has been described with 'reasonable particularity', and is sufficient to permit discovery to commence." Id.

Just what constitutes a sufficient showing of "reasonable particularity" is not addressed by the statues or the case law, and for good reason. As Chief Justice Rehnquist has said, the law is purposely vague in some areas so that there is a "play in the joints". This is a descriptive way of saying that the law is flexible enough for the referee or the trial court to achieve a just result depending on the facts, law, and equities of the situation. Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 835 (2005).

"Reasonable particularity", as mandated by §2019.210, means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' propriety information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits. Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 835-836 (2005); see also City of Santa Cruz v. Municipal Court, 49 Cal. 3d 74, 90 (1989).

The degree of "particularity" that is "reasonable" will differ, depending on the alleged trade secrets at issue in each case. A more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field. Id.

The mandate that a party "reasonably particularize" …implies a requirement that the information sought be reasonably particularized from the standpoint of the other party. Any other interpretation

places too great a burden on the other party, regarding a guess as to what the identifying party is referring to. <u>Calcor Space Facility, Inc. v. The Superior Court of Orange County</u>, 53 Cal. App. 4th 216, 222 (1997).

### E. Information In The Public Domain Cannot Be A Trade Secret.

The general categories of elements that make up CMC's business operations that CMC now claims are its alleged trade secrets appear to be information in the public domain. Such public information cannot be trade secrets. <u>Religious Technology Ctr v. Netcom On-Line Communications Srvcs</u>, 907 F. Supp. 1361 (N.D. Cal. 1995). Plaintiff cannot articulate anything unique or proprietary as to how it competes, organizes or otherwise uses public information. At his deposition, Plaintiff could not articulate anything unique or proprietary regarding CMC's customer list. Ward Decl. in Support of Defendants Opposition To Motion For Temporary Restraining Order at 3:24-25, Ex. A (Lillge Depo. at 28:16-29:1). The information itself, such as a public company's Vice President of Marketing, cannot be protected as a trade secret.

### F. The Identity Of Customers Is Not A Protectable Trade Secret.

California law is clear that salespeople cannot be restrained from doing business with contacts and customers with whom they have developed relationships. A company cannot prevent former sales employees from soliciting business from their contacts developed in their industry, regardless of whether those contacts were developed as an employee of that company.

> Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, <u>even for the business of those who had formerly been the customers of this former employer</u>, provided such competition is fairly and legally conducted. <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1994) (emphasis added).

Neither has Plaintiff proven that its relationship with its customers are exclusive, nor has Plaintiff shown that its customers are secret or obscure, such that a competitor would be unlikely to identify and solicit them for orders. Witnesses deposed in this action, such as Gina Lee, Business Development Officer of Chevron Federal Credit Union, have also provided testimony to this effect.

Ward Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶12, Ex. I; Lee Depo. at 19:24 – 20:9; P. 21; ¶11. The identity of the customers alone, therefore, cannot be trade secrets and former employees like Verity and Chang are entitled to compete for business from CMC's customers. Furthermore, Gina Lee, the customer whom Plaintiff claims as the impetus for the filing of his suit, is illustrative. She contacted Defendant Chang in response to a neutral e-mail concerning Ms. Chang's whereabouts. Further, like many of CMC's customers, she received multiple bids for the products she sought and eventually purchased from the low bidder. Thus, in Plaintiff's "prime example" of lost business to Defendants, the customer received multiple bids from non-party competitors and chose the lowest bidder(not CMC). Plaintiff claims in his opposition that he is about "free speech and honest competition", yet the Injunction he wrongfully obtained restricts defendants from engaging in such speech and prevents their participation in competition to earn business from customers who seek multiple bids for their purchases.

Additionally, Lillge makes much of the fact that Defendant Verity, his former employee, once had CMC's MYOB accounting system on his laptop (not unusual for a key employee, who was asked by Plaintiff to be able to work from home) but establishes nothing in the realm of trade secrets that could be missappropriated as there is no factual peculiarity in this computer accounting system which would provide a competitor with an advantage in selling to a particular customer in the future in that the MYOB system contains no database of client pricing by individual item. The accounting system used at CMC was just a low technology bookkeeping system. The data collected mirrored what was printed on the invoice, so there was no collection of either item number or supplier, both essential items for a pricing or customer database. In this way any claim that CMC has a database customer pricing is false. Verity Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶12. At trial, Lillge will be unable to establish a database of customer pricing because it simply does not exist.

Given California law that makes it very clear that Verity and Chang have a right to do business with their former customers, the burden is on Lillge to draw the line between Defendants' right to compete and trade secret information. The identities of Verity's and Chang's customers as well as their preferences, habits and other information naturally acquired in a business relationship is information that

-8-    Case No. C-07-02748 MHP

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE INCREASE THE AMOUNT OF THE BOND

is presumptively Verity's and Chang's to use. Continental Car-Na-Var Corp. v. Moseley, 24 Cal 2d. 104, 110 (1994); Aetna Building Maintenance Co. v. West, 39 Cal 2d. 198, 203 (1952) Plaintiff's reliance on Western Electro- Plating Co. v. Henness, 180 Cal. App. 2d 442 (1960) is misplaced, given the nature of the misappropriation which is clearly distinguishable- A "route" case, where the defendant solicited customers "who would normally patronize only one concern" away from his employer while under their employ. id. at 447-448. In Continental Car-Na-Var Corp., the court readily distinguished its holding from the so-called "route" cases, where the business of serving the customer is based upon regular calls at definite periods, establishing a business relationship between the customer and the company, which, unless interfered with, normally will continue, when it stated,

> "Here [as in our instant case] there is no showing that in the normal course of events, plaintiff would have continued to sell to any of its customers on the list. In the "route" cases the services rendered or the products sold were essentially the same, and the quality of the service rendered is similar. In the case of a salesman in a commercial field, there is no assurance of an order unless he can satisfy the customer that his merchandise is better, cheaper or more salable than that of his competitor. The customer usually desires to examine, inspect and compare merchandise and prices offered to him. Each sale is a distinct transaction, not necessarily implying that another will follow." Id. at 109

Given this, Lillge's abject failure to provide any specific information as to what he claims might fall under the heading of a legally cognizable trade secret must not be permitted to continue given the proximity of the trial in this matter, and based on this, the existing Injunction should be dissolved and/or modified to reflect Plaintiff's failure to bring legally cognizable secrets to the Court and parties attention.

In addition to obtaining the injunction based on misrepresentations about the nature of his business and false statements regarding the existence of trade secrets, Lillge has compounded the wrong by misrepresenting, with broadside communications to hundreds of customers, that this Court's orders prevent Verity and Chang's former customer contacts from having any contact with them. To discourage customers from switching their business to Verity and Chang, Lillge told potential customers that Defendants would be deported from the United States.

Lillge has broadcast defamatory statements to suppliers and customers. Verity Decl., ¶9, Ex. A, Lillge's June 28, 2007 letter to industry suppliers; Ex. B, Lillge's September 7, 2007 email to its customer contacts. Lillge's phone and e-mail communications with persons in the industry suggested

that people should not do business with Defendants because the Court's Orders forbade it. Because of the Court Order, Lillge took liberties, by taking uncontested potshots at Defendants in the marketplace. Further, he sought out information from these contacts regarding any alleged violations of the Court's Orders by Defendants. Verity Decl., exh A). His subsequent failure to provide this Court with a single example of a violation, let alone the seven he mysteriously references in his Opposition, demonstrates which party has truly acted in violation of the spirit of the Court's Orders.

### G. Lillge Cannot Compensate Defendants If His Injunction Was Wrongfully Obtained

Lillge has admitted that he lacks the financial wherewithal to satisfy any obligation in excess of the bond. Ward Decl., ¶8, Ex. E; Lillge Depo. at 317:15 – 318:13. His claim in his opposition to the contrary, that he possesses more than enough funds to satisfy any judgment against him( Opposition P17, fn 21) begs the question, was Lillge lying at his deposition or in his Opposition here. Based on the sales figures achieved by Verity and Chang while working for CMC, and what they have been able to achieve with Branding Boulevard, there is compelling evidence that the damages for a wrongfully obtained injunction are going to be substantially higher than $500,000, if it is determined the Injunction was wrongfully obtained. Verity Decl., ¶¶10-11, 13, 14  Chang Decl. ¶6.

## III. LEGAL ARGUMENT

### The Preliminary Injunction Should Be Dissolved.

Since Preliminary Injunctions are based on presumably temporary circumstances, the issuing court is empowered to modify the injunctive relief to reflect changing events. "The power of a court of equity to modify a decree of Injunctive Relief is long-established, broad, and flexible. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. . . .Familiar equity procedure assures opportunity for modifying or vacating an Injunction when its continuance is no longer warranted." <u>New York State Ass'n for Retarded Children v. Carey</u>, 706 F.2d 956 (2d Cir. 1983).

Plaintiff's argument that the Court lacks legal authority to dissolve or modify its Injunction is incorrect, and his citation to case law referencing the inapplicability of Federal Rule of Civil Procedure 60 (b), without advising the Court that in each of those cases the courts found they had the inherent

power to dissolve or amend the injunctions is disturbing. "It is irrelevant that [defendant] characterized her motion as one for relief …under Federal Rule of Civil Procedure 60(b). "The label attached to a motion does not control its substance." <u>Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.</u>, 204 F. 3d 867 (9th Cir. 2000)(citing <u>United States v. State of Oregon</u>, 769 F.2d 1410, 1414 n.4 (9th Cir. 1985)) See also <u>McClatchy Newspapers v. Central Valley Typographical Union No. 46</u>, 686 F.2d 731, 734-35 (9th Cir. 1982).

In <u>Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.</u>, 74 F.R.D. 621 (S.D.N.Y. 1977), Defendant moved for an order pursuant to Federal Rule Civil Procedure 60(b)(5) to dissolve preliminary injunction. The Court held it was within its discretion to modify the injunction. A motion for relief from a judgment or order made upon the ground that "it is no longer equitable that the judgment should have prospective application" is addressed to the discretion of the district court. Defendant based her arguments upon the discovery that was conducted subsequent to the issuance of the preliminary injunction. Defendant's arguments, in sum, constitute a detailed and cogent defense to the action. While Rule 60(b) was technically inapplicable, the Court will entertain the application under its continuing plenary power over its interlocutory orders, under which <u>the Court is not bound by Rule 60(b)(5)'s strict standard of "changed circumstances" in reconsidering the earlier order but may in its discretion apply general equitable principles in its consideration of the motion</u>. Id at 623. [emphasis added] See also <u>Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.</u>, 2002 U.S. App. Lexis 3353(3rd Cir. 2002; <u>Carvantes v. Insurance</u>, 967 F. Supp. 1179 (Dist. of Arizona, 1997); <u>Adams v. City of Chicago</u>, 135 F. 3d 1150 (7th Cir. 1998).

### A.   The Evidence Now Demonstrates Just How Unlikely Plaintiff Is To Prevail On His Trade Secrets Claim.

Plaintiff's repeated refusal to identify any such secrets by this stage in the litigation must be viewed as crippling to their case.

In opposition to this motion, Lillge needs to show the Court an actual trade secret. Not a label, not a category, but some specific collection of trade secrets that would justify this lawsuit. Based on

what Plaintiff has provided or produced in this action, what Plaintiff claims to be trade secrets simply are not. The identities of Verity's and Chang's customers as well as their preferences, habits and other information naturally acquired in a business relationship is information that is presumptively Verity's and Chang's to use. <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal 2d. 104, 110 (1944); <u>Aetna Building Maintenance Co. v. West</u>, 39 Cal 2d. 198, 203 (1952). Lillge's abject failure to make any reasonable effort to draw a line between what is a trade secret and what Verity and Chang are entitled to use given the time elapsed and the efforts of Defendants to obtain this information is in and of itself grounds to dissolve the Preliminary Injunction.

### B. The Provisional Relief Has Been In Place Long Enough For There To Be Little Or No Change Of Irreparable Injury.

The Court has full power to terminate a continuing Injunction of the kind at issue here using the significant time period of compliance that has passed as a factor, upon a determination that it has achieved its purpose or no longer serves its intended purpose.

Plaintiff has had ten months to assign these accounts to new sales representatives and prove to the customers a continuing track record of service. If Lillge has not done so by now, he presumably never will and these dissatisfied former customers of Verity and Chang should be fair game.

### C. In The Alternative, The Court Should Increase The Bond And Enjoin Lillge From Engaging In The Same Conduct That Lillge Has Sought To Enjoin

If the Court will not dissolve or modify the injunction, the Court should at least increase the bond and enjoin Lillge from abusing the Court's order. Fed. R. Civ. Proc. 65(c) provides that a bond must be posted before a Federal Court may issue an interlocutory injunction and that the enjoined defendant may recover on the bond if a court later determines that it was "wrongfully enjoined", this provides the plaintiff with notice of the maximum extent of its potential liability, <u>since the amount of the bond is the limit of the damages the defendant can obtain for a wrongful injunction</u>, . . . provided the plaintiff was acting in good faith." <u>The Continuum Company, Inc. v. Incept, Inc.</u>, 873 F.2d 801 (5th Cir. 1989)[emphasis added].

In setting the amount of security for a Preliminary Injunction for the payment of such costs and

damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained, the trial court should err on the high side. An error on the low side may produce irreparable injury, because damages for an erroneous Preliminary Injunction may not exceed the amount of the bond. The Supreme Court declared in W.R. Grace & Co. v. Local Union 759 that "a party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 770 n. 14, 103 S. Ct. 2177, 2185 n. 14, 76 L. Ed. 2d 298 (1983).

### 1. The Amount Of The Bond Should Be Increased

Branding Boulevard's lost gross profits as a result of the TRO and Injunction will in all likelihood be over $500,000, by the time of trial. Verity Decl paras 11,13, and 14 When the Court first set the bond amount in June 2007, neither Defendants, nor the Court, knew if the fledgling company would survive, or if they turned a profit, how much? This information now exists. Another factor weighing in favor of increasing the bond is Lillge's admission that he would lack the financial wherewithal to pay damages for a wrongfully obtained injunction. Ward Decl., ¶9, Ex. E, Lillge Depo. at 317:15 – 318:13. While Plaintiff now claims the wherewithal to pay any judgment related to a wrongfully obtained Injunction(Opp p.17, fn 21), he does not offer to stipulate to pay the amount of actual damages. The amount of the bond must be increased before trial since failure to do so now would result in a improper cap on the damages that defendants would be entitled to, that was calculated without any practical information as to potential damages given defendants' business' fledgling status. Unles the bond is increased, Lillge effectively would be given a free shot at Verity and Chang's new business, would not be required to satisfy the actual damages that Verity and Chang have suffered if the injunction is found to have been wrongfully obtained. Since Defendants still would have had to prove their loss, converting the "soft" numbers to hard ones, there could be no prejudice to increasing the bond, but severe consequences if the bond remains at its present level.

### D. The Court Should Enjoin Lillge From Contacting Branding Boulevard's Customers

Lillge should be subject to a restriction similar to Verity and Chang - - no contact with Branding

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE INCREASE THE AMOUNT OF THE BOND

Boulevard customers unless those customers choose to initiate contact. Lillge is learning through discovery the identity of Branding Boulevard's customers. Lillge has contacted some of those customers, and made representations regarding this litigation and the defendants which are not true. This is not fair. Lillge also should be enjoined from further mass communications and selective references to and about this litigation to the marketplace.

No bond should be required for the injunction requested. Defendants' requested injunction would only limit Lillge's non-existent right to put Branding Boulevard out of business.

## IV. CONCLUSION

Based on the foregoing, Defendants pray that this Court dissolve and/or modify its preliminary injunction to even the playing field given Lillge's abuse of the Court's Order. In the alternative, Defendants pray that the Plaintiff be required to put up a security bond that reflects the potential damages that Defendant have and will continue to incur if it is found that Plaintiff has wrongfully enjoined Defendant's right to unfettered access to the market and the customer relationship they have nurtured.

Dated: March 24, 2008                DE LA HOUSAYE & ASSOCIATES, ALC

                                     By:_____/s/_____
                                           BRENDAN J DOOLEY

                                     Attorneys for Defendants
                                     ANDREW VERITY AND CHRISTINA CHANG