RICHARD HARRINGTON (SBN 28099)
CHANDLER WOOD HARRINGTON & MAFFLY LLP
One Maritime Plaza, Fourth Floor
San Francisco, California 94111 3404
Telephone:   415 421 5484
Facsimile:    415 986 4874
Email:         harr@well.com

ROBERT CHARLES WARD (SBN 160824)
SHARTSIS FRIESE LLP
One Maritime Plaza, Eighteenth Floor
San Francisco, California 94111 3404
Telephone:   415 421 6500
Facsimile:    415 421 2922
Email:         rward@sflaw.com

C. ANGELA DE LA HOUSAYE (SBN 144218)
BRENDAN J. DOOLEY (SBN 162880)
KARYNE T. GHANTOUS (SBN 191309)
DE LA HOUSAYE & ASSOCIATES, ALC
1655 N. Main Street, Suite 395
Walnut Creek, California 94596
Telephone:   (925) 944-3300
Facsimile:    (925) 944-3343
Email:         angela@delahousayelaw.com
                brendan@delahousayelaw.com
                karyne@delahousayelaw.com

Attorneys for Defendants
ANDREW VERITY AND CHRISTINA CHANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE D/B/A CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY AND CHRISTINA CHANG,<br><br>Defendants. | Case No: C-07-02748 MHP<br><br>**DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION IN LIMINE TO EXCLUDE THE INTRODUCTION OF EVIDENCE REGARDING TRADE SECRETS NOT SPECIFICALLY IDENTIFIED**<br><br>Date:   May 6, 2008<br>Time:  8:30 a.m.<br>Dept:   15<br>Judge: Hon. Marilyn H. Patel<br><br>Complaint Filed: May 25, 2007<br>Trial Date: May 6, 2008 |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................. 1

    A.   Under The Court's Analysis Plaintiff Has Apparently Established The Existence Of One Trade Secret, – Were There Others? ................................. 2

    B.   Lillge's Concocted Trade Secrets Claims ......................................................... 2

    C.   Plaintiff Has Failed To Identify His Trade Secrets ........................................... 2

    D.   Information In The Public Domain Cannot Be A Trade Secret. ....................... 5

    E.   The Identity Of Customers Is Not A Protectable Trade Secret. ........................ 5

    F.   Production of a "Document Dump" Is Not Tantamount To The Specific Identification of Trade Secrets. ........................................................................ 7

    G.   The Trade Secrets Have Not Been Identified ................................................... 8

    H.   Plaintiffs Production Of Tens Of Thousands Of Documents In 23 Banker Boxes Does Not Meet The Requirement Of A Legitimate Response Pursuant To Federal Rules Of Civil Procedure 33. ........................................ 10

III. CONCLUSION .............................................................................................................. 12

-i-   Case No. C-07-02748 MHP

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION IN LIMINE TO EXCLUDE THE
INTRODUCTION OF EVIDENCE REGARDING TRADE SECRETS NOT SPECIFICALLY IDENTIFIED

## TABLE OF AUTHORITIES

**Cases**

Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County
   132 Cal. App. 4th 826 (2005) ........................................................................... 7, 8

Aetna Building Maintenance Co. v. West
   39 Cal 2d. 198, 203 (1952) ................................................................................... 5

Al Barnett & Son, Inc. v. Outboard Marine Corp.
   611 F.2d 32 (3rd Cir., 1979) ................................................................................ 11

Calcor Space Facility, Inc. v. The Superior Court of Orange County
   53 Cal. App. 4th 216 (1997) .................................................................................. 9

City of Santa Cruz v. Municipal Court
   49 Cal. 3d 74 (1989) ............................................................................................. 9

Computer Economics, Inc. v. Gartner Group Inc.
   50 F. Supp. 2d 980 (1999) .................................................................................... 7

Continental Car-Na-Var Corp. v. Moseley
   24 Cal. 2d 104 (1994)........................................................................................ 3, 5

Daiflon, Inc. v. Allied Chemical Corp.
   534 F. 2d 221 (10th Cir. 1976) .......................................................................... 9, 10

Diodes, Inc. v. Franzen
   260 Cal. App. 2d 244 (1968) ............................................................................ 7, 8

IMAX Corp. v. Cinema Techs., Inc.
   152 F.3d 1161 (9th Cir., 1998) .............................................................................. 7

J.J. Delaney Carpet Co. v. Forrest Mills, Inc.
   34 F.R.D. 152 (S.D.N.Y. 1963) ........................................................................... 10

Rainbow Pioneer v. Hawaii-Nevada Investment Corp.
   711 F.2d 902 (9th Cir. 1983) ............................................................................... 11

Religious Technology Ctr v. Netcom On-Line Communications Srvcs
   907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................................ 3

Riley v. United Air Lines
   32 F.R.D. 230 (S.D.N.Y. 1962) ..................................................................................... 10

Sabel v. Mead Johnson and Co.
   112 F.R.D. 211 (N.D.Ind. 1986) .................................................................................... 11

Universal Analytics v. MacNeal-Schwendler Corp.
   707 F. Supp. 1170 (C.D.Cal. 1989) .................................................................................. 7

**Statutes**

California Code of Civil Procedure §2019.210 ............................................................. passim
Federal Rule of Civil Procedure 33 ............................................................................... passim
Federal Rule of Civil Procedure 37(a) ............................................................................... 6, 7

## I. INTRODUCTION

The Court explicitly stated at the hearing on Plaintiff's Motion for Preliminary Injunction that Plaintiff Mark Lillge ("Lillge") d/b/a Creative Marketing Concepts ("CMC") had not shown a substantial likelihood of prevailing on the question of whether Plaintiff had the trade secrets that he claims. (Declaration of Robert Ward in Support of Motion to Dissolve the Preliminary Injunction ("Ward Decl.") ¶2, Ex. A, 9:26-28, 10:1-2, 10-21-23). To this day, Plaintiff has failed to identify with requisite specificity legally cognizable trade secrets. No additional useable information has been provided by Plaintiff since that time regarding his "secrets". Thus, it would be hard to fathom any perceived increase in the likelihood that Plaintiff would prevail on this point as the trial date now looms.

At this point in the case, however, after discovery has closed, the Court should prohibit the Plaintiff from introducing evidence concerning alleged trade secrets that he has failed to identify with the reasonable particularity required to permit the Defendants to prepare for in this matter.

Despite clear obligations to do so under California Law, Lillge has failed to truly identify the supposed trade secrets. His "identification" of trade secrets, pursuant to Code of Civil Procedure §2019.210, identified general categories of items related to CMC's operations, but no specific trade secrets and Lillge has refused to identify any in discovery. Verity has either been refused or stymied by Plaintiff's production of a "document dump" in lieu of providing concise responses. This practice by Plaintiff is improper, and should not be rewarded by this Court. Thus, the Court should prohibit the introduction of any evidence regarding supposed trade secrets and any damages related thereto that have not been specifically identified to date.

## II. STATEMENT OF FACTS

This is a customer list case. Plaintiff Lillge does not want his two former employees to contact the customers with whom they have developed professional relationships with over the years. Lillge claims that his customer list is a trade secret, despite legal authority to the contrary and the absence of anything remarkable or unique about how CMC built its customer list. Furthermore, there is no evidence that Verity or Chang took or are using the customer list.

### A. Under The Court's Apparent Analysis Plaintiff Has Apparently Established The Existence Of One Trade Secret[1], – Were There Others?

CMC is in a service industry. Its success has been grounded on the hard work and superior sales and service skills of its employees. CMC invents nothing and manufactures nothing. CMC finds customers, takes orders for products with the customers' names and logos, orders those products primarily from catalogs of the major suppliers, and delivers the promotional products to the customers. CMC is a low-tech business successful because it out-hustles the competition. Unlike distributors such as Dell or Amazon, CMC has not developed any unique and innovative methods of selling and delivering products.

### B. Lillge's Concocted Trade Secrets Claims

When Plaintiff Lillge realized he would not succeed in his efforts to get Verity and Chang deported, based on claims of alleged trade secrets, Lillge convinced the Court to issue a Temporary Restraining Order ("TRO") and later a Preliminary Injunction. The Court ordered the Injunction despite stating that Lillge had not carried his burden as to the likelihood of trade secrets. Ward Decl., ¶2, Ex. A, 9:26-28, 10:1-2, 10:21-23.

### C. Plaintiff Has Failed To Identify His Trade Secrets

Plaintiff has failed to identify his trade secrets, as he is obligated to do under California Code of Civil Procedure §2019.210. In a series of interrogatories, Defendant Chang asked Lillge to "state all facts" in support of each of the categories of information that Plaintiff contends are trade secrets. Ward Decl., ¶4, Ex. B. In response to the interrogatories, Plaintiff restated general contentions about the trade secrets that are little more than copied language from his Complaint. Ward Decl., ¶5, Ex. C. As part of an attempt to meet and confer over the inadequate information provided regarding the supposed trade secrets, counsel for Plaintiff agreed only to provide documents and did not agree to provide any further specificity with regard to identifying, describing or elaborating on what Plaintiff contends is, and is not, a trade secret. Ward Decl., ¶4. Plaintiff has produced thousands of pages of documents (contained in 23 bankers boxes), which appear to comprise mostly of the customer files for the Plaintiff's business.

---

[1] Memorandum and Order, P. 8, LN 10

1  Almost all of these documents have been designated "confidential, attorneys-eyes-only", despite most of these documents being mundane information that Plaintiff could not possibly assert as a trade secret. Id. Furthermore, by designating the documents for "attorneys eyes only", and by failing to provide satisfactory interrogatory responses, Plaintiff is apparently leaving it to counsel for Defendants to wade through tens of thousands of documents in an attempt to guess what exactly Plaintiff contends is a trade secret. Plaintiff has not provided Defendants with the location within the 23 boxes of documents where its alleged trade secrets may reside. Further, Plaintiff has claimed that its secrets were taken via computer, yet has failed to identify or produce any computer-based database containing these "secrets" that Defendants allegedly have misappropriated.

The contents of the 23 boxes of documents are not alleged to have been copied and taken by Defendants to their new business. Thus, the introduction of any documents contained in these 23 boxes that have not been previously identified should not be permitted.

From the beginning, Lillge planned this trade secret case as a fall back plan, if his efforts to have Verity and Chang deported did not work, and if he subsequently found they had entered the same marketplace. Going through the general categories that Plaintiff claims are trade secrets (Ward Decl. ¶2, Ex. B), Plaintiff clearly has not established the existence of any legally cognizable trade secrets. Lillge's obligations under Rules of Discovery required that he show the Defendants any and all information regarding actual trade secrets he claimed Defendants have misappropriated. Merely stating a general label or a category is not sufficient; Lillge's failure, prior to trial , to identify with reasonably particularity some specific collection of trade secrets that would justify this lawsuit should prevent his identification of any such Secrets at trial .

In the Court's recent Memorandum and Order Regarding Plaintiff's Motion for Partial Summary Judgment ("MPA and Order"), the Court appeared to take Lillge's representations regarding his possession of general categories of trade secrets at face value, when it recited that CMC's "…specific customer information are not developed by its sales personnel; rather, CMC independently develops this information and distributes it as necessary to its sales personnel. This information includes, but is not limited to: 1) contact information for certain customer, including key decision makers who CMC knows actually buy its products; 2) purchasing history of certain customers and respective sales volume,

including the knowledge of when a customer will be due for replenishment/re-order based upon its prior transactions with CMC; 3) knowledge of CMC's customers' particular requirements and buying habits, including needs, likes, dislikes and limitations; and 4) what CMC charges its customers. (MPA and Order, P.2, LN 2 – 10). The Court, however, went on to note that, "in order to establish that it has trade secrets, CMC must meet at two-part test. California has adopted the Uniform Trade Secrets Act ("UTSA"), which defines a trade secret as follows: 'Trade Secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process. Cal. Civ. Code § 3426.1(d). (MPA and Order, P.6, LN 6 – 9). Thus, based on this definition adopted by both this Court and the California legislature, general categories do not suffice as trade secrets. The party claiming these must identify the specific information he claims is a secret and that has been misappropriated. Furthermore if Plaintiff were to prevail on his trade secrets claims, he would need to identify the specific secrets taken so that damages could be calculated related to each secret allegedly misappropriated.

  Again, in its recent order, the Court appears to take Lillge's representations that he possesses trade secrets at face value when, for example, the Court referenced the following: "the information maintained by Plaintiff – key decision makers at the client, purchasing, history, pricing, sales volume, when to contact client for replenishment and the client's particular requirements and buying habits, including needs, likes, dislikes, and limitations – which is not generally available, pertains to the value to CMC of the promotion product customers. The information maintained by CMC is exactly the type of information intended to be protected by California trade secret law." (MPA and Order, P. 7, LN 7 – 16). Lillge's representations that he actually "maintains" trade secrets, however, cannot be simply be taken at face value now that trial us upon is and the Jury must consider the issue. If Lillge maintained such specific information, why has he not identified it with the "reasonable particularity" required? What does Customer X like, when does Customer X want it, how much does Customer X order, and how much should Customer X be charged for it? If this information was "maintained" by Lillge as he claims, and as the Court appears prepared to accept at face value, his failure to identify this "maintained" information to the Defendant to date, especially considering that - for it to have been misappropriated by a fired employee - it must have been compiled and consolidated in a compact, easily transferable, and easily useable format (as opposed to 23 boxes of random customer invoices and

emails), should be treated appropriately by this Court. If Lillge failed to identify this specific information to Defendants over the intervening year as this case proceeded to a Jury, despite his alleged ability to do so, then Lillge should be prevented from introducing such specific information to a Jury (and Defendants for the first time) now at Trial.

### D.     Information In The Public Domain Cannot Be A Trade Secret.

Much of what CMC claims as alleged trade secrets appear to be information in the public domain. Such public information cannot be trade secrets. <u>Religious Technology Ctr v. Netcom On-Line Communications Srvcs</u>, 907 F. Supp. 1361 (N.D. Cal. 1995). Plaintiff cannot articulate anything unique or proprietary as to how it competes, organizes or otherwise uses public information. At his deposition, Plaintiff could not articulate anything unique or proprietary regarding CMC's customer list. Ward Decl. in Support of Defendants Opposition To Motion For Temporary Restraining Order at 3:24-25, Ex. A (Lillge Depo. at 28:16-29:1). The information itself, such as a public company's Vice President of Marketing, cannot be protected as a trade secret.

### E.     The Identity Of Customers Is Not A Protectable Trade Secret.

California law is clear that salespeople cannot be restrained from doing business with contacts and customers with whom they have developed relationships. A company cannot prevent former sales employees from soliciting business from their contacts developed in their industry, regardless of whether those contacts were developed as an employee of that company.

> Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, <u>even for the business of those who had formerly been the customers of this former employer</u>, provided such competition is fairly and legally conducted. <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1994) (emphasis added).

Neither has Plaintiff proven that its relationship with its customers are exclusive, nor has Plaintiff shown that its customers are secret or obscure, such that a competitor would be unlikely to identify and solicit them for orders. The first category of trade secrets that are claimed by Plaintiff are his customers. The identity of CMC's customers are not secrets. One can walk into CMC's showroom - a public place - and learn the identity of <u>hundreds</u> of CMC customers. See Declaration of Timothy

Schmolder. Most if not all these customers do not consider themselves to be "secrets" possessed by Lillge. For example, Tess Pascual of Bingham McCutchen testified that she received solicitations from other promotional products vendors and that her identity as a buyer for Bingham is not secret. Ward Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶10, Ex. G; Pascual Depo. at 18:21 - 25; 69:24 – 70:20 – 23:9. Other witnesses deposed in this action, such as Gina Lee, Business Development Officer of Chevron Federal Credit Union have also provided more of the same testimony. Ward Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶12, Ex. I; Lee Depo. at 19:24 – 20:9; P. 21; ¶11, Exhibit H, Woods Depo. at 34:20 – 37:25; 61:17 – 62:8; ¶13, Ex. J; Hua Depo. at 62: 16 – 22. The identity of the customers alone, therefore, cannot be trade secrets and former employees like Verity and Chang are entitled to compete for business from CMC's customers.

The Court granted the Preliminary Injunction on the basis of Lillge's claims specifically that he may be able to establish customer pricing as a trade secret. Bruce Molloy ("Molloy"), a senior manager at CMC, provided a deposition that makes a mockery of Lillge's claim that pricing is a secret. Ward Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶9, Ex. F, Molloy Depo. at 21:13 – 22:14; 59:18 – 62:1. With regard to pricing, one of CMC's claimed alleged trade secrets, Lillge admitted that most pricing in the industry is done based on established markup percentage. Id. at 41:8-42:1. Lillge also admitted that deviation from the standard, industry-wide pricing was the result of management discretion, rather than any unique and proprietary techniques or methodology of CMC. Id. at 47:21-49:4, 52:22-53:1, 53:13-24, 54:9-55:2, 55:14-24. Additionally Lillge had failed to make the Court aware of a factual peculiarity of his computer accounting system that it contains no database of client pricing by individual item, due to the fact that the item numbers are either not printed or collected on the client invoice. Verity Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶12. At trial, Lillge should not be allowed to introduce evidence regarding a database of customer pricing not only because it simply does not exist, but because he failed to identify such a database prior to trial.

The practice at CMC was not to print the product item number on invoices for clients. This was replaced by generic descriptions such as "Imprinted Mugs". The accounting system used at CMC was

just a low technology bookkeeping system. The data collected mirrored what was printed on the invoice, so there was no collection of either item number or supplier, both essential items for a pricing database. The purchasing part of the accounting system was not linked to the invoicing side in any way. In this way any claim that CMC has a database customer pricing is false. Id.

Another category of information that Lillge pleads are trade secrets is the pricing for the merchandise sold by CMC. Yet Molloy, admitted that industry pricing is typically based on catalogs provided by businesses other than distributors like CMC. Ward Decl. in Support of Defendants Motion to Dissolve the Preliminary Injunction, ¶9, Exhibit F; Molloy Depo. at 21:13 – 22:14; 59:18 – 62:1. Furthermore, Lillge has failed to identify any specific pricing or formula that he claims is a Trade Secret.

Given California law that makes it very clear that Verity and Chang have a right to do business with their former customers, the burden is on Lillge to draw the line between Defendants' right to compete and trade secret information. The identities of Verity's and Chang's customers as well as their preferences, habits and other information naturally acquired in a business relationship is information that is presumptively Verity's and Chang's to use. Continental Car-Na-Var Corp. v. Moseley, 24 Cal 2d. 104, 110 (1994); Aetna Building Maintenance Co. v. West, 39 Cal 2d. 198, 203 (1952)

Given this, Lillge's abject failure to provide any specific information as to what he claims might fall under the heading of a legally cognizable trade secret he must not be permitted to introduce evidence on this topic at the in this matter, after failing to identify this same information prior to trial despite a discovery code obligation to do so.

### F. Production of a "Document Dump" Is Not Tantamount To The Specific Identification of Trade Secrets.

Lillge's efforts to address his threshold shortcomings concerning the identification of trade secrets by providing tens of thousands of documents in hopes that something within the 23 boxes of documents might be recognized as a trade secret is not a permissible response to a specific discovery request seeking the identity of the alleged trade secrets that are the very crux of his claims in this suit. For example, Lillge has accused Verity and Chang of stealing secrets from CMC's computer system and yet, has provided virtually no documentation of anything obtained from CMC's computers. In addition,

by indiscriminately marking everything for "attorneys-eyes-only," and then failing to specify the location of the information sought, Lillge justifies the proposed ban on identifying and introducing evidence concerning alleged Trade secrets for <u>the first time</u> now at trial.

G.   **The Trade Secrets Have Not Been Identified**

In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act, before commencing discovery relating to any trade secrets, "the party alleging the misappropriation shall identify the trade secrets with <u>reasonable particularity</u>...". Cal. Code Civ. Proc. §2019.210 (2007) [Emphasis added].

The statutory obligation requires " that a plaintiff must make some showing that is reasonable under all the circumstances to identify its alleged trade secrets in a manner that will allow the court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a on the merits". <u>Id.</u>

The purpose of §2019.210 is as follows:

> "First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. <u>Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of to effectively defend against charges of trade secret misappropriation.</u>" <u>Computer Economics, Inc. v. Gartner Group Inc.</u>, 50 F. Supp. 2d 980, 985 (1999) [Emphasis Added]; see also   <u>Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County</u>, 132 Cal. App. 4th 826, 833-834 (2005).

The letter and spirit of §2019.210 required the Plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with "sufficient particularity" to limit the permissible scope of discovery by distinguishing the trade secrets "from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." <u>IMAX Corp. v. Cinema Techs., Inc.</u>, 152 F.3d 1161, 1164–1165 (9th Cir., 1998); see also <u>Universal Analytics v. MacNeal-Schwendler Corp.</u>, 707 F. Supp. 1170, 1177 (C.D.Cal. 1989); see also <u>Diodes, Inc. v. Franzen</u>, 260 Cal. App. 2d 244, 253 (1968); see also <u>Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County</u>, 132 Cal. App. 4th 826, 835 (2005).

In <u>Diodes v. Franzen</u>, 260 Cal. App. 2d. 244 (1968), the Court held that general allegations regarding the existence of trade secrets is not sufficient,

> "The plaintiff must nevertheless allege the ultimate facts showing the existence of a trade secret or other confidential data to state such a cause of action. An averment simply that the plaintiff has a "secret process" is a bare legal conclusion. Before a Defendant is compelled to respond to a complaint upon claimed misappropriation or misuse of a trade secret and to embark on discover which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the Defendant to ascertan at least the boundaries within which the secret lies…the Plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process…to give both the Court and the Defendant reasonable notice of the issues which must be met at the time of and to provide reasonable guidance in ascertaining the scope of appropriate discovery." <u>Diodes v. Franzen</u>, 260 Cal. App. 2d. 244, 252-253 (1968).

In <u>Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County</u>, 132 Cal. App. 4th 826, 830 (2005), the court elaborated on what constituted a sufficient identification of trade secrets under the Code, "…where the Plaintiff makes a showing that is reasonable, i.e. fair, proper, just, rational, the trade secret has been described with 'reasonable particularity', and is sufficient to permit discovery to commence." <u>Id.</u>

Just what constitutes a sufficient showing of "reasonable peculiarity" is not addressed by the statues or the case law, and for good reason. As Chief Justice Rehnquist has said, the law is purposely vague in some areas so that there is a "play in the joints". This is a descriptive way of saying that the law is flexible enough for the referee or the court to achieve a just result depending on the facts, law, and equities of the situation. <u>Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County</u>, 132 Cal. App. 4th 826, 835 (2005).

"Reasonable peculiarity", as mandated by §2019.210, means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational under all of the circumstances to identify its alleged trade secret in a manner that will allow the court to control the scope of subsequent discovery, protect all parties' propriety information, and allow them a fair opportunity to prepare and present their best case or defense at a on the merits. <u>Advanced Modular Sputtering, Inc. v. The</u>

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S MOTION IN LIMINE TO EXCLUDE THE INTRODUCTION OF EVIDENCE REGARDING TRADE SECRETS NOT SPECIFICALLY IDENTIFIED

Superior Court of Santa Barbara County, 132 Cal. App. 4th 826, 835-836 (2005); see also City of Santa Cruz v. Municipal Court, 49 Cal. 3d 74, 90 (1989).

The degree of "peculiarity" that is "reasonable" will differ, depending on the alleged trade secrets at issue in each case. A more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field. Id.

The mandate that a party "reasonably particularize" …implies a requirement that the information sought be reasonably particularized from the standpoint of the other party. Any other interpretation places too great a burden on the other party, regarding a guess as to what the identifying party is referring to. Calcor Space Facility, Inc. v. The Superior Court of Orange County, 53 Cal. App. 4th 216, 222 (1997).

### H. Plaintiffs Production Of Tens Of Thousands Of Documents In 23 Banker Boxes Does Not Meet The Requirement Of A Legitimate Response Pursuant To Federal Rules Of Civil Procedure 33.

By failing to "reasonably particularize" and instead producing tens of thousands of documents, Plaintiffs seek to impose the burden on Defendants to search through the extensive "document dump" provided, to see what they can find to fit Plaintiff's categories of alleged trade secrets. This practice is improper, and should not be condoned here. Calcor Space Facility, Inc. v. The Superior Court of Orange County, 53 Cal. App. 4th 216, 222 (1997).

If the answer to an interrogatory may be determined by examining, auditing, compelling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by (1) specifying the records that must be reviewed, in sufficient details to enable the interrogating party to locate and identify them as readily as the responding party could. Fed. R. Civ. Proc. Rule 33.

This exception applies only if the summary is not available and the party specifies the records from which the information can be ascertained. A broad statement that the information is available from a mass of documents is insufficient. Daiflon, Inc. v. Allied Chemical Corp., 534 F. 2d 221, 226 (10th Cir. 1976). This is exactly what has occurred in this case.

Under the Federal Rule, it has been held that if the answer is available in a more convenient form, the proponent should not be required to search through records in order to obtain the proper data. Daiflon, Inc. v. Allied Chemical Corp., 534 F. 2d 221, 226 (10th Cir. 1976).

It would be antipathetic to the spirit of the Discovery Rules to assume that Rule 33(d) was intended to diminish the duty of the parties to provide all information requested. Since a respondent is required to answer proper interrogatories, it is not plausible to assume that a response may (or may not) be found in its records, accompanied by an offer to permit their inspection is sufficient. This is little more than an offer to play the discredited game of blindman's buff at the threshold level of discovery. Neither do the challenged answers furnish any information whatsoever, nor can the responses be read as stating that the responding parties do not have or cannot obtain the information necessary to answer the interrogatories. Riley v. United Air Lines, 32 F.R.D. 230, 233 – 234 (S.D.N.Y. 1962).

In J.J. Delaney Carpet Co. v. Forrest Mills, Inc., 34 F.R.D. 152, 153 (S.D.N.Y. 1963), the Court concluded that the option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information. It does not shift to the interrogating party the obligation to find out whether sought after information is ascertainable from the files tendered, but only permits a shift of the burden to dig it out once the respondents have specified the records from "where the answer" can be derived or ascertained. Id.

Directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by Rule 33… is an abuse of the option. A party who is permitted by the terms of this subdivision to offer records for inspection in lieu of answering an interrogatory should offer them in a manner that permits the same direct and economical access that is available to the party. If the information sought exists in the form of compilations, abstracts or summaries then available to the responding party, those should be made available to the interrogating party. A responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived. The party invoking the option must be able to represent that the party will be able to secure the information which is sought by the interrogatory in the records and must refer to specific documents and state that the information sought can be found therein. If only limited information is sought and the interrogated party can readily answer the interrogatories

1  with reference to its own records, Rule 33 should not be invoked. <u>Sabel v. Mead Johnson and Co.</u>, 112
2  F.R.D. 211, 212-13 (N.D.Ind. 1986); see also <u>Rainbow Pioneer v. Hawaii-Nevada Investment Corp.</u>,
3  711 F.2d 902 (9th Cir. 1983) (references to general categories of documents is insufficient)

The next prerequisite is that the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served. In <u>Sabel v. Mead Johnson and Co.</u>, the Court was presented with a similar scenario to that here. The court addressed this issue by stating that,

> "It is simply absurd to contend that it is equally burdensome for the interrogating party to derive this information from the responding party's New Drug Application when the only specification of records given by the responding party is the entire application, which is 154,000 pages in length. In addition, it must be remembered that the responding party's employees generated the documents found in the New Drug Application and are charged with the responsibility of maintaining them. They are clearly better able to extract the information which is needed to answer the interrogatories than is the interrogating party, who has no familiarity with the records. Where there is a lack of specificity within a great mass of records to which the interrogating party is directed and where the index is not adequate to direct the interrogating party to the specific documents or categories of documents where answers can be found, the responding party's familiarity with its own records can fairly be taken into account in assessing relative burdens." <u>Id.</u> See also <u>Al Barnett & Son, Inc. v. Outboard Marine Corp.</u>, 611 F.2d 32, 35 (3rd Cir., 1979).

### III. CONCLUSION

Based on the foregoing, Defendants pray that this Court prohibit the introduction of evidence concerning trade secrets by the Plaintiff that has not previously been specifically identified with the "reasonable particularity" required in his identification of trade secrets allegedly misappropriated by the Defendants pursuant to California Code of Civil Procedure §2019.210 and Federal Rule of Civil Procedure 33.

Dated: April 14, 2008                     DE LA HOUSAYE & ASSOCIATES, ALC

                                          / S /
                                    By:_____
                                          BRENDAN J. DOOLEY

                                    Attorneys for Defendants
                                    ANDREW VERITY AND CHRISTINA CHANG