WILLIAM R. HILL, #114954
  rock@donahue.com
ANDREW S. MACKAY, #197074
  andrew@donahue.com
SARA J. ROMANO, #227467
  sromano@donahue.com
DONAHUE GALLAGHER WOODS LLP
Attorneys at Law
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
P.O. Box 12979
Oakland, California 94604-2979
Telephone:    (510) 451-0544
Facsimile:    (510) 832-1486

Attorneys for Plaintiff/Counterdefendant
MARK LILLGE d/b/a CREATIVE
MARKETING CONCEPTS

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY and CHRISTINA CHANG,<br><br>Defendants. | CASE NO. C 07-02748 MHP<br><br>**PLAINTIFF'S ACCOUNT OF ACTUAL AND ESTIMATED HARM AND ATTORNEYS' FEES AND COSTS SUFFERED AS A CONSEQUENCE OF DEFENDANTS' CIVIL CONTEMPT**<br><br>Trial Date: May 6, 2008<br>Time: 8:30 a.m.<br>Dept.: Courtroom 15, 18th Floor<br>Judge: Hon. Marilyn H. Patel |
| ANDREW VERITY and CHRISTINA CHANG,<br><br>Counterclaimants,<br><br>v.<br><br>MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS, and DOES 1-10,<br><br>Counterdefendants. | |

# INTRODUCTION

In its Order filed April 1, 2008, the Court found Defendants Andrew Verity and Christina Chang in civil contempt of the Court's temporary restraining order and preliminary injunction. The Courted ordered Plaintiff Mark Lillge d/b/a Creative Marketing Concepts ("CMC") to submit an account of the actual or estimated harm and attorneys' fees and costs suffered as a consequence of defendants' civil contempt. CMC claims $15,899.86 for lost profits from sales to Chevron Federal Credit and Wells Fargo and $19,614 in attorneys' fees related to the contempt filings, for a total requested contempt sanction of $35,513.86.

## I.   CHEVRON FEDERAL CREDIT UNION AND GINA LEE.

CMC is entitled to recover damages from defendants' misappropriation of its trade secrets in violation of the Court's orders if, among other things, the misappropriation caused CMC to suffer an actual loss. CACI 4409.

Gina Lee, CFCU's Business Development Officer since July, 2006, attributes the decline in CFCU business to the improper communications she received from Christina Chang after May 31, 2007. See Declaration of Gina Lee in Support ("Lee Decl."), ¶¶ 5, 8. Lee was unhappy with the fact that Chang had taken her confidential information with her to her new business Branding Boulevard and that Chang was using Lee's confidential information to solicit her business. Id. Lee has intentionally tempered the amount of business she has done with CMC because she does not want this situation to repeat itself. Lee Decl., ¶ 8.

CMC's sales to Chevron Federal Credit Union ("CFCU") had been trending sharply upward in 2006 through the first five months of 2007.

CFCU bought $11,272.60 in promotional products from CMC in 2006. Lee Decl., ¶ 3; Declaration of Mark Lillge in Support ("Lillge Decl."), ¶ 3, Ex. A [2006 invoices]. In 2006 the average monthly sales by CMC to CFCU were $939/month.

In the first portion of 2007 through May 31, 2007 (the date of the TRO), CFCU bought $16,629.34 in promotional products from CMC. Lee Decl., ¶ 3; Lillge Decl., ¶ 3, Ex. B [2007

///

///

1

invoices through May 31, 2007].[1] Thus, in 2007 through May 31, 2007 the average monthly sales by CMC to CFCU were $3,326/month. The trend in sales by CMC to CFCU clearly was upward, with sales increasing by $2,387/month from 2006.

After the TRO went into effect and after the August, 2007, CMC only bought $800 in promotional products from CMC in 2007; this purchase occurred on November 13, 2007. Lee Decl., ¶ 4; Lillge Decl., ¶ 4, Ex. C [November 13, 2007 invoice]. CFCU purchased $15,829.34 less in promotional products after August, 2007 than before then. Id.

Ms. Lee lists specifically in her declaration the products that she purchased after May 31, 2007 from her other preferred vendor that she would have otherwise placed through CMC:

| | | |
|---|---|---|
| | $2,972.34 | June 21, 2007 tape measure |
| | $ 615.90 | July 9, 2007 balloons |
| | $3,665.00 | July 12, 2007 magic sketch keychains |
| | $1,064.40 | July 18, 2007 piggy banks |
| | $3,720.00 | August 3, 2007 beach mats |
| | $2,603.04 | October 8, 2007 house stress reliever |
| | $2,026.00 | October 8, 2007 antibacterial spray |
| | $3,120.00 | October 8, 2007 piggy banks |
| | $1,278.65 | October 9, 2007 antibacterial soap leaves |
| | $1,355.00 | October 16, 2007 beach ball |
| **TOTAL** | **$22,420.33** | (Lee Decl., ¶ 6). |

Applying CMC's average profit margin of at least 40% (Lillge Decl., ¶ 3) to this figure results in a compensatory fine for 2007 of $8,968.13.

In 2008 to date CFCU has only bought $5,000 worth of promotional products from CMC; this purchase occurred on March 17, 2008. Lee Decl., ¶ 7; Lillge Decl., ¶ 5, Ex. D [March 17,

---

[1] Although Invoice AS26477 lists a date of 12/7/07, Ms. Lee placed the actual order for these products on March 7, 2007, as her e-mail to Christina Chang of that date demonstrates. See Lee Decl., ¶ 3, Ex. A [3/7/07 e-mail]. Because the e-mail requests 10,000 calendars at $0.412, only $4,120 was counted for this order. It was common for CMC customers to preorder calendars for the upcoming year well before the ship date, which is what occurred with this transaction.

2


2008 invoice]. CFCU had purchased $16,629.34 in promotional products from CMC in 2007 by April 21, 2007 (Lee Decl., ¶ 3, Ex. A [March 7, 2007 e-mail]; Lillge Decl., ¶ 3, Ex. B [CFCU invoices prior to May 31, 2007]; CFCU purchases are therefore down $11,629.34 in 2008 as compared to 2007. Applying CMC's 40% profit average margin to this figure results in at least $4,651.73 added to the contempt fine.[2]

The total amount of the compensatory fine therefore claimed by CMC for the contempt with respect to Gina Lee and CFCU is $13,619.86 ($8,968.13 for 2007 and $4,651.73 for 2008).

## II. WELLS FARGO AND MICHELLE CHAN.

In 2007 CMC sold $5,700 in promotional products to Wells Fargo in March, 2007. Lillge Decl., ¶ 5, Ex. D. CMC has made no sales of promotional products to Wells Fargo since November 8, 2007. Id.

CMC's lost revenue from Wells Fargo to date has thus increased by at least $5,700. Applying CMC's 40% average profit margin to this figure results in $2,280 added to the contempt fine for lost profit from Wells Fargo, bringing the total actual and estimated harm exclusive of attorneys' fees and costs to $15,899.86.

## III. ATTORNEYS' FEES.

Ian Boyd, counsel for CMC that drafted the pleadings related to the contempt filing and argued the motion, has submitted a declaration detailing the attorneys' fees incurred by CMC related thereto. The total amount of such fees are $17,689. Declaration of Ian Boyd in Support, ¶ 14, Ex. A.

CMC's current counsel has incurred an additional $1,925 in fees preparing the instant account and support declarations. Declaration of Andrew S. MacKay in Support, ¶¶ 2-4. The

---

[2] Should the Court require an alternate means of calculating damages to date for 2008, there is the issue of CMC's sales to CFCU trending upward in 2006 and 2007. The average monthly sales through May 31, 2007 were $2,387/month greater than in 2006. CMC's average monthly sales for the rest of 2007 to CFCU would have been $2,802.54/month if Lee had made the sales she intended to make to CMC. If these average sales had continued in 2008 for the first four months, then CMC would have made $11,210.16. Applying CMC's 40% profit margin to this figure results in at least $4,484.06 added to the contempt fine.

total amount of attorneys' fees claimed by CMC is therefore $19,614.

## CONCLUSION

CMC therefore respectfully requests a total compensatory fine of $35,513.86 ($15,899.86 in actual or estimated harm and $19,614 in attorneys' fees).

Dated: April 21, 2008           DONAHUE GALLAGHER WOODS LLP


By: _____/s/_____
    Andrew S. MacKay
    Attorneys for Plaintiff/Counterdefendant
    MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS