RICHARD HARRINGTON (SBN 28099)
CHANDLER WOOD HARRINGTON & MAFFLY LLP
One Maritime Plaza, Fourth Floor
San Francisco, California 94111 3404
Telephone:     415 421 5484
Facsimile:     415 986 4874
Email:         harr@well.com

ROBERT CHARLES WARD (SBN 160824)
SHARTSIS FRIESE LLP
One Maritime Plaza, Eighteenth Floor
San Francisco, California 94111 3404
Telephone:     415 421 6500
Facsimile:     415 421 2922
Email:         rward@sflaw.com

C. ANGELA DE LA HOUSAYE (SBN 144218)
BRENDAN J. DOOLEY (SBN 162880)
KARYNE T. GHANTOUS (SBN 191309)
DE LA HOUSAYE & ASSOCIATES, ALC
1655 N. Main Street, Suite 395
Walnut Creek, California 94596
Telephone:     (925) 944-3300
Facsimile:     (925) 944-3343
Email:         angela@delahousayelaw.com
               brendan@delahousayelaw.com
               karyne@delahousayelaw.com
Attorneys for Defendants and Counterdefendants,
ANDREW VERITY AND CHRISTINA CHANG

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK LILLGE D/B/A CREATIVE MARKETING CONCEPTS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW VERITY AND CHRISTINA CHANG,<br><br>Defendants.<br><hr>ANDREW VERITY and CHRISTINA CHANG,<br><br>Counterclaimants,<br><br>v.<br><br>MARK LILLGE d/b/a CREATIVE MARKETING CONCEPTS,<br><br>Counterdefendants. | Case No: C-07-02748 MHP<br><br>**DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 SEEKING TO EXCLUDE TESTIMONY OF JEFFREY MEYER PERTAINING TO TRADE SECRETS**<br><br>Date:                May 6, 2008<br>Time:                8:30 a.m.<br>Pretrial Conference: April 23, 2008<br>Time:                3:00 p.m.<br>Dept:                15, 18th Floor<br>Judge:               Hon. Marilyn H. Patel<br><br>Complaint Filed: May 25, 2007 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 2

    A.     Plaintiff's Instant Motion Is Repetitive Of The Motion The Court
        Entertained And Ruled On At The April 14, 2008 Hearing And Has Thus
        Been Previously Adjudicated ........................................................................ 2

II.    STATEMENT OF FACTS ........................................................................... 2

III.   LEGAL ARGUMENT .................................................................................. 4

    A.     Helpfulness Is The Basis For Admissibility .................................... 4

    B.     The Standards For The Admission Of Expert Testimony ................ 5

    C.     Legal Conclusions Made By An Expert Are Admissable At Trial .............. 5

    D.     No Prejudice Will Result From The Admission Of This Testimony ............. 6

    E.     The Court Has Not "Established" That Lillge Has The Trade Secrets He
        Claims ........................................................................................................... 6

    F.     Jeffrey Meyer Should be Allowed to Testify Regarding the Open Issues
        That the Jury Will Face Regarding Trade Secrets Within The
        Promotional Products Industry ................................................................... 10

IV.    CONCLUSION ........................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County
132 Cal. App. 4th 826 (2005) .......................................................................... 10

Aetna Bldg. Maintenance Co. v. West
39 Cal. 2d 198 (1952). ...................................................................................... 11

American Paper & Packaging Products, Inc. v. Kirgan
183 Cal. App. 3d 1318 ...................................................................................... 11

Anders v. Liberty Lobby, Inc.
477 U.S. 242 (1986).......................................................................................... 6

Cohen v. Board of Supervisors
40 Cal. 3d 277 .................................................................................................. 8

Daubert v. Merrel Down Pharmaceuticals, Inc.
509 U.S. 579 (1993).......................................................................................... 5

Diodes, Inc. v. Franzen
260 Cal. App. 2d 244 (l968) ............................................................................ 10

Fortna v. Martin
158 Cal. App. 2d 634 (1958) ............................................................................ 10

IMAX Corp. v. Cinema Techs., Inc.
152 F.3d 1161 (9th Cir., 1998) ........................................................................ 10

Lockwood v. Wolf Corp.
629 F.2d 603 (9th Cir. 1980) ............................................................................ 7

Masson v. New Yorker Magazine
501 U.S. 496 (1991).......................................................................................... 6

Metro Traffic Control, Inc. v. Shadow Traffic Network
22 Cal. App. 4th at 863 .................................................................................... 11

Services v. Robb

33 Cal. App. 4th 1820 (1995) ........................................................................................ 8

SI Handling Systems, Inc. v. Heisley

    753 F.2d 1255 ...................................................................................................... 11

Singer Co. v. E.I. du Pont de Nemours & Co.

    579 F.2d 433 (8th Cir. 1978) ................................................................................. 6

Thompson v. Impaxx, Inc.

    113 Cal. App. 4th 1425 (2nd Dist. 2003) ........................................................ 8, 10

United States v. Brawner

    173 F.3d 966 (6th Cir. 1999) ................................................................................. 4

United States v. Rahm

    993 F.2d 1405 (9th Cir. 1993) ............................................................................... 4

United States v. Winters

    729 F.2d 602 (9th Cir. 1984) ................................................................................. 5

Universal Analytics v. MacNeal-Schwendler Corp.

    707 F. Supp. 1170 (C.D.Cal. 1989) .................................................................... 10

Whyte v. Schlage Lock Co.

    101 Cal. App. 4th 1443 (4th Dist. 2002)........................................................ 8, 10

**Statutes**

California Code of Civil Procedures §3426.1(d) .................................................... 9, 10

California Code of Civil Procedures §2019.210 ......................................................... 9

Federal Rules of Civil Procedures 56(c) .................................................................... 6

Federal Rules of Civil Procedures 8(d)...................................................................... 7

Federal Rules of Civil Procedures 54(b).................................................................... 8

**Other Authorities**

Weinstein's Federal Rules of Evidence §704 ............................................................ 5

Case No. C-07-02748 MHP

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION IN
LIMINE NO. 2 SEEKING TO EXCLUDE TESTIMONY OF JEFFREY MEYER PERTAINING TO TRADE SECRETS

1  Weinstein's Federal Evidence §702.029 ........................................................................... 4, 6

2  Weinstein's Federal Evidence §702.029[1] .................................................................... 4, 5, 6

3  Weinsten's Federal Evidence §704.02 ................................................................................. 5

4  Weinsten's Federal Evidence §704.04[2][a] ........................................................................ 5

5  Weinsten's Federal Evidence §704.04[2][c] ........................................................................ 6

6  **Rules**

7

8  Federal Rules of Evidence §702 .................................................................................... 4, 5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C-07-02748 MHP

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION IN
LIMINE NO. 2 SEEKING TO EXCLUDE TESTIMONY OF JEFFREY MEYER PERTAINING TO TRADE SECRETS

1  **I.    INTRODUCTION**

2         Plaintiff Mark Lillge ("Lillge") moves in his instant motion one more time for an order seeking

3  to preclude Defendants and Counterclaimants Verity and Chang ("Defendants") from introducing into

4  evidence: testimony from expert witness Jeffry Meyer ("Meyer") to the effect that Promotional Products

5  Distributors such as Lillge do not have trade secrets he claims; as well as precluding Defendants, from

6  referring to, mentioning, suggesting or arguing to the jury that Lillge does not have trade secrets he

7  claims or that Promotional Products Distributors such as Lillge do not have trade secrets he claims.

8         **A.    Plaintiff's Instant Motion Is Repetitive Of The Motion The Court Entertained And**

9                **Ruled On At The April 14, 2008 Hearing And Has Thus Been Previously**

10               **Adjudicated**

11        This Court has already ruled that Defendants Andrew Verity ("Verity") and Christina Chang

12  ("Chang") will be permitted to introduce testimony from expert witness Jeffry Meyer[1] ("Meyer")

13  regarding industry wide and industry specific knowledge as to various categories of supposed trade

14  secrets and whether such items are considered trade secrets, given the available knowledge, practices

15  and information available within the industry when it heard Plaintiff's identical Motion To Exclude

16  Expert Meyer's Testimony on April 14, 2008.

17  **II.    STATEMENT OF FACTS**

18        The proper gauge to determine the admissibility of expert testimony is whether the testimony is

19  helpful; and whether it would interfere with the trier of fact's ability to determine the ultimate issues on

20  their own.  Jeffry Meyer's qualifications to provide expert testimony regarding the Promotional Products

21  Industry are above reproach; his opinions will be helpful to the trier of fact; and will, in no way, prevent

22  the trier of fact in this matter from sorting out reality from fantasy with regard to the claims made by the

23  Plaintiff concerning the nature of his business operations.

24        Jeffry C. Meyer has been active in the Promotional Product Industry for twenty-six years in

25  various Chief Financial Officer and Chief Executive Officer capacities.  During these twenty-six years,

26

27  _____

28  [1] Pending the Court's determination that Mr. Meyer is an expert in the Promotional Products Industry following Plaintiff's Voir Dire of him concerning his expertise.

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2 SEEKING TO EXCLUDE TESTIMONY OF JEFFREY MEYER PERTAINING TO TRADE SECRETS

1   Mr. Meyers gained vast experience in the operations of distributors in the industry and was intimately

2   involved with the consolidation of the largest group of companies in the industry.  He earned the Master

3   Advertising Specialist designation from the industry's trade association, the Promotional Products

4   Association International ("PPAI").  During Meyer's career, he has evaluated, negotiated and

5   consummated many acquisitions in the Promotional Product Industry and performed valuations on many

6   more.  In order to do this, he became intimately familiar with the operations of these companies and how

7   each tried to "get a leg up" on the competition, including an analysis of whether any of these companies

8   held a "trade secret" that provided it with a competitive advantage.  In 2006, Meyer was voted by his

9   peers as one of the 50 most powerful people in the Promotional Product Industry.

10        Based on Mr. Meyer's vast experience in analyzing companies in the industry, he is in a unique

11   position to opine that the value driver for promotional product distributors is the customer list and the

12   relationship of the salespeople to customers.  This is supported by the vast diversification of the

13   industry.  Since the salespeople's relationships drive the sale, there are many distributors and

14   approximately 200,000 salespeople in the industry.  This dynamic has prevented significant

15   consolidation that has occurred in other industries like office supplies.  If the salespeople's relationships

16   were not critical, there are a number of direct marketing and web based companies that would quickly

17   render salespeople obsolete.  But salespeople develop loyalty with customers through hard work,

18   perseverance, creativity, reliability, and availability.  These qualities are not unique to one competitor, as

19   opposed to another.

20        Mr. Meyers has also identified that there are significant education opportunities through PPAI

21   and the Advertising Specialty Institute ("ASI") that teach people how to run successful distributorships;

22   sell corporate promotional programs, web based company stores; how to create artwork for customer

23   orders; predict trends in end user purchasing; importing; and many others.  Meyer's analysis and

24   background allow him to opine that there is nothing about a distributor's operation that can be viewed as

25   a unique secret, unknown to the industry or trade.

26        Finally, Mr. Meyer observes that users of promotional products are generally known to the

27   public by the very nature of promotional products.  That is, promotional products carry the name, logo,

28   and contact information of the companies that use them.  And those products are in fact given to the

1    public free of charge.  As such, not only does the public know the "customers names", competitors know

2    the "customers names."  It would not be unusual for a customer to routinely request and receive

3    proposals from ten or more promotional product distributors.  Free competition prevails because of the

4    absence of trade secret customer lists.  Therefore, in Meyer's opinion there are no trade secrets within a

5    promotional product distributor.  Given, Meyer's extensive qualification and his unique position to

6    analyze the operations of companies such as those of the parties, his testimony must be viewed as

7    helpful and non-prejudicial to the trier of fact's tasks of determining the merits of the claims at issue

8    here.

9    **III.    LEGAL ARGUMENT**

10          Expert testimony is liberally admissible under the Federal Rules of Evidence ("Rules").  The

11    general approach of the Rules is to relax traditional barriers to expert opinion testimony.  The

12    presumption under the Rules is that expert testimony is admissible.  Weinstein's Federal Evidence

13    §702.029[1].  See also, United States v. Rahm, 993 F.2d 1405, 1409-1410 (9th Cir. 1993) (expert

14    testimony liberally admitted under Federal Rules of Evidence).

15          The general gauge under the Federal Rules of Evidence regarding Admissibility has been that if

16    the expert's evidence will assist the finder of fact in any way in determining the factual issues before it,

17    the evidence is admissible, assuming the other prerequisites to the admissibility of the expert's testimony

18    are met.  Weinstein's Federal Evidence §702.029[3].

19          **A.    Helpfulness Is The Basis For Admissibility**

20          In the case of United States v. Brawner, 173 F.3d 966, 969 (6th Cir. 1999), the Court stated that,

21    "It is, of course, well settled that 'necessity' is not a condition precedent for the admissibility of opinion

22    testimony under Fed. R. Evid. 702; rather the test is whether the opinion 'will assist the trier of fact.'"

23    Id.  Under Federal Rules of Evidence §702, parties may use expert witnesses to provide the trier of fact

24    with an explanation...principles that are relevant to the case and leave it to the trier of fact to apply those

25    principles to the facts of the case.  Expert witnesses may also testify to their opinions, reached as a result

26    of their application of scientific, technical, or otherwise specialized principles to the facts of the case.

27    Weinstein's Federal Evidence §702.029[2].

28

**B.    The Standards For The Admission Of Expert Testimony**

There are three basic prerequisites to the admissibility of evidence from expert witnesses. First, evidence based on scientific, technical, <u>or other specialized knowledge</u>[2] must be useful to the finder of fact in understanding the evidence or in making factual determinations necessary to decide the ultimate issue of fact. Second, the proposed witness must be qualified to provide the finder of fact with that assistance. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires. Weinstein's Federal Evidence §702.029[3].

Federal Rules of Evidence §702 is the basic rule concerning expert witnesses. In essence, an expert witness may be employed if the expert has specialized knowledge that would be helpful in deciding the case correctly, and if the expert's testimony is sufficiently reliable to assist the factfinder. The intent of the Rule is to liberalize the admissibility standard for expert testimony. *See, e.g.,* <u>Daubert v. Merrel Down Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) (noting that cross-examination, rather than exclusion, is the correct means of dealing with 'shaky' expert testimony). *See also,* <u>United States v. Winters</u>, 729 F.2d 602, 605 (9th Cir. 1984).

**C.    Legal Conclusions Made By An Expert Are Admissible At Trial**

Depending on the circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible. For example, the testimony may be helpful if the case involves a specialized industry. Also, the testimony may be helpful if it involves a specialized area of law. Weinstein's Federal Evidence §704.04[2][a]. Most importantly, Federal Rules of Evidence §704 allows the jury to receive the full benefit of a witness's judgment because the witness may testify in a more natural manner uninterrupted by technical objections that interfere with the flow of the trial without furthering the cause of truth. Weinstein's Federal Evidence §704.02. This is the scenario the Court finds here regarding the Promotional Product Industry.

---

[2] The Rule is clearly not limited to scientific expert testimony. It refers as well to technically or other specialized knowledge; all that is required is that expert testimony on the subject matter will assist the factfinder. Consequently, any information that is not common knowledge can be an appropriate subject of expert testimony. *See, e.g.,* <u>United States v. Romero</u>, 57 F. 3d 565 (7th Cir. 1995).

Case No. C-07-02748 MHP

1

**D.    No Prejudice Will Result From The Admission Of This Testimony**

2    In our case, rather than excluding opinion testimony in this situation, the Court may choose to

3    admit the expert testimony with appropriate, limiting instructions. "The appropriate instruction usually

4    addresses the weight the jury should give to the expert testimony." Weinsten's Federal Evidence

5    §704.04[2][c]. Furthermore, "The danger of confusing the fact finder with expert testimony is, perhaps,

6    more easily ameliorated by cross-examination than are the dangers of irrelevant or prejudicial expert

7    testimony.  Trial courts should be aware of the curative powers of the adversary system." Weinstein's

8    Federal Evidence §702.029[5]. *See also*, Singer Co. v. E.I. du Pont de Nemours & Co., 579 F.2d 433,

9    443 (8th Cir. 1978) (trial court properly refused to strike expert testimony as unsupported speculation

10    because evidentiary value of opinion was for jury, assisted by vigorous cross-examination).

11    **E.    The Court Has Not "Established" That Lillge Has The Trade Secrets He Claims**

12    On April 1, 2008, the Court issued its Memorandum and Order Re: Plaintiff's Motion for Partial

13    Summary Judgment.  Based on his interpretation of the Court's Memorandum, Lillge now argues that

14    Defendants should be precluded from presenting evidence that the claimed trade secrets do not exist.

15    The issue of whether Lillge has the trade secrets he claims remains at issue and is correctly an issue to

16    be determined by the Jury, as evidenced by the Court's previous determination of this same motion on

17    April 1, 2008 to allow expert Meyer to testify regarding the issue to the Jury.

18    As the Court held in its April 11, 2008 Memorandum and Order: Summary Judgment is proper

19    when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact

20    and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material

21    facts are those which may affect the outcome of the case. Anders v. Liberty Lobby, Inc., 477 U.S. 242,

22    248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury

23    to return a verdict for the nonmoving party *Id.* … The Court may not make credibility determinations,

24    and inferences to be drawn from the facts must be viewed in the light most favorable to the party

25    opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S.

26    at 249. (Court's Memorandum and Order, P.4:LN 25 – 28 - P.5:LN 1-4 and 10 – 13).

27

28

1    Having set the standard for its determination, the Court then turned to the issue of whether the

2    existence of trade secrets claimed by Lillge were contested and held as follows:

3    > The parties devote most of their argument to whether defendants
>    have admitted that plaintiff possesses trade secrets. *See* Fed. R.
4    > Civ. P. 8(d); Lockwood v. Wolf Corp., 629 F.2d 603, 611 (9th Cir.
>    1980). This Court, however, does not find an admission on the
5    > part of defendants regarding the trade secret issues merely because
>    they admitted… [a] paragraph in the complaint…Other than this
6    > purported admission, <u>defendants have consistently and vehemently
7    > maintained that plaintiff does not possess any trade secrets</u>. *See
>    e.g.*, Answer, ¶11 (denying the existence of confidential
8    > information). (Court's Memorandum and Order, P.6:LN 13 – 16,
>    20 – 23 [Emphasis Added]).

9    Thus, based on the Court's standard and Defendants reservation of this issue for determination

10    by the Jury, as expressed in Footnote 1 on Page 6 and 7 of their Opposition to Partial Summary

11    Judgment, the required scenario for the Court to make a "finding" on such a contested issue did not

12    exist, and the Court's holding does not render the issue of trade secrets to be "established".

13    For example, Lillge cites to the Court's recital that "the information Ms. Chang gave Mr. Lillge

14    upon her departure could qualify as trade secrets. She specifically notified Mr. Lillge as to a client that

15    would need replenishment to the tune of $15,000.00 at a specific time. There can be no doubt that

16    whatever value this information possesses is sole based on the fact that it is not generally known to the

17    public. For instance, other persons, such as CMC's competitors, could obtain economic value form

18    knowledge of this information because they could solicit CMC's clients immediately prior to when

19    CMC was intending to contact those clients. However, if this information was generally known, nobody

20    in the promotional products industry would have an advantage." (Court's Memorandum and Order,

21    P.7:LN 16 – 23). The Court could not have "established" this information to be a trade secret, since the

22    client with the replenishment need (Gina Lee) specifically advised the Court that this information was

23    not a secret when she advised that the replenishment was supplied by another competitor (Declaration of

24    Gina Lee, dated April 21, 2008, ¶5). Thus, the client's replenishment need was clearly not a secret that

25    only Lillge or the Defendants were aware of.

26    Federal Rules of Civil Procedure 56(d)(1) states that in determining whether a material fact such

27    as the existence of the trade secrets claimed by Lillge is <u>not genuinely as issue</u>, it should is should make

28    its determination by examining the pleadings and evidence before it and by interrogating the attorneys.

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION IN
LIMINE NO. 2 SEEKING TO EXCLUDE TESTIMONY OF JEFFREY MEYER PERTAINING TO TRADE SECRETS

1    The Court's finding in its order that the issue of trade secrets was hotly contested by Defendants

2    demonstrates that the issue has not been "established", and is a proper subject for the presentation of

3    evidence to the Jury.

4         Furthermore, on Motions for Summary Judgment or Partial Summary Judgment, all intendments

5    are made in favor of the party opposing the motion, and since Partial Summary Judgment is simply an

6    Order adjudicating certains claims or defenses, it is subject to revision at any time before final

7    judgment. Fed. R. Civ. P. 54(b). Partial Summary Judgment therefore is not a final judgment and is not

8    an appealable Order.

9         With deference, Defendants note that even where the Court grants a Preliminary Injunction, the

10   issues whether Plaintiff possesses trade secrets and, if so, whether Defendants have misappropriated

11   trade secrets, are issues reserved for Trial by Jury. Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443,

12   1453 (4th Dist. 2002). The ultimate determination of trade secret status is subject to proof presented at

13   Trial. (Hilb, Rogal & Hamilton Ins. Services v. Robb, supra, 33 Cal. App. 4th at 1820 (1995); Cohen v.

14   Board of Supervisors, supra, 40 Cal. 3d 277, 286.

15        In the later case of Thompson v. Impaxx, Inc., 113 Cal. App. 4th 1425, 1430-1431 (2nd Dist.

16   2003), the Court reversed judgment on the pleadings for Plaintiff in a nearly identical scenario to that

17   here, holding:

18   > Respondents may turn out to be right that the information which is the subject of the
19   > nonsolicitation clause is a trade secret, but they are wrong when they argue that the issue
     > is established for purposes of this motion. The issue of whether information constitutes a
20   > trade secret is a question of fact. Whether the identity of appellant's customers is
     > confidential has not yet been proved or disproved. The recitals alone do not establish
21   > anything. Labeling information as a trade secret or as confidential information does not
     > conclusively establish that the information fits this description. Id.

22        The Court explicitly stated at the hearing on Plaintiff's Motion for Preliminary Injunction that

23   Plaintiff Mark Lillge ("Lillge") d/b/a Creative Marketing Concepts ("CMC") had not shown a

24   substantial likelihood of prevailing on the question of whether Plaintiff had the trade secrets that he

25   claims. (Declaration of Robert Ward in Support of Motion to Dissolve the Preliminary Injunction

26   ("Ward Decl.") ¶2, Ex. A, 9:26-28, 10:1-2, 10-21-23). To this day, Plaintiff has failed to identify with

27   requisite specificity legally cognizable trade secrets. No additional useable information has been

28

DEFENDANTS ANDREW VERITY AND CHRISTINA CHANG'S OPPOSITION TO PLAINTIFF'S MOTION IN
LIMINE NO. 2 SEEKING TO EXCLUDE TESTIMONY OF JEFFREY MEYER PERTAINING TO TRADE SECRETS

1  provided by Plaintiff since that time regarding his "secrets". Thus, it would be hard to fathom any

2  perceived increase in the likelihood that Plaintiff would prevail on this point as the trial date now looms.

3      Despite clear obligations to do so under California Law, Lillge has failed to truly identify the

4  supposed trade secrets. His "identification" of trade secrets, pursuant to Code of Civil Procedure

5  §2019.210, identified general categories of items related to CMC's operations, but no specific trade

6  secrets and Lillge has refused to identify any in discovery.  Verity has either been refused or stymied by

7  Plaintiff's production of a "document dump" in lieu of providing concise responses despite this Court's

8  admonition that Lillge had one last chance to do so by April 15, 2008 with specific reference to the

9  Bates location where the claimed secrets could be located.

10      In the Court's recent Memorandum and Order Regarding Plaintiff's Motion for Partial Summary

11  Judgment ("MPA and Order"), the Court appeared to take Lillge's representations regarding his

12  possession of general categories of trade secrets at face value.  The Court, however, went on to note that,

13  "in order to establish that it has trade secrets, CMC must meet at two-part test. California has adopted

14  the Uniform Trade Secrets Act ("UTSA"), which defines a trade secret as follows: 'Trade Secret' means

15  information, including a formula, pattern, compilation, program, device, method, technique, or process.

16  Cal. Civ. Code § 3426.1(d).  (MPA and Order, P.6, LN 6 – 9).  Thus, based on this definition adopted by

17  both this Court and the California legislature, general categories do not suffice as trade secrets.  The

18  party claiming these must identify the specific information he claims is a secret and that has been

19  misappropriated.  Furthermore if Plaintiff were to prevail on his trade secrets claims, he would need to

20  identify the specific secrets taken so that damages could be calculated related to each secret allegedly

21  misappropriated.

22      Lillge's representations that he actually "maintains" trade secrets, cannot be simply be taken at

23  face value now that trial us upon is and the Jury must consider the issue.  If Lillge maintained such

24  specific information, why has  he not identified it with the "reasonable particularity" required?  What

25  does Customer X like, when does Customer X want it, how much does Customer X order, and how

26  much should Customer X be charged for it?  If this information was "maintained" by Lillge as he

1    claims, his failure to identify this "maintained" information to the Court or Defendants to date, militate

2    against holding that the matter of trade secrets has already been established.

3         If the Court had intended that such "facts" had been established, it seems odd that the Court

4    would subsequently allow expert Meyer to testify before the Jury "…by distinguishing the trade secrets

5    from matters of general knowledge in the trade or of special knowledge of those persons … skilled in

6    the trade" as it did on April 14, 2008. *See* IMAX Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164–

7    1165 (9th Cir., 1998); see also Universal Analytics v. MacNeal-Schwendler Corp., 707 F. Supp. 1170,

8    1177 (C.D.Cal. 1989); see also Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (l968); see also

9    Advanced Modular Sputtering, Inc. v. The Superior Court of Santa Barbara County, 132 Cal. App. 4th

10    826, 835 (2005).  Accordingly, the issue of whether the employers' customer information constituted

11    trade secrets, as defined in California Code of Civil Procedures §3426.1(d)(1), was a question of fact for

12    the jury. Thompson v. Impaxx, Inc., 113 Cal App 4th 1425 (2nd Dist, 2003).

     **F.**    **Jeffrey Meyer Should be Allowed to Testify Regarding the Open Issues That the**

13

14        **Jury Will Face Regarding Trade Secrets Within The Promotional Products**

15        **Industry**

16         Under California law, a "trade secret" means information, including a formula, pattern,

17    compilation, program, device, method, technique, or process, that satisfies a two-prong test. Cal. Civ.

18    Code §3426.1(d) (West 1997).  First, the information must derive independent economic value, actual or

19    potential, from not being generally known to the public or to the other persons who can obtain economic

20    value from its disclosure of use. *Id.* Second, the information must be the subject efforts that are

21    reasonable under the circumstances to maintain its secrecy. *Id.*

22         Factual issues that expert Jeffry Meyers should be permitted to testify on including the

23    following:

24         Pricing and bidding methods not trade secrets if only general methods of doing business.  Fortna

25    v. Martin, 158 Cal. App. 2d 634 (1958).

26         Cost and pricing data in the industry and commonly  used industry formulas for setting prices.

27    Whyte v. Schlage Lock Co., 101 Cal. App. 4th 1443, 1455-1456 (Cal. Ct. App. 2002).

28         That information such as the cost of materials, labor, overhead, and profit margins are readily

1 | known in the industry.  <u>SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1255.

2 |      Industry knowledge regarding procedures for estimating contracts.  <u>Aetna Bldg. Maintenance</u>

3 | <u>Co. v. West</u>, 39 Cal. 2d 198 (1952).

4 |      List of readily ascertainable customers not trade secret.  <u>American Paper & Packaging Products,</u>

5 | <u>Inc. v. Kirgan</u>, 183 Cal. App. 3d 1318.

6 |      Industry practices concerning marketing research that "relates to a single prominent buyer that is

7 | presumably aware of its own needs . . . "  <u>SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1255, 1259.

8 |      And, that general customer preferences and requirements are not trade secrets.  <u>Metro Traffic</u>

9 | <u>Control, Inc. v. Shadow Traffic Network</u>, 22 Cal. App. 4th at 863 – 864.

## IV.    CONCLUSION

     Based on the foregoing, Mr. Meyer's preeminent qualifications and his ability to shed light on a topic not within the day to day intimate knowledge of the trier of fact must be considered helpful, and therefore, render his proffered testimony admissible, since any issue regarding expert testimony must be determined under the presumption towards admissibility.  Furthermore, as the subject of the existence of the trade secrets that Lillge claims is still a matter for determination by the Jury, any concerns of Plaintiff can be addressed by vigorous cross-examination, and/or an appropriate instruction by this Court.

Dated: April 22, 2008           DE LA HOUSAYE & ASSOCIATES, ALC

                By: _____/ S / _____
                    BRENDAN J. DOOLEY

                Attorneys for Defendants
                ANDREW VERITY AND CHRISTINA CHANG